UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LAKE CHARLES HARBOR &** | **:** | **DOCKET NO. 2:17-cv-1114** |
| **TERMINAL DISTRICT** | | |
| | | |
| **VERSUS** | **:** | **UNASSIGNED DISTRICT JUDGE** |
| | | |
| **REYNOLDS METAL CO., ET AL.** | **:** | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court are a Motion for Leave to File Second Amended Complaint ("Motion to Amend") [doc. 69], filed by plaintiff Lake Charles Harbor & Terminal District ("the Port") under Federal Rule of Civil Procedure 15, a Motion to Dismiss and Motion for Oral Argument [doc. 42] filed under Rule 12(b)(2) by defendant Lonza Group, Ltd. ("Lonza Group"), and a Motion to Strike [doc. 47] by Lonza Group relating to the Port's original opposition to the Motion to Dismiss. All motions are opposed.

The Motion to Dismiss has been referred to the undersigned for review, report, and recommendation, in accordance with 28 U.S.C. § 636 and the standing orders of this court, and the Motions to Amend and Strike relate to it. Accordingly, we consider them together. For reasons stated below, **IT IS RECOMMENDED** that the Motion to Strike [doc. 47] be **GRANTED IN PART** and **DENIED IN PART**, and that the Motion to Dismiss [doc. 42] be **GRANTED** and the Motion for Oral Argument [*id.*] **DENIED**, with all claims raised by the Port against Lonza Group **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. Upon acceptance of

that recommendation, it is further **RECOMMENDED** that the Motion to Amend [doc. 69] be **DENIED**.

# I.
## BACKGROUND

This litigation began with a complaint filed in this court by the Port against Reynolds Metal Company, LLC ("Reynolds") on September 5, 2017. Doc. 1. The Port claims that Reynolds is liable for restoration of premises it formerly leased from the Port, which allegedly contained a 55-acre solid waste dump built by Consolidated Aluminum Corporation ("Consolidated"), from whom Reynolds assumed leases over that property in 1983. *Id.* The solid waste dump was allegedly closed by order of the Louisiana Department of Natural Resources in 1984, but in 2005 the Louisiana Department of Environmental Quality ("LDEQ") allegedly issued an administrative order, without notice to the Port, regarding the deteriorating condition of the dump. *Id.* at pp. 4–5, ¶¶ 10–13. Litigation was also commenced in the United States District Court for the Middle District of Louisiana between Consolidated and Reynolds, and various related parties, relating in relevant part to the condition of the solid waste dump ("Consolidated/Reynolds Action").[1] *Id.* at p. 5, ¶ 14. The Port was not a party to this action, which resolved with a settlement agreement in October 2010. *Id.* at p. 5, ¶¶ 15–16. The Port alleges that it did not consent to the settlement and that the solid waste dump remains on the premises. *Id.* at p. 5, ¶¶ 17–18.

On September 7, 2016, the Port and Reynolds entered into a partial release of leased property. *Id.* at p. 6, ¶ 19; *see* doc. 4, pp. 82–86. The Port alleges that the solid waste dump is on the released premises. Doc. 1, p. 6, ¶ 20. On May 10, 2017, the Port issued a repair and remediation demand to Reynolds, pursuant to the terms of the lease. Doc. 1, p. 6, ¶ 21; *see* doc. 4, pp. 88–90. The Port then filed the instant suit, invoking this court's jurisdiction under 28 U.S.C. § 1332 and

---

[1] *See Consolidated Aluminum Corp. v. Alcoa, Inc.*, No. 3:03-cv-1055 (M.D. La. Nov. 3, 2010).

claiming that Reynolds is liable for damages and restoration of the leased premises. *See* doc. 1, pp. 1, 6–9, ¶¶ 2, 23–27.

