## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO.  2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO. LLC, et al** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 122) wherein defendant, Reynolds Metal Company ("Reynolds"), moves for judgment as a matter of law as to its claims against Lonza Group, Ltd and Lonza America, Inc. ("Lonza"). Reynolds maintains that Lonza is obligated to indemnify, defend, and hold harmless Reynolds from third-party claims arising out of the Solid Waste Landfill because the Lake Charles Harbor & Terminal District's (the "District") sole claims against Reynolds in this matter arises out of the Solid Waste Landfill. For the following reasons the motion will be granted.

## FACTUAL STATEMENT

The Lake Charles Carbon Reduction Facility (the "Facility") is a carbon anode facility located on property in Lake Charles, Louisiana (the "Property"). The Property where the Facility operated is currently owned, in part, by the District and Reynolds. Since 1967, a portion of the Property that is owned by the District has been leased by the District pursuant to one or more lease agreements with entities that have owned and/or operated the Facility since at least 1967 (the "Leased Property"). Since 1967, the remainder of the Property has been owned by the entity operating the Facility.

Between 1967 and 1983, Consolidated Aluminum Corporation ("Consolidated") and Gulf Coast Aluminum ("Gulf Coast"), owned and/or operated the Facility on the Property. Between 1967 and 1983, Gulf Coast and Consolidated entered into lease agreements with the District for the Leased Property where the Facility operated.[1] Between 1967 and 1983, Consolidated and Gulf Coast operated a solid waste landfill (the "Solid Waste Landfill") that was located on the Leased Property.

The Solid Waste Landfill was closed prior to November 30, 1983. After the closure, on November 30, 1983, Reynolds purchased the Facility from Consolidated and a portion of the Property owned by Consolidated where the Facility operates. On November 30, 1983, Reynolds, the District, and Consolidated entered into an agreement whereby Reynolds would continue to lease portions of the Leased Property to be used in connection with Reynolds' operation of the Facility.

Based on alleged hazardous materials found on the Property, the Louisiana Department of Environmental Quality ("LDEQ") identified areas of concern which included the Solid Waste Landfill. Lonza disputes whether or not the material found on the Property was deemed to be hazardous by the LDEQ.[2] Lonza, Consolidated, Reynolds, and other parties engaged in litigation regarding matters, including the responsibility for the Solid Waste Landfill (the "Prior Litigation").[3]  Consequently, Lonza, Consolidated, and Reynolds entered into a Settlement Agreement to resolve and terminate all disputes and

---

[1] Lonza disputes Reynold's assertion that Lonza was the successor to Consolidated Aluminum Corporation and/or Gulf Coast Aluminum. See Affidavit of Dr. Hans Peter Pfirter, Doc. 46, Lonza exhibit E.
[2] Lonza exhibit 1, Louisiana Solid Waste Regulations, adopted December 11, 1980; Effective January 20, 1981.
[3] *Consolidated Aluminum Corp. v. Alcoa Inc. and Reynolds Metals Co*., Action No. 03-CV-1055 (M.D. La.), and *Alcoa Inc. v. Lonza Group Ltd. and Alcan Holdings,* Action No. 03-CV-5973 (M.D. La.).

claims in the Prior Litigation and to preclude the possibility of further disputes between them arising out of or in any way related to the claims alleged in the Prior Litigation.[4]

Lonza acknowledged that the Settlement Agreement was "enforceable in accordance with its terms" and represented a "valid and binding obligation of Lonza."[5] Lonza and Reynolds entered the Settlement Agreement acknowledging and agreeing that the Settlement Agreement defined the responsibilities of the Parties as to various geographical areas and hazardous materials located on the Property.[6] The purpose of the Settlement Agreement was to, in part, provide "for the Parties to indemnify each other" as described in the Settlement Agreement for any "potential liability for the Contamination."[7]

The Settlement Agreement states that:

> Lonza will assume all past, present, and future liabilities with respect to the Solid Waste Landfill ("SWL"), the Cathode Disposal Area ("CDA"), and the Former Scrubber Ponds ("Scrubber ponds").

