UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO. 2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court are four motions:(1) "Motion for Reconsideration" (Rec. 156) filed by Lonza America Inc. and Lonza Group Ltd., (2) "Lonza Group Ltd. And Lonza America Inc.'s Motion for Summary Judgment" (Rec. 139), (3) "Lonza Group Ltd. and Lonza America Inc.'s Motion for Miscellaneous Relief" (Rec. 172),[1] 94)"Lonza Group Ltd, Lonza America Inc. and Reynolds Metal Company's Joint Motion for Telephonic Status Conference" (Rec. 169).

### BACKGROUND

This lawsuit involves alleged contamination to a Solid Waste Landfill ("SWL") that is located on property owned by the Lake Charles Harbor & Terminal District (the "District"). Defendant, Reynolds Metal Co. ("Reynolds"), leased the property from the District. The Louisiana Department of Environmental Quality identified areas of concern with the SWL which eventually resulted in litigation between Lonza, Consolidated Aluminum Corporation ("Consolidated") and/or Gulf Coast Aluminum, Reynolds and

---

[1] Rec. 168 is a "Joint Motion for Ruling on Lonza's Motion for Reconsideration and Lonza's Motion for Summary Judgment" which was amended to remove the "joint" nature of the motion (Rec. 170 and 171). Rec. 168 was replaced with Rec. 172 making Rec. 168 moot.

other parties. Consequently, Lonza, Consolidated and Reynolds entered into a Settlement Agreement that resolved the claims in the litigation.

On September 5, 2017, the District filed the instant lawsuit asserting claims against Reynolds for restoration of the SWL. Relying on the Settlement Agreement, Reynolds filed a Third-Party Complaint against Lonza Group, Ltd. And Lonza America, Inc. ("Lonza"). For a more detailed recitation of the facts, see the Memorandum Ruling dated 10/01/19. [2] Relying on the Settlement Agreement, Reynolds filed a motion for summary judgment[3] seeking to obligate Lonza to indemnify, defend and hold harmless, Reynolds for the claims asserted by the District against Reynolds. This Court granted that motion on October 1, 2019.[4]

About one week prior to the Court issuing that ruling, Lonza filed its own motion for summary judgment[5] seeking to dismiss Reynolds' claims against Lonza for failure to mitigate. Lonza then filed a notice of appeal[6] to the Fifth Circuit as to the Court's Memorandum Ruling and Judgment[7] on Reynold's motion for summary judgment. Due to the pending appeal, the Court issued an order to stay the motion for summary judgment filed by Lonza.[8] On that same day, Lonza filed a motion for reconsideration[9] as to the Court's Memorandum Ruling and Judgment[10] which granted Reynold's motion for

---

[2] Rec. 144.
[3] Rec. 122.
[4] Recs. 144 and 145.
[5] Rec. 139.
[6] Rec. 153.
[7] Recs. 144 and 145.
[8] Rec. 154.
[9] Rec. 156.
[10] Rec. 144 and 145.

2

summary judgment. Due to the confidential nature of the Settlement Agreement between Reynolds and Lonza, the motions and memoranda as to the Settlement Agreement filed by Reynolds and Lonza, and the Court's rulings have been sealed.

On December 20, 2019, the Fifth Circuit issued an order placing Lonza's appeal in abeyance, and ordered this Court to rule on Lonza's motion for reconsideration.[11] Pursuant to that Order, this Court ordered Reynolds to file its opposition to the motion for reconsideration and Lonza to file its reply.[12] Lonza has now filed a motion requesting that this Court lift its stay as to the pending motion for summary judgment and rule on both its motion for summary judgment and the motion for reconsideration collectively.[13] Lonza has also filed a joint motion for a hearing regarding its motion for a collective ruling.[14] Lonza then filed a motion to amend its joint motion[15] for a hearing to remove the "joint" nature of the motion for a hearing, stating it misunderstood Reynolds' position as to the joint motion. Lonza now seeks to file the motion for a hearing on behalf of Lonza only. The Court will now address all of the motions that are currently outstanding.

