UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

LAKE CHARLES HARBOR &             CIVIL ACTION NO.: 2:17-cv-01114
TERMINAL DISTRICT

VERSUS                            DISTRICT JUDGE CAIN

REYNOLDS METAL COMPANY            MAGISTRATE JUDGE KAY

LONZA GROUP LTD AND LONZA AMERICA INC.'S
REPLY MEMORANDUM IN SUPPORT OF ITS RULE 12(b)(2)
 MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants Lonza Group Ltd and ("Lonza Group") and Lonza America Inc. ("Lonza America") (collectively "Lonza" or "Lonza Entities") respectfully submit this Reply memorandum in support of their Motion to Dismiss for lack of personal jurisdiction:

I.      The District Has Not Pleaded Sufficient Jurisdictional Facts.

The U.S. Supreme Court has made clear that for specific personal jurisdiction to attach, the alleged injuries must "arise out of or relate to" the defendant's activities in the forum.[1]  The fatal flaw in the District's position is that it has not alleged, nor can it show, that there is any nexus (let alone a causal connection) between the alleged Lonza "contact" with Louisiana (the indemnity obligation in the Settlement Agreement with Reynolds) and the District's lease-based claim under Louisiana Civil Code article 2683. As also demonstrated below, there is no basis upon which this Court can exercise "pendent personal jurisdiction" over the District's Article 2683 claim.

The District has not established a *prima facie* case of personal jurisdiction.[2] As such, the District has not met its burden and Lonza Group and Lonza America's Motion to Dismiss should be granted.

---

[1] *Burger King v. Rudzewiez*, 471 U.S. 462, 472 (1985).
[2] *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 868-869 (5th Cir. 2001).

**A. The District's Article 2683 claim does not arise out of or relate to Lonza's Indemnity Obligations.**

The District's contention that specific personal jurisdiction exists based on Lonza Group and Lonza America's "assumed obligations to indemnify and defend Alcoa and Reynolds for claims arising from environmental conditions on the subject immovable property"[3] is erroneous and misplaced.  Lonza Group and Lonza America's alleged indemnity obligations contained in the 2010 Settlement Agreement are owed to Reynolds, not to the District. The District's Article 2683 claim against the Lonza Entities arises from a series of decades old lease agreements between the District and defendant Consolidated, and notions of successor liability.

The District argues in its Opposition that independent personal jurisdiction exists under §13:3201(B), because both Lonza Entities have sufficient "minimum contacts" with the forum as to satisfy both state and US Constitutional Due Process requirements.  To that end, the District cites to the U.S. Supreme Court's opinion in *Burger King v. Rudzewiez*[4] for the proposition that specific jurisdiction exists where a defendant purposefully directs his activities at the forum state and the "litigation results from injuries that 'arise out of or relate to' those activities."[5]

Here, however, the District's La. C.C. art. 2683 claim does not "arise out of or relate to" the indemnity obligations in the Settlement Agreement.  To the contrary, and in stark contrast to the position it now espouses, the District alleges in its Second Amended Complaint that its Article 2683 claim against the Lonza Entities arise out of, (a) "a series of complex transactions originating with a Swiss Company, Swiss Aluminum Ltd,"[6] and (b) a series of Lease Agreements between the

---

[3] R. Doc. 203 ¶9.
[4] *Burger King v. Rudzewiez*, 471 U.S. 462 (1985).
[5] *Burger King v. Rudzewiez*, 471 U.S. 462, 472 (1985).
[6] R. Doc. 203 ¶23.

District, on the one hand, and defendants Consolidated and Reynolds on the other hand.[7]  This Court has already dismissed this theory when it ruled that the District failed to establish that Lonza Group was the successor-in-interest of Algroup.[8]

The District was not a party to and is not a beneficiary of the Settlement Agreement. The District's La. C.C. art. 2683 claim is entirely separate and independent of the Settlement Agreement, would purportedly exist whether or not there was a Settlement Agreement, and thus, cannot be said to "arise out of or relate to" the Settlement Agreement.

