UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO. 2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Lonza Group Ltd and Lonza America Inc.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Oral Argument Requested" (Doc. 215) wherein Defendants, Lonza Group Ltd and Lonza America Inc. ("Lonza") move to be dismissed from this lawsuit. Lonza also requests oral arguments as to their motion.

## FACTUAL STATEMENT

Lake Charles Harbor and Terminal District (the "District) operates a deep-water port, commonly referred to as the Port of Lake Charles. It provides infrastructure for marine terminal facilities and is designed to accommodate a wide range of cargoes, including forest materials, aluminum ingots, grains, rice, petroleum and petroleum products, frac sand, and heavy-lift project cargoes.

The Lake Charles Carbon Reduction Facility (the "Facility") is a carbon anode facility located on property in Lake Charles, Louisiana (the "Property"). The Property where the Facility operated is currently owned, in part, by the District and Reynolds Metal Company, LLC ("Reynolds"). Since 1967, a portion of the Property that is owned by the District has been leased by the District pursuant to one or more lease agreements with

entities that have owned and/or operated the Facility since at least 1967 (the "Leased Property"). Since 1967, the remainder of the Property has been owned by the entity operating the Facility.

In 1968, Gulf Coast began construction of an aluminum manufacturing facility on the leased property, which consisted of a carbon electrode manufacturing operation on the land leased from the District and an aluminum reduction operation on the property leased from the Parish. Gulf Coast also created two disposal areas: a solid waste landfill on the land leased from the District (the "Solid Waste Landfill") and a cathode disposal area on the land leased from the Parish.

Between 1967 and 1983, Consolidated Aluminum Corporation ("Consolidated") and Gulf Coast Aluminum ("Gulf Coast"), owned and/or operated the Facility on the Property. Between 1967 and 1983, Gulf Coast and Consolidated entered into lease agreements with the District for the Leased Property where the Facility operated. Between 1967 and 1983, Consolidated and Gulf Coast operated the Solid Waste Landfill that was located on the Leased Property.

In 1970, 9.37 acres was added to the 1970 Lease Agreement, which was reduced to 1.60 acres in 1976 (the "1976 Agreement"). During or about January 1971, Consolidated acquired Gulf Coast by merger and assumed all rights and obligations of lessee relating to the Facility. In 1983, Consolidated entered an "Agreement of Assignment, Assumption, Release and Amendment" with Reynolds, transferring to Reynolds all rights and obligations expressly "retained" by Consolidated, including responsibility for the environmental conditions raised by these claims.

In 1983, the District entered an "Amended and Restated Underlying Lease Agreement" with Reynolds restating the Underlying Lease Agreement and terminating certain provisions in the 1970 and 1976 Agreements (Collectively, the 1970, 1976 and the 1983 Lease Agreements are referred to as "District Lease Agreements").

The Solid Waste Landfill was closed prior to November 30, 1983. After the closure, on November 30, 1983, Reynolds purchased the Facility from Consolidated and a portion of the Property owned by Consolidated where the Facility operates. On November 30, 1983, Reynolds, the District, and Consolidated entered into an agreement whereby Reynolds would continue to lease portions of the Leased Property to be used in connection with Reynolds' operation of the Facility.

In May 1990, Alcoa purchased Reynolds and succeeded to the rights and obligations of Reynolds with respect to the Facility and the District Lease Agreements. Lonza succeeded to the rights and obligations of Consolidated with respect to the Facility and the District Lease Agreements through a series of complex transactions originating with a Swiss Company, Swiss Aluminum Ltd., which owned Consolidated (via a domestic corporation). In sum, Swiss Aluminum Ltd. was acquired by Alusuisse Ltd., which changed its name to Alusuisse Lonza Holding Ltd., and later to Alusuisse Lonza Group Ltd., In 1999, Lonza Group was created as part of a demerger by Alusuisse Lonza Group Ltd., and the surviving rights and obligations of Consolidated were transferred to Lonza America Inc., a domestic company wholly-owned by Lonza Group.

