UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO. 2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 232) filed by Defendant and Third-Party Plaintiff, Howmet Aerospace Inc. f/k/a Arconic Inc. f/k/a Alcoa Inc. ("Howmet") who moves pursuant to Federal Rule of Civil Procedure 56 as to the Third-Party claims asserted by Howmet against Lonza Group, Ltd. and Lonza America, Inc. (collectively referred to as "Lonza"). Specifically, Howmet seeks a ruling by the Court that Lonza is obligated to defend, indemnify and hold harmless Howmet for the District's claims against Howmet, including Howmet's attorneys' fees and costs associated with the defense of the Lake Charles Harbor & Terminal District's (the "District") claims.

## FACTUAL STATEMENT

The Lake Charles Carbon Reduction Facility (the "Facility") is a carbon anode facility located on property in Lake Charles, Louisiana (the "Property"). The Property where the Facility operated is currently owned, in part, by the District and Reynolds. Since 1967, a portion of the Property that is owned by the District has been leased by the District pursuant to one or more lease agreements with entities that have owned and/or operated

the Facility since at least 1967 (the "Leased Property"). Since 1967, the remainder of the Property has been owned by the entity operating the Facility.

Between 1967 and 1983, Consolidated Aluminum Corporation ("Consolidated") and Gulf Coast Aluminum ("Gulf Coast"), owned and/or operated the Facility on the Property. Between 1967 and 1983, Gulf Coast and Consolidated entered into lease agreements with the District for the Leased Property where the Facility operated.[1] Between 1967 and 1983, Consolidated and Gulf Coast operated a Solid Waste Landfill ("SWL") that was located on the Leased Property.

The SWL was closed prior to November 30, 1983. After the closure, on November 30, 1983, Reynolds purchased the Facility from Consolidated and a portion of the Property owned by Consolidated where the Facility operates. On November 30, 1983, Reynolds, the District, and Consolidated entered into an agreement whereby Reynolds would continue to lease portions of the Leased Property to be used in connection with Reynolds' operation of the Facility.

Based on alleged hazardous materials found on the Property, the Louisiana Department of Environmental Quality ("LDEQ") identified areas of concern which included the SWL. Lonza, Consolidated, Reynolds, Howmet and other parties engaged in litigation regarding matters, including the responsibility for the SWL (the "Prior Litigation"). At the time of the Prior Litigation, Reynolds and Howmet were the lessees of the Leased Property and owners of the Facility.

---

[1] Lonza disputes Reynold's assertion that Lonza was the successor to Consolidated Aluminum Corporation and/or Gulf Coast Aluminum. See Affidavit of Dr. Hans Peter Pfirter, Doc. 46, Lonza exhibit E.

Based on the disputes, claims, and actions in the Prior Litigation, parties to the Prior Litigation, including Lonza, Consolidated, Howmet, and Reynolds entered into a Settlement Agreement in order to fully, completely, and finally resolve and terminate all disputes and claims in the Prior Litigation and to preclude the possibility of further disputes between them arising out of or in any way related to the claims alleged in the Prior Litigations (the "Settlement Agreement").

Lonza acknowledged that the Settlement Agreement was "enforceable in accordance with its terms" and represented a "valid and binding obligation of Lonza." Lonza, Reynolds, and Howmet entered the Settlement Agreement acknowledging and agreeing that the Settlement Agreement defined the responsibilities of the Parties as to various geographical areas and hazardous materials located on the Property. The purpose of the Settlement Agreement was to, in part, provide "for the Parties to indemnify each other" as described in the Settlement Agreement for any "potential liability for the Contamination."[2]

The Settlement Agreement states that:

> Lonza will assume all past, present, and future liabilities with respect to the Solid Waste Landfill ("SWL"), the Cathode Disposal Area ("CDA"), and the Former Scrubber Ponds ("Scrubber ponds").