Reynolds filed a third party complaint against Lonza Group, a Swiss company, noting that Lonza Group had been a party to the Consolidated/Reynolds action. Doc. 10, p. 4, ¶¶ 14–15. As a result of the settlement in that action, Reynolds alleged, Lonza Group "assume[d] all past, present, and future liabilities" with respect to the solid waste dump and related hazards, and had also agreed to indemnify, hold harmless, and defend Reynolds from any claims arising out of those areas. *Id.* at pp. 5–6, ¶¶ 16–20 (alteration in original). It further alleged that Lonza Group had been given notice of the Port's claims but failed to act. *Id.* at p. 6, ¶¶ 21–23. Accordingly, it filed claims for declaratory relief, breach of contract, indemnity, and contribution against Lonza Group. *Id.* at pp. 6–13, ¶¶ 24–46. The Port then filed an amended complaint, alleging that Lonza Group was liable to it as successor in interest of Swiss Aluminum Ltd., a/k/a Alusuisse, a/k/a Alusuisse Holding Ltd. ("Alusuisse") because Alusuisse had operational and administrative control over operations at the leased premises between 1967 and 1983 under an agreement with Consolidated and as parent company of Consolidated and its predecessor, Gulf Coast Aluminum. Doc. 12.

Lonza Group then filed a motion to dismiss all claims raised against it in the Port's first amended complaint, alleging that the court lacks personal jurisdiction over it with respect to those claims. Doc. 42. Specifically, it alleges that it is not the successor in interest to Alusuisse and has no connection to any lease or claim made by the Port. Doc. 42, att. 1. The Port opposed the motion and Lonza Group moved to strike certain exhibits from its opposition as irrelevant, unauthenticated, and unfairly prejudicial. Doc. 47. The Port also sought jurisdictional discovery, which the court granted. Docs. 46, 55, 68. The period fixed for that discovery has now concluded and both parties have filed supplemental memoranda regarding the Motion to Dismiss. Docs. 70,

72. The Port also brings the instant motion to amend. Doc. 69. Lonza Group opposes amendment based on alleged undue delay, dilatory motive, undue prejudice, and futility. Doc. 73.

## II.
## LAW & APPLICATION

### A. Motion to Strike

In the Motion to Strike [doc. 47], Lonza Group seeks to exclude certain exhibits attached to the Port's original opposition [doc. 46] to the Motion to Dismiss as "incomplete, irrelevant, unauthenticated, unverified, and hearsay." Doc. 47, att. 1, p. 1. These exhibits are

1. Exhibit A, *Lonza Group's Proposed Findings of Fact and Conclusions of Law*, regarding a motion to dismiss for lack of personal jurisdiction that Lonza Group filed in the Reynolds/Consolidated litigation.

2. Exhibit B, *Consolidated's Supplemental Responses and Objections to Alcoa Inc.'s First Set of Interrogatories*, also drawn from the Reynolds/Consolidated litigation.

3. Exhibit C, *Alcoa Inc.'s Proposed Findings of Fact and Conclusions of Law*, relating to Lonza Group's motion to dismiss in the Reynolds/Consolidated litigation.

4. Exhibit D, *Separation and Demerger Agreement*, a 1999 contract between Alusuisse and Lonza Group.

5. Exhibit G, *Deposition of Hans Pfirter*, inhouse counsel for Lonza Group, taken during the Reynolds/Consolidated litigation.

*Id.* at 3; *see* doc. 46, atts. 1–4, 7. Lonza Group argues that (1) Exhibits A, C, and D are outside the scope of evidence reviewable with a 12(b)(2) motion; (2) Exhibits A, B, and C are not judicial admissions and cannot be submitted as proof of any fact other than that the documents themselves were submitted; (3) Exhibits B and C should be excluded as hearsay; (4) Exhibit D is unauthenticated; and (5) Exhibit G is misleading as an incomplete copy of a deposition taken during prior litigation. Doc. 47, att. 1, pp. 3–5.

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Such motions "are disfavored and infrequently granted." *United States v. Cushman & Wakefield, Inc.*, 275 F.Supp.2d 763, 767 (N.D. Tex. 2002). They are regarded as "a drastic remedy" and should be granted "only when the pleading to be stricken has no possible relation to the controversy." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) (internal quotations omitted).