> Lonza will indemnify, hold harmless, and defend Alcoa [] from any and all claims by any third parties, including any Agency, with respect to claims arising out of the SWL, CDA, and Scrubber Ponds.[8]

The Settlement Agreement also states that:

> [Reynolds][9] will assume past, present, and future liabilities with respect to any other [Area of Concern], except the SWL, the CDA, and the Scrubber Ponds.[10]

---

[4] Reynolds' exhibit B, Settlement Agreement and Release.
[5] *Id.* ¶ C.
[6] *Id.*
[7] *Id.* ¶ D(2).
[8] *Id.* ¶ D (3)a)(i)-(ii).
[9] Alcoa is defined in the Settlement Agreement as Alcoa Inc. and Reynolds Metals Company, and their respective officers, directors, employees, agents, members, parents, subsidiaries, and related or affiliated entities.
[10] *Id.* at 3(b)(i).

The Settlement Agreement defines "indemnity" as follows:

> To indemnify, protect, defend and hold harmless the other Party, and the Parties' employees, officers, agent, parents, subsidiaries, affiliates, successors and assigns ) collectively, the "Related Parties"), and each of them, harmless from and against any and all claims (including, without limitation, third-party claims for personal injury, or real or personal property damage, or natural resource damage), actions, administrative proceedings (including formal and informal proceedings), demands, judgments, damages, punitive damages, penalties, fines, costs, remedial costs, taxes, assessments, liabilities (including sums paid in settlement of claims), interest, or losses, including reasonable attorneys' fees and expenses (including any such fees and expenses incurred in enforcing this Agreement or collecting any sums due hereunder), reasonable consultant fees, and reasonable expert fees, together with all other reasonable costs and expenses of any kind or nature (collectively, the "Costs") that arise directly or indirectly in connection with the presence, release or threatened release of any Contamination or the presence, release or threatened release of Hazardous Materials.[11]

On September 5, 2017, the District filed its original complaint in this matter against Reynolds asserting claims for restoration of the Solid Waste Landfill under Louisiana law. On November 20, 2017, Reynolds filed a Third-Party Complaint against Lonza seeking a judgment that Lonza is obligated to indemnify, defend, and hold Reynolds harmless from any and all claims related to the District's claims, including but not limited to all claims related to the Solid Waste Landfill.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[11] *Id.* D(3)(d).

as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

The District's claim against Reynolds is for restoration and damages of the Solid Waste Landfill. Due to the Prior Litigation, Reynolds has filed a Third-Party Complaint against Lonza seeking a judgment that Lonza is responsible for any and all liability regarding the Solid Waste Landfill, including attorney fees and expenses.[12] Reynolds filed the instant motion for summary judgment seeking a judgment in its favor that declares that Lonza is obligated to indemnify, defend and hold Reynolds harmless for the claims asserted by the District against Reynolds. Reynolds argues that the plain and express language in the Settlement Agreement provides that any and all liability for the Solid Waste Landfill remains with Lonza.

*Lonza's obligations under the Settlement Agreement*

Reynolds relies on the Settlement Agreement provisions that "Lonza will assume all past, present, and future liabilities with respect to the Solid Waste Landfill ("SWL") …."[13] and "[Reynolds] will assume past, present, and future liabilities with respect to any other [Area Of Concern], except the SWL…."[14] Reynolds asserts that the Settlement Agreement was an arm's length transaction between the parties to avoid future protracted litigation. Reynolds remarks that Lonza operated and closed the Solid Waste Landfill prior to Reynolds' ownership and operation of the Facility. Thus, Reynolds reasons that enforcing the Settlement Agreement would not lead to absurd consequences. Reynolds posits that it is clear that Lonza and Reynolds entered into the Settlement Agreement with

---

[12] Doc. 10.
[13] Reynolds' exhibit A, ¶ 3(a)(i).
[14] *Id.* ¶ 3(b)(i).

the expectation that Lonza would indemnify, defend, and hold harmless Reynolds for third party claims regarding the Solid Waste Landfill. Reynolds directs the Court to the following provision:

> Lonza will indemnify, hold harmless, and defend [Reynolds] from any and all claims by any third parties, including any Agency, with respect to claims arising out of the SWL. . . .[15]

Reynolds leased the Leased Property in November 1983 at which time the Solid Waste Landfill was already present and ordered closed by the Louisiana Department of Natural Resources ("LDNR"). As noted above, the District's claims in the Prior Litigation were for restoration of the Solid Waste Landfill. The District's lawsuit asserts that Reynolds and Lonza each have an obligation to restore the Leased Property to its original condition minus normal wear and tear pursuant to Louisiana Civil Code article 2683.[16] The District complains that Reynolds and Lonza failed to satisfy their obligation as to the Leased Property. Hence, Reynolds maintains that the District's claim fits squarely into the liabilities assumed by Lonza in the Settlement Agreement.