### *Joint Motion to Rule on Lonza's Motion for Summary Judgment and Motion for Reconsideration (Motion for Miscellaneous Relief)*

The Court agrees that it would be not only practical, but also judicially efficient to rule on these motions contemporaneously, as they involve the same legal issues. Accordingly, this motion will be granted.

---

[11] Rec. 162.
[12] Rec. 163.
[13] Rec. 168.
[14] Rec. 169.
[15] Rec. 170.

3

### *Motion for a Telephone Status Conference*

The parties have requested a telephone status conference to discuss the issues surrounding the motion for miscellaneous relief. The Court agrees that the motions by Lonza should be ruled upon contemporaneously; therefore, this motion will be denied as moot.

## MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment,[16] Lonza seeks to have the claims asserted against it dismissed, or alternatively, to limit Lonza's damages to $1,000. Lonza argues that Reynolds failed to mitigate its damages when it did not buy the leased property that includes the SWL from the District at the end of its lease.

## FACTUAL STATEMENT

On November 30, 1983, the District, Reynolds, and Consolidated entered into an Agreement of Assignment, Assumption, Release and Amendment, and the District and Reynolds entered into an Amended and Restated Underlying Lease Agreement (hereinafter referred to as the "Amended Lease"). The Amended Lease granted Reynolds an option to purchase the leased property from the District beginning on June 1, 1983, for $177,778; the purchase price progressively decreased each and every year. By December 1, 2007, and any time thereafter, Reynolds could have purchased the property for $1,000; Reynolds disputes that the option in the Amended Lease could be exercised for as little as $1,000.

---

[16] Prior to this Court placing a stay on the motion for summary judgment, the Clerk issued a Notice of Motion Setting which set the deadlines for responding to the motion to 21 days and the reply to the response to 7 days thereafter. Rec. 142. Reynolds filed its opposition on 10/21/2019 (Rec. 150). Lonza did not file a reply which would have been due on 10/28/2019. Thus, the matter is ripe for decision.

4

Beginning in 2003, Lonza and Reynolds were engaged in prior unrelated litigation which sought to resolve environmental issues regarding compliance with the LDEQ and the Louisiana Department of Natural Resources ("LDNR"). Pursuant to the Settlement Agreement, that litigation was resolved in 2010.

On March 31, 2016, Reynolds returned the portion of the property that included the SWL to the District and elected not to exercise its option to purchase the property. After the lease was terminated, the District filed the instant lawsuit against Reynolds; the District maintains that Reynolds is obligated pursuant to Louisiana Civil Code article 2683 to restore the SWL to its pre-lease condition, except for normal wear and tear.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State*

5

*Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Lonza relies on the doctrine of avoidable consequences, better known as the duty to mitigate, to hold Reynolds responsible for the damages the District asserts against Reynolds in this lawsuit. The doctrine of avoidable consequences is a principle in which a party cannot recover damages that flow from consequences which that party could have avoided, and any such damages may be reduced when a party fails to make these efforts. *Dupre v. Tri-Parish Flying Service, Inc.*, 355 So.2d 554 (La.App. 3 Cir. 2/6/1978); Louisiana Civil Code article 2002; *MB Industries, LLC v. CNA Ins. Co.*, 74 So.3d 1173, 1181 (La. 2011) (citing *Wooley v. Lucksinger*, 61 So.3d 507, 607 (La. 4/1/2011); *A Better Place, Inc. v. Giani Investment Co.*, 445 So.2d 728, 732 (La. 1984). Louisiana Civil Code article 2002.

Lonza cites *Unverzagt v. Young Builders, Inc.*, 215 So.3d 823, 825 (La. 1968), which held that a duty to mitigate encompasses what a "reasonably prudent man" would do to lessen his damages, given the facts known to him at the time and avoiding the temptation to view the case through hindsight. Lonza argues that it was virtually certain that the costs and risks associated with Louisiana Civil Code article 2683's obligation to restore the leased property would far exceed the $1,000 cost of exercising the Lease's option to purchase the property which included the SWL.