1.  The District's reliance on *Abel v. Montgomery Ward Co., Inc.* is misplaced.

The facts in *Abel v. Montgomery Ward Co., Inc.*,[9]  are distinguishable from the present facts and the District's reliance on *Abel* to further its argument that there are sufficient minimum contacts is misplaced. In *Abel*, the foreign manufacturer's involvement in (and contacts with) the forum, went well beyond an indemnity obligation to the bicycle seller, and were more extensive than the Lonza Entities indemnity obligation with respect to the Solid Waste Landfill.  For example, the foreign manufacturer marketed its bicycles through a distributor who has agreed to serve as a sales agent in the forum State, extended additional warranties which could flow through to consumers in the forum, maintained liability insurance, and agreed to supply instruction books to be distributed with its bicycles.  The Court stated:

> These contractual undertakings by the manufacturer take its contacts with Virginia a step beyond the mere foreseeability that its products may find their way into this forum. The provisions give the manufacturer notice that it 'should be reasonably anticipate[d] being haled into court …', in those forums, including Virginia, where Montgomery Ward sells the manufacturer's products to consumers.[10]

---

[7] R. Doc. 203 ¶12-21.
[8] R. Docs. 75, 76.
[9] *Abel v. Montgomery Ward Co., Inc.,* 798 F.Supp. 322, 325-326 (E.D. Va. 1992).
[10] *Abel v. Montgomery Ward Co., Inc.,* 798 F.Supp. 322, 325-326 (E.D. Va. 1992).

The *Abel* plaintiff purchased a bicycle manufactured by the foreign entity, and was injured by the bicycle. There was clearly a causal nexus between the *Abel* plaintiff's injuries from the bicycle, and the foreign manufacturer's bicycle related activities in the forum.  Here, there is no causal connection between the District's Lease Agreements and the Reynolds Settlement Agreement. The District has had no dealings, contractual or otherwise, with the Lonza Entities. The District was not a party to, nor does it claim to be a third-party beneficiary of, the Settlement Agreement. Conversely, the Lonza Entities were not parties to the Lease Agreements and thus could not have reasonably anticipated being "haled into court" on account of a tenant's obligations arising under those Lease Agreements.

   2.   *Joseph v. Apache Stainless Equipment Corp.* is inapposite.

Unlike the District's direct claims against the Lonza Entities, *Joseph v. Apache Stainless Equipment Corp.*[11] involved a claim by direct defendant, Apache, against third-party defendant, Henebry.  There, the court found personal jurisdiction proper because the claims arose from the indemnity agreement between Apache and Henebry and the relationship between the indemnitor and indemnitee.  Here, the District has had no dealings, contractual or otherwise, with the Lonza Entities. The District was not a party to, nor does it claim to be a third-party beneficiary of, the Settlement Agreement. Conversely, the Lonza Entities were not parties to the lease agreements, and thus could not have reasonably anticipated being "haled into court" on account of a tenant's liabilities arising under those lease agreements.

This Honorable Court does not have specific personal jurisdiction over either Lonza Entity, and the District's claims against Lonza Group and Lonza America should be dismissed with prejudice.

---

[11] *Joseph v. Apache Stainless Equipment Corp.*, 1999 WL 301703 (E.D. May 11, 1999)

**B. Pendent Personal Jurisdiction is not applicable to this matter.**

There is currently no controlling jurisprudence adopting the theory of pendent personal jurisdiction.[12] Moreover, there is no controlling jurisprudence or statutory authority to support the application of pendent personal jurisdiction in the manner The District is proposing in its Opposition.

Undersigned counsel could not find any support for The District's unique interpretation and not one opinion The District cites supports its application herein.[13] Instead, these cases dealt with personal jurisdiction over one count *pursuant to a federal statute that confers nationwide service of process* and pendent personal jurisdiction over factually related counts that did not independently satisfy the requirements for personal jurisdiction. With the rare exception of a few federal statutes (*i.e. RICO*), pendent personal jurisdiction applies to additional *claims*, *not parties*, and has almost never been applied absent a federal statute conferring nation-wide service of process (thus establishing personal jurisdiction under Fed. Rule Civ. Proc. Rule 4(k)(2)).[14] Importantly, it is generally held that when court uses its discretion to apply pendent personal jurisdiction, if it dismisses the federal claims, "the most common response ... has been to dismiss the state claim or claims without prejudice."[15]

---

[12] *Conwill v. Greenberg Traurig, L.L.P.,* No. CIV.A. 09-4365, 2009 WL 5178310, at *8 (E.D. La. Dec. 22, 2009).