The Solid Waste Landfill is an approximately fifty-five-acre rectangular area located in the southwest corner of the property owned by the District and formerly leased

under the District Lease Agreements. Beginning in approximately 1968 and continuing into the early 1980s, Gulf Coast and Consolidated buried many tons of industrial waste in the Solid Waste Landfill. In 1982, Reynolds and Consolidated agreed to close the Solid Waste Landfill prior to Reynolds' purchase of the Facility, prompting Consolidated to request a permit from the Louisiana Department of Natural Resources ("LDNR") authorizing closure.

In 2003, following a disagreement regarding responsibility for environmental maintenance obligations at the Facility, Consolidated filed a petition for declaratory judgment in New York which was later transferred to the Middle District of Louisiana against Alcoa and Reynolds. See *Consolidated Aluminum Corp. v. Alcoa, Inc. and Reynolds Metals Co.,* Civ. Action 03-cv-1055, and *Alcoa Inc. v. Lonza Group Ltd. and Alcan Holdings,* Civ. Action 03-cv-5973 (referred to as the "Lonza/Reynolds Action").

In 2005, the Louisiana Department of Environmental Quality ("LDEQ") issued administrative orders to Consolidated and Reynolds concerning environmental conditions of the Facility. The District did not receive notice of and was not a party to the administrative actions by LDEQ regarding the Solid Waste Landfill.

On October 1, 2010, Defendants Reynolds and Lonza entered into a Settlement Agreement and Release resolving the Lonza/Reynolds Actions (the "Lonza/Reynolds Settlement Agreement"). Under the terms of the Lonza/Reynolds Settlement Agreement, Lonza assumed all liabilities for the Solid Waste Landfill and agreed to indemnify, hold harmless and defend Reynolds from any and all claims arising out of the Solid Waste Landfill.

On May 10, 2017, the District demanded that Reynolds, as lessee at the time of the lease termination, remediate and restore the property to its condition as the inception of the lease, less normal wear and tear, as required by Louisiana Civil Code Article 2683. Reynolds refused, denying all responsibility for the Solid Waste Landfill.

On September 5, 2017, the District filed its original complaint in this matter against Reynolds asserting claims for restoration of the Solid Waste Landfill under Louisiana law. On November 20, 2017, Reynolds filed a Third-Party Complaint against Lonza seeking a judgment that Lonza is obligated to indemnify, defend, and hold Reynolds harmless from any and all claims related to the District's claims, including but not limited to all claims related to the Solid Waste Landfill. On November 27, 2017, the District amended its original complaint to name Lonza as a primary defendant. In response, Lonza filed a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction.[1]

On January 23, 2019, Magistrate Judge Kay issued a Report and Recommendation in favor of Lonza, recognizing that a different outcome may be warranted[2] based on the terms of the Lonza/Reynolds Settlement Agreement not yet disclosed to the Court.[3] The Judgment was adopted by the Court and Lonza was dismissed.[4]

On October 1, 2019, pursuant to a Motion for Summary Judgment filed by Reynolds Company as to third-party claims, the Court ruled in favor of Reynolds finding Lonza

---

[1] Doc. 42.
[2] "Because the terms of the settlement agreement remain undisclosed in this matter, and there is no basis for the court to credit Reynolds's contested allegations of those terms in determining personal jurisdiction over Lonza Group for the Port's claims. . . the court cannot determine what warranties or admissions were made by Lonza Group and so cannot ascertain how that agreement made it foreseeable that the Port would be able to bring claims against Lonza Group in this forum." Doc. 76.
[3] Doc. 75.
[4] Doc. 76.

responsible to defend and indemnify Reynolds from the claims asserted by the District relating to the Solid Waste Landfill.[5] Subsequently, Lonza filed a Motion to Reconsider which the Court denied.[6] During the litigation between Lonza and Reynolds, the Settlement Agreement has been "sealed" due to confidentiality provisions therein.[7]