> Lonza will indemnify, hold harmless, and defend Alcoa [] from any and all claims by any third parties, including any Agency, with respect to claims arising out of the SWL, CDA, and Scrubber Ponds.[3]

---

[2] Howmet exhibit 3, ¶ D(2).
[3] Id., § D(3)(a)(i)-(ii)

The Settlement Agreement also states that:

> [Howmet] will assume past, present, and future liabilities with respect to any other [Area of Concern], except the SWL, the CDA, and the Scrubber Ponds.[4]

The Settlement Agreement defines "indemnity" as follows:

> To indemnify, protect, defend and hold harmless the other Party, and the Parties' employees, officers, agent, parents, subsidiaries, affiliates, successors and assigns ) collectively, the "Related Parties"), and each of them, harmless from and against any and all claims (including, without limitation, third-party claims for personal injury, or real or personal property damage, or natural resource damage), actions, administrative proceedings (including formal and informal proceedings), demands, judgments, damages, punitive damages, penalties, fines, costs, remedial costs, taxes, assessments, liabilities (including sums paid in settlement of claims), interest, or losses, including reasonable attorneys' fees and expenses (including any such fees and expenses incurred in enforcing this Agreement or collecting any sums due hereunder), reasonable consultant fees, and reasonable expert fees, together with all other reasonable costs and expenses of any kind or nature (collectively, the "Costs") that arise directly or indirectly in connection with the presence, release or threatened release of any Contamination or the presence, release or threatened release of Hazardous Materials.[5]

The Settlement Agreement is governed by Louisiana Law. On September 5, 2017, the District filed its original Complaint; the District amended the Complaint on February 4, 2021, which erroneously added "Alcoa Inc. as a Defendant. On or about November 1, 2016, Alcoa Inc. changed its name to Arconic Inc. On or about April 1, 2020, Arconic Inc. changed its name to Howmet Aerospace Inc.[6]

---

[4] Id. § D(3)(b)(i).
[5] Id. § D(3)(d).
[6] Howmet's exhibit 1, Scott Seewald Declaration.

The District's sole claim against Howmet is for restoration and damages under Louisiana law associated with the pre-closure operations on the SWL. Howmet filed a Third-Party Complaint against Lonza seeking judgment that Lonza is responsible for any and all liability regarding the SWL, including but not limited to attorneys' fees and expenses.

Reynolds moved for summary judgment on its right to defense and indemnity from Lonza for the District's claims in this matter regarding the SWL. This Court granted Reynolds' summary judgment finding the Settlement Agreement obligated Lonza to defend, and if Reynolds is held liable, to indemnify and hold harmless Reynolds for the claims asserted by the District in this lawsuit.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the

nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Howmet maintains that its rights and Lonza's obligations to Howmet under the Settlement Agreement are identical to those between Lonza and Reynolds, including the right to defense and indemnity from Lonza for the District's claims in this matter regarding the SWL. Consequently, Howmet maintains it is entitled to judgment in its favor because this Court ruled that the prior Settlement Agreement obligates Lonza group Ltd. And Lonza America, Inc. to defend, and if Reynolds is held liable, to indemnify and hold harmless Reynolds for the claims asserted by the District in this lawsuit.[7]

---

[7] Doc. 140.

Lonza argues that (1)the indemnity provision in the Settlement Agreement does not apply to the District's cause of action in this lawsuit under Louisiana Civil Code article 2683, (2) summary judgment is premature because Howmet may have similar obligations as Reynolds, such as a duty to mitigate damages and a duty of good faith towards Lonza, (3) the motion is premature because no discovery has been conducted noting that Howmet was recently joined in the District's Second Amended, Supplemental, and Restated Complaint and Jury Demand filed January 28, 2021, and (4) Lonza cannot be held liable under an indemnity agreement until the indemnitee (Howmet) actually makes payment or sustains a loss, citing *Meloy v. Conoco, Inc.* 504 So.2d 833, 839 (La. 1987).

These arguments are the same arguments Lonza made in our Memorandum Ruling regarding Lonza's obligation to indemnify, defend and hold harmless Reynolds for third-party claims arising out of the SWL. Lonza raises no new issues or arguments in its opposition to Howmet's motion for summary judgment. Furthermore, the Court does not find that further discovery is warranted in order for this Court to find that Reynolds and Howmet, parties to the same Settlement Agreement, with identical rights and obligations who stand in the same position, are both entitled to defense and indemnity for the reasons set forth in the Court's previous Memorandum Ruling. [8]

## CONCLUSION

For the reasons set forth above as well as the reasons set forth in this Court's previous Memorandum Ruling,[9] the Court will grant Howmet's Motion for Summary

---

[8] Id.
[9] Id.

Judgment finding that Lonza is obligated to defend, indemnify and hold harmless Howmet for the District's claims against Howmet in this lawsuit.

**THUS DONE AND SIGNED** in Chambers on this 3rd day of August, 2021.

                                   **JAMES D. CAIN, JR.**
                          **UNITED STATES DISTRICT JUDGE**