As Lonza Group notes, the Fifth Circuit has stated that "[t]he court may determine the jurisdictional issue [raised in a 12(b)(2) motion] by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). Lonza Group maintains that the proposed findings and the demerger agreement (Exhibits A, C, and D) should be excluded because they do not fall into any of these categories. As the Port notes, however, *Allred* is phrased permissively, without indication that its list is meant to be anything more than illustrative, and it is well-established that the court has the discretion to review otherwise competent evidence in deciding a jurisdictional question. *See* Charles Alan Wright et al., 5C Fed. Prac. & Proc. § 1364 (3d ed.) ("A wide range of material may be introduced in conjunction with a Rule 12(b) motion, subject . . . to the district court's discretion to reject any extra-pleading matter if the judge feels that it is not substantial or comprehensive enough to facilitate the disposition of the action."); *see also The Urban Inst. v. FINCON Svcs.*, 681 F.Supp.2d 41, 44 (D.D.C. 2010) (plaintiff may make her prima facie case for personal jurisdiction through "the pleadings, bolstered by such affidavits and other written materials as she can otherwise obtain.") (cleaned up). Accordingly, the court will not

categorically exclude these exhibits because Lonza Group argues that they were available outside of "the recognized methods of discovery."

As Lonza Group argues, Exhibits A, B, and C are not judicial admissions and were filed in a prior action, meaning that the court may only take judicial notice of these documents "to establish the fact of such litigation and related filings" but not the factual findings of another court. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998). The Port argues that it is not asking the court to take judicial notice of these documents, but instead to admit them as prior admissions of a party opponent. Doc. 51, pp. 4–5. As Lonza Group observes, however, Consolidated and Alcoa are not parties to this suit and the Port has not shown that they may be treated as the same entity as Lonza Group for any reason. Thus, the court should exclude Exhibits B[2] and C on this basis as providing no competent evidence on Lonza Group's jurisdictional contacts.[3] As for Exhibit A, the Port only relies on these proposed findings to hold Lonza Group to its statement therein that Consolidated "was a wholly owned subsidiary of [Alusuisse] . . . at the time of Consolidated's ownership and operation of the carbon manufacturing facility [at the solid waste dump] in Lake Charles, Louisiana," and for a flowchart on the effects of the demerger, which does not contradict Lonza Group's position below that Alcan Holdings is the actual successor of Algroup. Doc. 46, att. 1, p. 2, ¶ 1, cited in doc. 46, p. 11 & n. 4; doc. 46, att. 1, p. 4, cited in doc. 46, p. 12 & ns. 11

---

[2] The Port asserts that Exhibit B may be admitted as the admission of a party opponent, implying that Consolidated was authorized by Lonza Group to make these statements or was an agent or employee of Lonza Group. Doc. 51, p. 4. It provides no support for this statement and the record shows that Lonza Group and Consolidated are distinct corporate entities. To the extent that the Port could contradict this showing, however, the document is only cited for the unsupported assertion that "Lonza Group . . . is the successor at interest to [Algroup]." Doc. 46, att. 2, p. 6. While the Port argues that Lonza Group is now judicially estopped from taking a contrary position, the doctrine of judicial estoppel only applies to "a factual assertion that is inconsistent with a position sworn to and benefited from in an earlier proceeding." *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). As described below, the effect of the demerger on Lonza Group's relation to Algroup is a legal issue. Therefore the assertion from Exhibit B does not estop Lonza Group from the position maintained in this suit.

[3] Additionally, the Port maintains that Exhibit C is only cited to prove that the German corporate form *Aktiengesellschaft* ("AG") is equivalent to "company limited by shares" or "limited," and that "Lonza Group AG" and "Lonza Group, Ltd." are therefore identical business entities. Doc. 51, p. 6. Lonza Group does not contest this point.

& 13. These positions have no bearing on our determination of the motion to dismiss, below. Thus, the court should likewise disregard Exhibit A as immaterial.

As for Exhibit D (the demerger agreement), Lonza Group argues – and the Port does not contest – that it is unauthenticated under Federal Rule of Evidence 901(a) and that the court may therefore exclude it. Doc. 47, att. 1, p. 5. As the Port notes, however, this circuit "does not require conclusive proof of authenticity before allowing the admission of disputed evidence." *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1988). Additionally, under Rule 901 a document may be authenticated based on only "some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *Id.*

The Port shows, and Lonza Group does not dispute, that Lonza Group introduced the document as an exhibit to its proposed findings of fact in the Consolidated/Reynolds litigation. *See Consolidated*, No. 3:03-cv-1055, at doc. 363, att. 1. In that matter it also provided an affidavit from Ulrich Suter, who participated in the demerger as vice president of corporate finance for Algroup. *Id.* at doc. 363, att. 1, pp. 1–4. Suter describes the terms of the agreement and states that a true and correct copy was attached. *Id.* The affidavit and the fact that Lonza Group has previously produced and relied on this document provide sufficient indicia of its reliability for the court to review it under the instant motions. Accordingly, the motion to strike should be denied as to Exhibit D.