Lonza asserts that the Prior Litigation which sought to resolve environmental issues with the Louisiana Department of Environmental Quality ("LDEQ") and LDNR is completely unrelated to the present cause of action under Louisiana Civil Code article 2683. Therefore, Lonza's position is that because the cause of action is different, there is a genuine issue of material fact such that summary judgment is inappropriate.

---

[15] *Id.* at 3(a)(ii).
[16] La. Civ. Code art. 2683 obligates a lessee to "return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear...."

7

To support its position, Lonza refers to Page 1 of the Settlement Agreement:

> WHEREAS, various environmental matters have arisen concerning the Property.
>
> WHEREAS, the Parties are engaged in litigation entitled: Consolidated Aluminum Corp. v. Alcoa Inc. and Reynolds Metals Co., Case No. 03-CV-1055 and Alcoa Inc. v. Lonza Group Ltd. and Alcan Holdings, Case No. 03-CV-5973, pending in the District Court for the Middle District of Louisiana before Chief Judge Ralph E. Tyson ("The Action.")
>
> WHEREAS, the Parties desire and intend to fully, completely, and finally resolve and terminate all disputes, claims, and actions which they assert against each other arising from or related in any way to the facts alleged in the Action, including those claims which were actually asserted or which could have been asserted in the Action or by counterclaim in the Action, and to preclude the possibility of further disputes between them arising out of or in any way related to the facts alleged in the Action, or for any other reason.[17]

Lonza further relies on Page 2 of the Settlement Agreement defines "Agency" or "Agencies" as:

> a)    "Agency" or "Agencies" shall mean the Louisiana Department of Environmental Quality ("LDEQ") and its sub-entities, the United States Environmental Protection Agency ("EPA") and/or any other federal, state, or local governmental agency or entity that has jurisdiction in connection with the presence of Hazardous Materials in, on, under, or about the Property. All references to an Agency or Agencies shall mean and include any successor Agency.[18]

"Remediate" or "Remediation" is defined in the context of the Action as follows:

> 1)    "Remediate" or "Remediation" means any of those actions with respect to Contamination constituting a response or remedial action as defined under Section 101(25) of the

---

[17] Exhibit B to Doc. 122, Settlement Agreement and Release.
[18] Id.

8

> Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA") (42 U.S.C. 961§§ *et seq*.), and similar actions with respect to Contamination as defined under comparable state and local laws, including, but not limited to LAC33:VI.117.A, and/or other cleanup, removal, containment, monitoring, treatment, closure, or other mitigation or remediation of Contamination required pursuant to this Agreement including, but not limited to, any such actions required or requested by any Agency.[19]

The Settlement Agreement defines the Purpose of the Agreement as:

> The purpose of this Agreement is to provide for a division of responsibility (i) for the Investigation, maintenance, monitoring, and/or Remediation of Contamination; (ii) prevention of any continuing or future migration, release, or leaching onto, from, or under the Property of any Contamination; (iii) ensuring that all Contamination on, under, or from the Property is effectively maintained and/or remediated in a manner that minimizes any interference with the use of the Property; (iv) providing for Lonza [redacted] to reimburse Alcoa for an agreed-upon amount for expenses and costs incurred by Alcoa as a result of the Contamination; and (v) providing for the Parties to indemnify each other as described herein for any potential liability for the Contamination.[20]

Lonza argues that the above provisions of the Settlement Agreement clearly indicate that the obligations of Lonza and Reynolds are limited to The Action, and to remediation and contamination as defined in the Settlement Agreement.

The District's claim in the main demand, albeit pursuant to Louisiana Civil Code article 2683, is for the costs associated with the clean up, purification, remediation,

---

[19] *Id.* D(1)(l).
[20] *Id.* D(2)(redactions in original).

restoration and loss of rental income due to the hazardous materials placed in the Solid Waste Landfill.