Lonza reminds the Court that in 2010, Lonza Group, Lonza America and Reynolds entered into a Settlement Agreement that resolved the environmental issues raised by the LDEQ and LDNR that included the SWL. Thus, Lonza maintains that Reynolds was aware of its potential article 2683 restoration obligations as a lessee when it negotiated the return of the leased property to the District.

Lonza argues that the Amended Lease contemplated that a third-party (such as Lonza) could have exercised the option to purchase. Section V of the Amended Lease provides as follows:

> At the closing of such purchase Lessor will upon receipt of the purchase price deliver to Lessee *or such other purchaser* instruments conveying to Lessee *or such other purchaser* all of the right, title and interest in the Premises which Lessor has, subject to no liens, encumbrances, rights or claims of others, other than those which shall have arisen through the Lessee.[17]

---

[17] Lonza exhibit 2 (emphasis added).

7

Thus, Lonza maintains that at the least, in order to mitigate its damages, Reynolds should have offered Lonza the option to purchase the property which would have alleviated any restoration obligation under article 2683.

In its opposition, Reynolds reminds the Court that it has rejected this exact same argument in our previous Memorandum Ruling.[18] Reynolds argues, and this Court agrees, that the doctrine of mitigation of damages is inapplicable because it only applies to Reynolds after the District filed a claim against Reynolds. Reynolds submits that it was under no obligation to purchase the leased property, noting that it is Lonza's duty to mitigate its own damages. Finally, Reynolds maintains that Lonza's motion for summary judgment addresses the same issue (failure to mitigate) that this Court addressed in its prior Memorandum Ruling. The Court agrees and therefore will deny Lonza's motion for summary judgment for the reasons set forth and discussed in its prior Memorandum Ruling.

## **MOTION FOR RECONSIDERATION**

A motion for reconsideration pursuant to the Federal Rules of Civil Procedure "must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could and should have been made before the judgment is issued. *Schiller v. Physicians Resource Group Inc.,* 342 F.3d 563, 567 (5th Cir. 2003) (citations and internal quotation marks omitted); *Thurman v. Louisiana Dep't of Health & Hosps.,* 2013 WL 4026897, at *1 (W.D. La. Aug. 6, 2013); see also

---

[18] Rec. 143.

*Lacoste v. Pilgrim Int'l,* 2009 WL 1565940, at *8 (E.D. La. June 3, 2009) (quoting *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

"A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Lawrence v. Rocktenn CP, LLC,* 2017 WL 3165121, at *2 (W.D. La. July 25, 2017). "A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." *LeClerc v. Webb,* 419 F.3d 405, 412 n. 13 (5th Cir. 2005).

Reynolds challenges Lonza's assertion that the Court should rescind its prior Memorandum Ruling in order for the parties to conduct discovery. Lonza refers to the order dated 8/16/18 wherein the Court issued as stay order as to discovery, other than discovery related to jurisdictional discovery. That stay was lifted on 5/3/2019 by order of the Court;[19] Reynolds' motion for summary judgment was filed on 7/10/2019.[20] Significantly, as noted by Reynolds, Lonza failed to argue that it needed to complete discovery when Reynolds filed its motion for summary judgment. The Court finds no merit to Lonza's argument that it was premature for the Court to rule on the motion for summary judgment.

Lonza asserts that Reynolds breached the implied covenant of good faith by intentionally failing to share information and denying Lonza access to the SWL.

Lonza complains that Reynolds breached Section 5, subsection b) of the Settlement Agreement which provides as follows:

> (b) <u>Sharing of Information</u>. Any and all information collected, received, obtained, or prepared by Lonza concerning Contamination on, under, or from the Property or other affected properties, including, without limitation, data, laboratory analysis, reports, and correspondence from or to Agencies and any other documents reasonably related to the subject matter of this Agreement (excluding documents

---

[19] Rec. 67.
[20] Rec. 82.

prepared by or for the Party's attorneys and which are privileged under applicable laws governing attorney-client privilege and work-product doctrine), shall be provided promptly by Lonza to Alcoa and in no case more than ten (10) business days after their receipt or completion by Lonza or its agents. Likewise, Alcoa shall have the same obligation with respect to documents related to the areas of Lonza responsibility (the Dumps and Scrubber Ponds). [21]