[13] The District distorts the concept and function of pendent personal jurisdiction as allowing a court to assert supplementary jurisdiction between *parties* without any statutory authority to do so. In practice, pendent personal jurisdiction applies almost exclusively to additional state-law *claims* of a party that are brought alongside its *federal law claims* which also allow for nation-wide assertion of personal jurisdiction.

[14] *See* Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L.J. 1619, 1662 (2001).

[15] *United States v. Botefuhr,* 309 F.3d 1263, 1273 (10th Cir. 2002)(quoting *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir.1995)).

The District argues that this Court may  exercise personal jurisdiction over the Lonza Entities for its Article 2683 claim because there is personal jurisdiction over the Lonza Entities for the Reynolds third party claim.  However, there is no federal statute conferring national jurisdiction or other basis for asserting pendent personal jurisdiction over either Lonza Entity.  Instead, there are two separate actions, by two separate parties, for two separate disputes, which are based on and will be determined by two separate sets of facts, and which involve two entirely separate issues of law.[16]  The District's claim and Reynolds' claim simply do not arise from "a common nucleus of operative facts."[17]  Specific jurisdiction for The District's leasehold claim cannot be found by piggybacking that claim on Reynolds' contractual claim, as to do so would impermissibly extend the reach of a court's jurisdiction to such an absurd degree that so long as *any* party is ever properly before *any* court for any one claim, that party *or any other party* could then be brought before that court for *any* other claim by *any* other party – no matter how unrelated – so long as one party's claim provides a basis for personal jurisdiction.  Such a result contradicts the spirit of due process, public policy, and the laws of Louisiana and the United States.

---

[16] Contrary to the District's assertions, Lonza Group and Lonza America are not liable *in solido* with Reynolds.  *Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp.*, 09-1100, 2011 WL 5725791 (W.D. La. 11/16/2011), is inapposite.  The *Sweet Lake* court found lessees and sublessees of the leased property liable *in solido* to the lessor.  Here, neither Lonza Group nor Lonza America ever entered into a lease with the District.  Neither Lonza Group nor Lonza America is a lessee, sublessee, or assignee of the subject property.  The La. C.C. art. 2683 obligation the District seeks to enforce, to restore the leased property, is that of the lessees.  Solidarity is never presumed under La. C.C. art. 1796, it must be expressly stipulated.  *See Wooten v. Wimberly*, 272 So.2d 303,305 (La. 1972).  A solidary obligation arises from a clear expression of the parties' intent or from the law.  The Settlement Agreement contains no language or provision that either Lonza Entity is liable *in solido* with Reynolds, and there is nothing in the law that non-lessees, such as Lonza America and Lonza Group, are liable *in solido* with lessees for a lessor's claim under art. 2683.

[17] *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 725 (1986).

## II.      Conclusion.

There is no basis in law or the facts of this case for asserting personal jurisdiction over Lonza Group or Lonza America for the District's claim under Louisiana Civil Code Article 2683. As the District has failed to meet its burden of proof of making a *prima facie* showing that Lonza Group or Lonza America should be subject to the jurisdiction of this Honorable Court, and as there is ample evidence to support Lonza Group and Lonza America's Motion to Dismiss, the District's Second Amended Complaint against Lonza Group and Lonza America should be dismissed, with prejudice, at the District's cost.

**WHEREFORE**, Defendants, Lonza Group Ltd and Lonza America Inc. respectfully requests that this Honorable Court dismiss them from this proceeding for lack of personal jurisdiction, with prejudice, and for any other relief in law or in equity which this Court deems appropriate.

Respectfully submitted,

**COSMICH SIMMONS & BROWN, PLLC**

/s/ *Forrest Ren Wilkes*
FORREST REN WILKES (LSBA NO. 22897)
JASON K. ELAM (LSBA NO. 34533)
650 Poydras Street, Suite 2215
New Orleans, Louisiana 70130
Telephone: (504) 262-0040
Facsimile: (504) 262-0041

***Attorneys for Lonza Group Ltd
and Lonza America Inc.***

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing was electronically filed with the Clerk of Court of the Western District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, on this 21 day of May 2021.

/s/ *Forrest Ren Wilkes*
**FORREST REN WILKES**