On January 28, 2021, the District filed a Second Amended, Supplemental, and Restated Complaint and Jury Demand adding Alcoa, Consolidated, Lonza Group and Lonza America as Defendants to its singular Article 2683 claim asserting that all Defendants (including Reynolds) are liable *in solido* to restore the leased premises.[8] The District claims that "[s]pecific personal jurisdiction exists as to Lonza America and Lonza Group based on their purposeful assumption of real obligations relating to the leases and immovable property at issue, and their appearance in this proceeding without objection as to jurisdiction in response to Reynolds' third-party demand arising from these same obligations."[9]

The District further claims that Lonza Group and Lonza America "succeeded to rights and obligations of Conalco with respect to the Facility and the District Lease Agreements through a series of complex transactions originating with a Swiss Company, Swiss Aluminum Ltd., which owned Conalco (via a domestic corporation)."[10] The District alleges that Alusuisse was the parent corporation of Conalco, which held the lease to the

---

[5] Docs. 144,145.
[6] Docs. 152, 177.
[7] See Docs. 93, 97, 106, 107 and other numerous orders in the record sealing documents.
[8] Doc. 203, ¶¶ 5-6.
[9] Id. ¶ 9.
[10] Id. ¶ 23.

leased Premises prior to Reynolds, and which allegedly caused the damages complained of to the Leased Premises.[11] In response, Lonza filed the instant Motion to Dismiss for lack of Personal Jurisdiction.

## **RULE 12(b)(2) STANDARD**

The court may exercise jurisdiction over a non-resident only when the defendant has sufficient minimum contacts with Louisiana such that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). These contacts must be of a texture and quality such that the defendant would reasonably anticipate being hailed into court in Louisiana. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75, 105 S.Ct. 2174 (1985).

Due process requires the defendant to have "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). Jurisdiction may be general or specific.

Where a defendant has "continuous and systematic general business contacts" with a forum state, the court may exercise general jurisdiction over any action brought against that defendant. *Luv N' Care, Ltd v. Insta-Mix, Inc., et al,* 438 F.3d 465 (5th Cir. 2006).

---

[11] Doc. 12, ¶ ¶ 8-22.

"Specific jurisdiction applies when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities." *Walk Haydel,* 517 F.3d at 243. Louisiana Revised Statute 13:3201 requires a liberal interpretation in favor of finding jurisdiction. *Adcock v. Surety Research & Inv. Corp.,* 344 So.2d 969 (1977); *Latham v. Ryan*, 373 So.2d 242 (La.App. 3d Cir. 1979). A single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. *Ham v. La Cienega Music Co.,* 4 F.3d 415, 415-16 (5th Cir. 1993); *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (4th Cir. 1991).

The party invoking the jurisdiction of a federal court bears the burden of establishing minimum contacts justifying the court's jurisdiction over a non-resident defendant. *Guidry v. Tobacco Co. Inc.,* 188 F.3d 619 (5th Cir. 1999). The party seeking jurisdiction must present a *prima facie* case that the defendant is subject to personal jurisdiction. *Freudensprung v. Offshore Tech. Servs, Inc.,* 379 F.3d 327, 342-43 (5th Cir. 2004). To determine whether a *prima facie* case exists, "this Court must accept as true [the Plaintiff's] uncontroverted allegations and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id.*

A federal court may exercise personal jurisdiction over an out-of-state defendant only to the extent permitted by the long-arm statute of the state in which its sits and the Fourteenth Amendment's due process clause. *Paz v. Brush Engineered Materials, Inc.,* 445 F.3d 809, 812 (5th Cir. 2006). The Louisiana long-arm statute provides that Louisiana courts may exercise jurisdiction over non-residents. LA. STAT. ANN. § 13:3201. The Louisiana

long-arm statute is coextensive with the limits of due process. *E.g., Laird v. Deep Marine Technology, Inc.,* 2004 WL 2984282, *1 (E.D. La. Dec. 7, 2004).

Due process requires (1) minimum contacts purposefully directed at the forum state, (2) a nexus between the contacts and the claims, and (3) that the exercise of jurisdiction will be fair and reasonable. *McFadin v. Gerber,* 587 F.3d 753, 759-60 (5th Cir. 2009); see also *ITL Int'l, Inc. v. Constenla, S.A.,* 669 F.3d 493, 498 (5th Cir. 2012).