Finally, Lonza Group asserts that Exhibit G (the Pfirter deposition, taken during the Consolidated/Reynolds litigation) must be excluded under Federal Rule of Evidence 403 because it is an incomplete copy and its probative value is thus outweighed by its potential to confuse the issues and mislead the court. Doc. 47, att. 1, p. 5. As the Port notes, however, the practice of attaching only relevant excerpts to a deposition is common and, furthermore, endorsed by this

court under Local Rule 5.7.05. Lonza Group fails to argue any specifics about the document's potential to mislead or provide any explanation or other excerpts of the deposition transcript to mitigate any confusion. Statements from Lonza Group's inhouse counsel on the effects of the demerger agreement are highly relevant to the jurisdictional issues discussed below. Accordingly, the motion to strike should likewise be denied as to this exhibit.

### B. Motion to Dismiss and Motion to Amend

#### 1. Legal Standards

Leave to amend is within the trial court's discretion but should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, this guidance by no means renders leave automatic. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). Leave to amend should not be granted if amendment would be futile due to plaintiff's failure to state a claim under Rule 12(b)(6) or if plaintiff otherwise fails to cure pleading defects raised by the defendant. *Landavazo v. Toro Co.*, 301 Fed. App'x 333, 337 (5th Cir. 2008); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003). Accordingly, the court considers the Motions to Amend and Dismiss together in order to determine whether (1) there is a basis for granting the motion to dismiss and (2) whether amendment would cure any jurisdictional defect found.

A party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists, and so the plaintiff carries the burden on the defendant's challenge to personal jurisdiction. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). Generally the plaintiff is only required to make a prima facie showing and the court must resolve all undisputed facts submitted by the plaintiff, as well as all contested issues of fact, in favor of jurisdiction.[4] *Id.*; *WNS, Inc. v. Farrow*, 884 F.2d

---

[4] The plaintiff must meet a higher "preponderance of the evidence" standard if the court conducts an evidentiary hearing. *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

200, 203 (5th Cir. 1989). However, the court is not required to credit conclusory allegations. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–69 (5th Cir. 2001). In resolving a motion to dismiss the court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992).

Two preconditions must be satisfied before this court will assert personal jurisdiction: (1) the defendant must be amenable to service under the forum state's long-arm statute, and (2) the assertion of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Louisiana long-arm statute is coextensive with the limits of due process. *E.g.*, *Laird v. Deep Marine Technology, Inc.*, 2004 WL 2984282, *1 (E.D. La. Dec. 7, 2004). Therefore the requirements are combined for the purpose of this analysis. *Id.* For personal jurisdiction to comport with due process, the plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) exercising jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice. *Jones*, 954 F.2d at 1068.

The minimum contacts prong may be divided into "specific" and "general" personal jurisdiction. *See Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). In this matter, only specific jurisdiction is asserted. *See* doc. 46, p. 15. Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir.

2001)). In other words, "[t]he non-resident's purposefully directed activities must be such that he could reasonably anticipate being haled into court in the forum state." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Specific jurisdiction also requires "a sufficient nexus" between the cause of action and the defendant's contacts with the forum. *Id.* at 378–79. Accordingly, specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton Ins. Svcs., Ltd. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014) (quoting *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014)). Under this test, "[e]ven a single, substantial act directed toward the forum can support specific jurisdiction." *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

### 2. *Application to Lonza Group's Motion and the Proposed Amendment*

Lonza Group asserts that it is not the successor in interest to Alusuisse and has no connection to the claims made against it by the Port. It observes that the first amended complaint contains no factual allegations relating to its contacts with Louisiana or supporting the conclusion that it is Alusuisse's successor in interest. Doc. 42, att. 1, pp. 9–13. The Port asserts, in relevant part, that Lonza Group's disavowal of successor-in-interest status is contrary to its prior admissions and that Alusuisse and Consolidated's jurisdictional contacts may be imputed to Lonza Group as their successor. Doc. 46, pp. 16–22. Finally, it maintains that the 2010 settlement agreement between Lonza Group and Reynolds establishes the required minimum contacts. *Id.* at 22–24.