Lonza is arguing the because the District is alleging damages based on a different cause of action—restoration of leased property—Lonza's defense and indemnity obligations are not covered under the Settlement Agreement. The Court disagrees. The clear language of the Settlement Agreements expressly states that Lonza will defend, indemnify, and hold harmless Reynolds for claims arising out of the Solid Waste Landfill by third parties.  The instant litigation involves just that—a claim by a third party that arises out of the Solid Waste Landfill.  It is of no moment that the District has based its claims on Louisiana Civil Code article 2683. Nor is the Court persuaded that the Prior Litigation was limited in scope to exclude the current claim by the District because the preamble to the Settlement Agreement identified the Prior Litigation.

*Reynold's duty to mitigate*

Lonza also argues that Reynolds failed to mitigate its potential liability by not taking advantage of the option to purchase the Property for $1,000.[21] Without a doubt, parties have a duty to mitigate their damages. *Aisole v. Dean*, 574 So.2d 1248 (La.1991); *Al's Trucking, Inc. v. State Farm Tire & Cas. Co.,* 735 so.2d 833 (La. App. 3 Cir. 5/12/99), *writ denied,* 747 So.2d 1122 (La. 9/24/99). Lonza suggests that Reynolds intentionally and/or negligently failed to take reasonable and necessary steps to mitigate its potential liability

---

[21] Article V, November 30, 1083 Amended and Restated Underlying Lease Agreement between the District and Reynolds, Lonza exhibit C, pp. 76-77 attached to Doc. 4.

to the District and/or other third parties by failing to exercise its option in the Settlement Agreement to purchase the Property.

The Court finds that Lonza's argument that Reynolds failed to mitigate its damages because it did not purchase the Leased Property is without merit. Louisiana Civil Code article 2002 provides that "[a]n obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced."

A duty to mitigate arises when there is a breach followed by damages. The duty of an injured party to mitigate damages presumes that damage has occurred following the obligor's breach. See *First Bank & Tr. v. Redman Gaming of Louisiana, Inc*., 131 So.3d 224, 230 (La.App. 5 Cir. 12/12/13). As noted by Reynolds, its option to purchase the property existed in 2007. At that time Reynolds had no knowledge of the instant lawsuit, thus, there was no duty to mitigate at that time.

*Prematurity of Reynolds' motion for summary judgment*

In its third-party claim against Lonza, Reynolds seeks a declaration that under the express terms of the Settlement Agreement, Lonza has a duty to defend, indemnify, and hold harmless Reynolds for the claims asserted by the District in this lawsuit. Lonza maintains that Reynolds' motion for summary judgment regarding indemnity against Lonza is premature.

Lonza argues that Reynolds' motion for summary judgment is premature because as held by the Louisiana Supreme Court, "an indemnitor is not liable under an indemnity agreement until the indemnitee actually makes payment or sustains loss." *Meloy v.*

*Conoco, Inc.*504 So.2d 833, 839 (La. 1987). Lonza argues that the costs of defense does not arise until the lawsuit is concluded and defense costs are paid. *University Rehabilitation Hosp., Inc. v. International Co-Op. Consultants, Inc.,* 2006 WL 1098905 at *7 (W.D. La. Apr. 24, 2006) (quoting *Meloy v. Conoco, Inc.,* 504 So.2d 833, 839 (La. 1987); *Morella v. Bd. Of Comm'rs of Port of New Orleans,* 888 So.2d 321, 325 (La. App. 4 Cir. 10/27/04).

In *XL Specialty Ins. Co. v. Kiewit Offshore Services, Ltd.,* 513 F.3d 146 (5th Cir. 2008), the Fifth Circuit affirmed the District Court's grant of a motion for summary judgment on a contractor's third party claim for a declaratory judgment that its subcontractor, "had a duty to defend and indemnify" in the subcontractor's indemnification provision. While the Court agrees that Lonza will not be liable for indemnity until Reynolds makes payment or sustains a loss, this Court can issue a declaratory judgment as to Lonza's obligations regarding defense and indemnity. However, as noted by Lonza, that indemnity obligation, even if determined now, will not ripen until or if Reynolds is cast in judgment.

## CONCLUSION

For the above stated reasons, the motion for summary judgment will be granted; the Court finds that the Settlement Agreement between Lonza and Reynolds obligates Lonza to defend, indemnify and hold harmless Reynolds for the claims asserted by the District in this lawsuit.

**THUS DONE AND SIGNED** in Chambers, on this 1st day of October, 2019.

_____
**JAMES D. CAIN, JR.**
**UNITD STATES DISTRICT JUDGE**

12