Lonza also complains that Reynolds breached Section 5, subsection h) of the Settlement Agreement when it entered into the Partial Release of Leased Property with the District. Section 5, subsection h) provides in relevant part:

> (i) Alcoa agrees to cooperate with Lonza with respect to its obligations under this Agreement related to actions at the SWL, CDA, and Scrubber Ponds ("Lonza Sites") at the property. Alcoa will allow access to Lonza, any Agency, and their consultants and counsel, limited to the Lonza sites, for performance of the Investigation, maintenance, monitoring and remediation activities required by this Agreement.[22]

Lonza, for the first time, argues that Reynolds breached its obligations in the Lease Agreement because it failed to share information with Lonza concerning its intention to enter into a partial release of the property. Lonza asserts that Reynolds should have shared this information with it because the SWL was "reasonably related to the subject matter" of the Settlement Agreement. Lonza argues that Reynolds' partial release of the leased property (a change of ownership) is a breach of Reynolds' obligation to share information "relating to the areas of Lonza responsibility..."[23] Lonza asserts that had Reynolds notified it of the partial release, Lonza could have acquired the property at issue which would have eliminated any cause of action for the restoration of property under Louisiana Code of Civil Procedure 2683.

---

[21] Exhibit B, Rec. 122-4, Redacted Settlement Agreement and Release.
[22] Id.
[23] Id.

First, and foremost, Lonza did not raise these arguments in its opposition to Reynolds' motion for summary judgment. Lonza has not indicated that it was prevented from making such arguments, and/or that they were not available during the briefing period prior to this Court ruling on Reynolds' motion for summary judgment. These are arguments Lonza could have made when Reynolds filed its motion for summary judgment, but Lonza failed to do so.

Additionally, the Court finds no merit to Lonza's arguments. "A mere failure to fulfill an obligation, without a showing of intent or ill-will, does not constitute a breach of good faith." *Brill v. Catfish Shaks of America, Inc.* 727 F.Supp. 1035 (E.D. La. 10/10/89). Moreover, the implied duty of good faith cannot be used to alter or enhance the express terms of a contract. In this case, it appears Lonza is attempting to broaden the interpretation of the explicit terms of the Settlement Agreement to impose an additional obligation on Reynolds--an obligation the parties never contemplated or intended when they entered into the Settlement Agreement. Lonza has failed to show that Reynolds exhibited an intent, ill-will, or a sinister motivation towards Lonza, nor has it shown that Reynolds intentionally failed to cooperate with Lonza with respect to Lonza's ongoing and continuing obligations to the SWL.

Lonza complains that Reynolds denied Lonza access to the SWL when it released that portion of the leased property that included the SWL. Lonza argues that the partial release of the leased property by Reynolds is a breach of Reynolds' obligation to

11

allow Lonza access to the property at issue "for the performance of the investigation, maintenance, monitoring and remediation activities."[24]

The Court finds no merit to this argument. The Settlement Agreement obligated Lonza to be responsible for maintaining the SWL, however, Lonza submits no evidence for this Court to consider, that it no longer has access to the SWL to perform those obligations. Significantly, arguments are not evidence.

Finally, Lonza against argues that Reynolds breached the implied covenant of good faith and fair dealing by failing to notify Lonza that it was terminating that portion of the lease that included the SWL and was not going to exercise its option to purchase the property. This argument was considered in Reynolds' motion for summary judgment and will not be addressed again.

## **CONCLUSION**

Considering the Motion for Miscellaneous Relief wherein Lonza requests that this Court rule on both Lonza's Motion for Summary Judgment and Motion for Reconsideration contemporaneously, the Court will grant the motion and has considered both motions in this ruling.

As to Lonza's Motion for a Hearing, the Court finds it unnecessary and will deny said motion.

For the reasons set forth above, the Court will deny Lonza's Motion for Reconsideration and Motion for Summary Judgment.

---

[24] Id.

12

**THUS DONE AND SIGNED** in chambers on this __3__ day of February, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**