It is the plaintiff's burden to satisfy the first two prongs, with the burden then shifting to the movant to show that an exercise of jurisdiction would be unfair or unreasonable. *Seiferth v. Helicopteros, Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006). To determine whether the "fair play" prong is met, the courts look to five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interest, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 759-60. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 615 (5th Cir. 2008).

Louisiana's long-arm statute, in pertinent part, provides as follows:

(A) A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

1. Transacting any business in this state.
2. Contracting to supply services or things in this state.
3. Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

4. Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

Comment (d) provides:

"Transacting business", . . . is a term which is much broader than "doing business," as defined by earlier Louisiana cases, and the phrase "does * * * business" . . . conferring personal jurisdiction over a nonresident on a cause of action arising ex delicto or quasi ex delicto. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase "engaged in a business activity" of R.S. 13:3471(1).

Louisiana Revised Statute 13:3201(A). Pursuant to Louisiana Revised Statute 13:3201(A)(2), an out-of-state defendant contracting with a forum state plaintiff creates sufficient minimum contact for specific jurisdiction when it "takes purposeful and affirmative action, the effect of which is to cause business activity foreseeable by (the defendant), in the forum state." *Mississippi Interstate Exp., Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1007 (5th Cir. 1982).

"The Louisiana Long-Arm Statute is to be interpreted liberally in favor of finding jurisdiction... and is to extend to the full limits of due process under the fourteenth amendment." *Wuasha v. Shale Development Corp.,* 667 F.2d 483, 486 (5th Cir. 1982) (citing, *inter alia, Austin v. North American Forest Products*, 656 F.2d 1076, 1089 (5th Cir. 1981); *Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630, 639-41 (5th Cir. 1980), *cert. denied¸* 451 U.S. 910, 101 S.Ct. 1981, (1981)).

Lonza maintains that the District's allegations against Lonza Group and Lonza America rely entirely on Plaintiff's incorrect assumption that Lonza Group

and Lonza America are successors-in-interest to Alusuisse. Lonza asserts that neither Lonza Group nor Lonza America is a successor-in-interest to Alusuisse, and neither has engaged in any activities in Louisiana which could subject them to the jurisdiction of this Court as to the District's Article 2683 claim. Thus, Lonza argues that the District has not established nor alleged that Lonza Group or Lonza America had a real interest in the Leased Premises, noting that Conalco sold the premises to Reynolds in 1983, some 16 years prior to Lonza Group being created.

Lonza further argues that the pleadings do not assert that Lonza Group or Lonza America purposefully engaged in any activities in this state. Therefore, Lonza posits that there is an insufficient basis to support the exercise of personal jurisdiction in Louisiana over Lonza Group and Lonza America. Lonza maintains that it is not reasonable for it to anticipate being hailed into court just based on the Settlement Agreement.

The District maintains that Lonza has sufficient minimum contacts with Louisiana based on the terms of the Settlement Agreement for the exercise of specific personal jurisdiction. The District relies on the Settlement Agreement and its terms to assert personal jurisdiction over Lonza citing *Abel v. Montgomery Ward Company, Inc.,* 798 F.Supp. 322 (E.D. Va. 1992) and *Joseph v. Apache Stainless Equip. Corp.,* 1999 WL 301803 (E.D. La. May 11, 1999) (holding that an indemnity agreement entered by the defendant was sufficient to establish minimum contacts).

In *Abel,* the court determined that a foreign manufacturer's agreement to indemnify the seller of its products was sufficient to establish minimum contacts

Page **11** of **15**

and assert personal jurisdiction over the Taiwanese manufacturer in the forum. The court held that the manufacturer "should have anticipated being hailed into Court in those forums where [it] … obligated itself to indemnify [the seller]." The court went on to explain that '[t]he manufacturer specifically recognized potential tort litigation in its import order by including a potential obligation to defend [the seller], the distributor which sold [the manufacturer's] product to the plaintiff in Virginia.. [T]here is not another obvious forum for the plaintiff in the United States, as the manufacturer urges that the sale transaction was completed in Taiwan. Accordingly, the plaintiff may have no forum available in the United States apart from Virginia." *Id.* at 326.