Following jurisdictional discovery both parties maintain their original positions, with the Port seeking support in written discovery obtained during the jurisdictional discovery period. Docs. 70, 72. The Port also seeks leave to amend the complaint, in relevant part, to formalize the allegations it raised in opposing the motion to dismiss, that Lonza Group is successor in interest

not just to Alusuisse but also to Consolidated and to describe the effects of the demerger agreement. *See* doc. 69, att. 3.

As Lonza Group notes, the requirement that a court accept plaintiff's factual allegations as true does not apply to legal conclusions. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009). Likewise, while the court must accept the plaintiff's uncontroverted jurisdictional allegations as true and construe disputed facts in favor of the plaintiff, it is not required to "credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Bar Group, LLC v. Bus. Intelligence Advisors, Inc.*, 215 F.Supp.3d 524, 561 (S.D. Tex. 2017). Because no evidentiary hearing is being held in this matter and the court is instead deciding the motion on the record submitted, the Port's burden is limited to establishing a prima facie case under the standards described above. *Bar Group*, 215 F.Supp.3d at 561. Accordingly, the court defers to the nonconclusory factual allegations made in the Port's complaints but not to any legal conclusions on relationships between corporations contained therein.

The Port argues, in relevant part, that (1) by virtue of the relationship between Alusuisse and Consolidated, Alusuisse is responsible for the alleged contamination; (2) Alusuisse Lonza Group, Ltd. ("Algroup") is the admitted successor to Alsuisse; and (3) under the 1999 demerger and separation agreement that split Lonza Group from Algroup, Lonza Group assumed those obligations and liabilities. Doc. 70, p. 3. Lonza Group disputes this interpretation of the demerger agreement and asserts, "on information and belief, [that] the successor to Alusuisse is Alcan Holdings, an entirely separate and unrelated company which is not a party to this suit." Doc. 72, pp. 3–4.

Without deciding what obligations Lonza Group might have assumed through the demerger, a question that goes to the merits of the parties' claims, we instead proceed to the issue of Lonza Group's jurisdictional contacts. The Port argues that Lonza Group has sufficient jurisdictional contacts with this state either through imputation of Algroup and Consolidated's contacts or through Lonza Group's participation in the settlement agreement in the Reynolds/Consolidated litigation. "[F]ederal courts have consistently acknowledged" that due process allows a court to exercise personal jurisdiction over a corporation based solely on its status as "alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). "The theory underlying these cases is that, **because the two corporations . . . are the same entity**, the jurisdictional contacts of one are the jurisdictional contacts of the other . . . ." *Id.* (emphasis added).

As Lonza Group asserts, the Port fails to establish that it (Lonza Group) is the successor of Algroup. "[T]he distinction between a corporate successor and an assignee of a contract is a sound one." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003), quoted in *Admins. of Tulane Educ. Fund v. Biomeasure, Inc.*, 687 F.Supp.2d 620, 631 (E.D. La. 2009) (rejecting successor jurisdiction alleged based on one company's acquisition of the patent of another). The Port has not refuted Lonza Group's showing that Algroup continued to exist after the demerger and that Algroup's successor is instead a company call Alcan Holdings. *See* doc. 46, att. 5, pp. 4–5, ¶¶ 19–21 (affidavit of Hans Pfirter, Algroup inhouse counsel). The Port fails to refute these arguments or otherwise show that the two corporations are the same entity for jurisdictional purposes.[5] Furthermore, the Port does not allege that Lonza Group is the alter ego of

---

[5] The Port relies on a deposition from the Reynolds/Consolidated litigation, in which Pfirter agreed that Lonza Group was the successor in interest to Algroup. Doc. 70, att. 5, p. 4. He also agreed that Lonza Group was "taking the liabilities from [Algroup] that were related to the various Lonza Group businesses." *Id.* at 5. The 1999 demerger agreement lists Consolidated as among the businesses acquired by Lonza Group in this agreement. Doc. 70, att. 4, p.