The District argues that there is a greater connection between Lonza and Louisiana. The District asserts that in the Settlement Agreement, Lonza expressly agreed to indemnify and defend Reynolds for environmental claims arising out of the Solid Waste Landfill located in Calcasieu Parish, Louisiana. Lonza assumed all liabilities for the Solid Waste Landfill, thus Lonza should reasonably anticipate being hailed into a Louisiana court, as Louisiana is the most logical forum. Moreover, the Solid Waste Landfill is located in Louisiana, Lonza knew the Solid Waste Landfill was located in Louisiana when it entered into the Settlement Agreement, and it expressly agreed to defend and indemnify Reynolds for any claims arising out of the Solid Waste Landfill.

The District maintains that the assertion of jurisdiction over Lonza does not offend traditional notions of fair play and substantial justice. "A court must consider

Page **12** of **15**

the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in further fundamental substantive policies.'" *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.,* 480 U.S. 102, 113 (1987).

The District maintains that Lonza's connection is neither random nor fortuitous. The District reminds the Court of its previous ruling that "adding Lonza as a defendant in the District's suit would not further prejudice Lonza by forcing it to prepare a defense for a new claim that was not previously before the Court.[12] Thus, Lonza will incur no additional burden to defend against the claims by the District in Louisiana, as it already has to defend the third-party claims asserted by Reynolds in this lawsuit.

The District asserts that Louisiana, and the District, a political subdivision of the State of Louisiana have an interest (preserving and protecting the state's lands and enforcing its environmental standards) in defending the suit that justify any burden on Lonza in defending the suit. See *Asahi,* 480 U.S. at 114. ("[O]ften the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.")

---

[12] Doc. 202, 9. 14.

The District maintains that the judicial system's concern for the efficient resolution of controversies weighs in favor of a single litigation inclusive of all defendants who are responsible for the harm alleged by the District, considering the Defendant's *in solido* obligation to restore the Leased Premises under Louisiana Civil Code article 2683.

Lonza argues that its indemnity obligations that arise out of the Settlement Agreement between Lonza and Reynolds is not a sufficient nexus to create personal jurisdiction over Lonza. First, Lonza asserts that the District is not a party to the Settlement Agreement, thus the District's claim does not "arise out of or relate to" the indemnity obligations in the Settlement Agreement. Lonza also submits that the Lonza Group was not a party to the Lease Agreements over the property on which the Solid Waste Landfill was located. Thus, Lonza argues that there is no causal connection between the District and Lonza's indemnity obligations. The Court disagrees.

The subject of this lawsuit is the Solid Waste Landfill within which the District has asserted claims against Reynolds and Lonza for the restoration thereof; Lonza expressly agreed to indemnify and defend Reynolds for claims arising out of the Solid Waste Landfill. Not only is there a causal connection, there would be no prejudice to Lonza in defending said claims considering that it is already a party to this lawsuit as a third-party defendant. Furthermore, as noted in *Abel,* there is no other forum that the District might potentially assert its claims against Lonza for its indemnity obligations. Finally, the state of Louisiana has an interest in protecting

and preserving immovable property located in this state. The Court finds that it would not offend traditional notions of fair play and substantial justice to assert personal jurisdiction over Lonza.

Alternatively, the District suggests that pendent personal jurisdiction over Lonza is appropriate in this lawsuit. The Court further finds that even if it had concluded that there was no personal jurisdiction over Lonza, it would be appropriate to exercise pendent personal jurisdiction over Lonza in this lawsuit.

## CONCLUSION

For the reasons set forth herein, the Court has determined that it has personal jurisdiction over Lonza Group Ltd. and Lonza America Inc. and will deny Lonza's Motion to Dismiss.

**THUS DONE AND SIGNED** in Chambers on this 9th day of June, 2021.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**