Consolidated or Algroup or that Consolidated or Lonza Group had any contacts with Louisiana after the demerger. It also provides no support for its assertion in the proposed amended complaint that Lonza Group is the successor of Consolidated. Accordingly, we turn to its contention that Lonza Group's jurisdictional contacts may be found through its settlement agreement.

As Lonza Group notes, a plaintiff "has the burden of demonstrating specific jurisdiction for each claim asserted against the nonresident defendant." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 n. 73 (5th Cir. 2016) (citing *Dontos v. Vendomation NZ Ltd.*, 582 Fed. App'x 338, 342 (5th Cir. 2014)). Thus, whether the settlement agreement provides the court with jurisdiction over Reynolds's claims against Lonza Group is a separate question from the jurisdictional matters tested in this motion.

The Port has admitted that it was not a party to the settlement agreement. *See* doc. 12, p. 8, ¶ 31. Nonetheless, it maintains that based on this agreement – the terms of which are undisclosed – Lonza Group could reasonably anticipate being haled into court in Louisiana by another party, based on whatever liability it has assumed relating to the solid waste dump. *See* doc. 46, pp. 22–24. To this end it relies on a case from the Eastern District of Virginia involving a products liability claim against a foreign manufacturer where personal jurisdiction was exercised based on the manufacturer's agreement to indemnify the seller of its product. *Abel v. Montgomery Ward Co., Inc.*, 798 F.Supp. 322, 325–26 (E.D. Va. 1992). In that matter, however, the terms of the indemnity agreement were disclosed and painstakingly explored by the court. *See id.* The Port also relies on *Joseph v. Apache Stainless Equipment Corp.*, an unpublished case from the Eastern District of

---

21. It also states that, as of the separation date, "[Algroup] will have no liabilities or contingent liabilities (including environmental liabilities and related investigation, remediation, indemnification, or litigation costs) primarily relating to the Lonza Group Business whether such liabilities are referred to or not in the Combined Balance Sheet." *Id.* at 13–14. However, as Pfirter later declared, after the demerger Algroup's remaining assets and business were organized under a new company, Alusuisse Group, Ltd., which subsequently "merged with Alcan, an unrelated company." Doc. 46, att. 5, pp. 4–5, ¶¶ 19–21. These factual declarations are sufficient to refute the Port's legal argument, and Pfirter's prior conclusion, that Lonza Group was the successor of Algroup.

Louisiana. 1999 WL 301703 (E.D. May 11, 1999); *see* doc. 46, pp. 23–24 & n. 28. In that matter, however, the terms of the contract at issue (another indemnity agreement) were likewise disclosed, undisputed, and explored by the court in support of its findings that the defendant could reasonably anticipate being subject to litigation in the forum state.

Because the terms of the settlement agreement remain undisclosed in this matter, and there is no basis for the court to credit Reynolds's contested allegations[6] of those terms in determining personal jurisdiction over Lonza Group for the Port's claims, *Abel* and *Joseph* are of little persuasive value. The court cannot determine what warranties or admissions were made by Lonza Group and so cannot ascertain how that agreement made it foreseeable that the Port would be able to bring claims against Lonza Group in this forum. The Port does not argue that Lonza Group established minimum contacts with the forum state in any other way, other than the rejected successor argument. Accordingly, the Port fails to establish the minimum contacts necessary to support the court's exercise of jurisdiction over its claims against Lonza Group. Because the allegations made in the proposed amended complaint do nothing to cure these defects, the Motion to Dismiss [doc. 42] must be granted and the Motion to Amend [doc. 69] denied.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion to Strike [doc. 47] be **GRANTED IN PART** and **DENIED IN PART**, and that the Motion to Dismiss [doc. 42] be **GRANTED** and the Motion for Oral Argument [*id.*] **DENIED**, with all claims raised by the Port against Lonza Group **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

---

[6] As noted supra, Reynolds has alleged that the agreement includes indemnification agreements and assumptions of liability by Lonza Group relating to the solid waste dump. *See* doc. 10, pp. 5–6, ¶¶ 16–20. Lonza Group, however, has not admitted any of these allegations. *See* doc. 44, pp. 4–5, ¶¶ 16–20.

Upon acceptance of that recommendation, it is further **RECOMMENDED** that the Motion to Amend [doc. 69] be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 23rd day of January, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE