UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DIRECT** | **CIVIL ACTION NO. 2:17-CV-01114** |
| **VERSUS** | **DISTRICT JUDGE CAIN** |
| **REYNOLDS METAL COMPANY** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE NON-RESTORATION DAMAGES AND/OR DAMAGES NOT RELATING TO THE SOLID WASTE LANDFILL

Defendants and Third-Party Plaintiffs, Reynolds Metals Company, LLC ("Reynolds") and Howmet Aerospace Inc., f/k/a Arconic Inc., f/k/a Alcoa Inc. ("Howmet"), through their respective undersigned counsel, respectfully submit this Memorandum in Support of Motion *in Limine* to Exclude Testimony and Evidence Regarding Non-Restoration Damages and/or Damages Not Relating to the Solid Waste Landfill (the "Memorandum") requesting this Court exclude all testimony and evidence regarding non-restoration damages, including groundwater contamination, "community damages" (defined herein), and/or punitive damages. **First**, the District concedes that non-restoration claims for damages, including groundwater contamination, "community damages", and/or punitive damages, are ***not*** at issue in this litigation because it is bringing only a claim under Louisiana Civil Code article 2683(3) for restoration of the solid waste landfill (the "SWL"), and the Court already denied claims for those damages. **Second**, because the District's experts admit that no testing for or analysis of groundwater contamination was conducted, any testimony regarding groundwater contamination is based on unsubstantiated factual assertions and inadmissible under Rule 702. As such, all evidence and testimony regarding non-restoration damages should be excluded.

**FACTUAL BACKGROUND**

  A.  **The Leased Property and the Solid Waste Landfill**

  Reynolds/Howmet have summarized the facts underlying this dispute in a number of pleadings currently pending before the Court, and Reynolds/Howmet incorporates those facts by reference here.[1] In short, from 1967 until 1983, the District leased property in Lake Charles, Louisiana (the "Property") to Gulf Coast Aluminum Corporation ("Gulf Coast") and/or its successor, Consolidated Aluminum Corporation ("Consolidated")—each predecessors-in-interest to Defendants Lonza Group Ltd. and Lonza America Inc. (collectively, "Lonza")—during which time Gulf Coast and/or Consolidated owned and operated a carbon anode facility (the "Facility") on the Property.[2] During their tenancy, Gulf Coast and/or Consolidated constructed and operated a solid waste landfill (the "SWL") on the Property.[3] On September 24, 1982, the Louisiana Department of Natural Resources ordered that the SWL be closed and, sometime prior to November 30, 1983, the SWL was closed by Consolidated.[4]

  B.  **The Settlement Agreement between Lonza and Reynolds**

  In 1983, after the SWL had been closed, Reynolds purchased the Facility and related assets from Consolidated.[5] On November 30, 1983, the Reynolds, the District, and Consolidated entered into an agreement whereby Reynolds would lease the Property, and Consolidated retained all obligations and liabilities arising prior to that date, with the District's express consent.[6]

  Following the closure of the SWL, hazardous materials were allegedly discovered on the Property and Louisiana Department of Environmental Quality identified Areas of Concern,

---

[1] *See, e.g.* R. Doc. 97:1; R. Doc. 232-1; R. Doc. 276; R. Doc. 317-1; R. Doc. 336-1; R. Doc. 337-1.
[2] R. Doc. 144; R. Doc. 230.
[3] *Id*.
[4] *Id*; *see also* R. Doc. 254-8.
[5] *Id*.
[6] *Id*.

2

including the SWL.[7] Due to these environmental matters, Lonza, Reynolds, and other parties engaged in litigation, including the responsibility for the SWL (the "Prior Litigation").[8] On October 1, 2010, parties to the Prior Litigation settled their claims pursuant to a written settlement agreement (the "Settlement Agreement").[9] Under the terms of that Agreement, Lonza assumed all "past, present, and future liabilities" with respect to the SWL and agreed to indemnify, hold harmless and defend Reynolds/Howmet from "any and all claims by any third parties . . . arising out of the SWL."[10] On October 1, 2019 and August 3, 2021, the Court ruled that, pursuant to the Settlement Agreement, Lonza must indemnify, defend, and hold harmless Reynolds and Howmet, respectively, for the District's claims in this suit.[11]

### C. The District's Operative Complaint and Previously Denied Amendment

On September 5, 2017 the District filed its original complaint against Reynolds, which it subsequently amended to add Howmet and Lonza as defendants.[12] The District's one and only claim in the operative complaint is for restoration of the allegedly hazardous SWL under Article 2683.[13] The Court denied the District's motion to add claims for non-remediation damages and punitive damages for misuse because the claims were futile and prescribed.[14]

### D. The District's Expert Testimony on Non-Restoration Damages

Notwithstanding the District's admission that it is bringing a claim under Article 2683(3) for restoration damages related to the SWL only, the District has produced expert testimony on

---

[7] *Id*.
[8] The Prior Litigations consisted of: *Consolidated Aluminum Corp. v. Alcoa Inc. and Reynolds Metals Co.*, Case 03-CV-1055, M.D.La. and *Alcoa Inc. v. Lonza Group Ltd. and Alcan Holdings*, Case no. 03-CV-5973, M.D.La.
[9] *Id*; see also R. Doc. 144 (Memorandum Ruling as to Reynolds' Motion for Summary Judgment); R. Doc. 230 (Memorandum Ruling as to Lonza's Motion to Dismiss for Lack of Personal Jurisdiction).
[10] *See id*. at § D(3)(a)(i)-(ii).; see also R. Doc. 144.
[11] R. Doc. 145; R. Doc. 247.
[12] R. Doc. 1; R. Doc. 203; R. Doc. 207.
[13] R. Doc. 203; R. Doc. 230, at 5.
[14] R. Doc. 202.

damages beyond the scope of that claim. On November 11, 2021, the District disclosed expert reports from Charles Norman (Engineering Expert),[15] Greg Miller and Jason Sills (Restoration Experts),[16] and David Batker (Non-Restoration Damages Expert).[17] On February 9, 2022, Mr. Batker confirmed in his deposition that Mr. Miller and Mr. Sills would opine on restoration damages whereas he was to opine on non-restoration damages including non-restoration damages for historical damages to the District, contingent future damages to the District, and historical and contingent future damages to non-parties ("community damages").[18]

In his report, Mr. Norman notes that "groundwater contamination [was] found" at the property.[19] Mr. Norman's opinion is not based on his own actual testing or analyses, but rather is based on the ICON report prepared by Mr. Sills and Mr. Miller. While Mr. Sills and Mr. Miller state in their report that there is "contaminated . . . groundwater," neither of them conducted any tests regarding groundwater contamination, Mr. Miller never went to the site where he alleges contaminated groundwater exists, and Mr. Miller and Mr. Sills did not perform any investigation or analysis to provide an expert opinion to any degree of scientific certainty that groundwater contamination exists as result of the SWL. In any event, the District's groundwater claims have been denied by the Court as futile and prescribed.[20]

## LAW AND ARGUMENT

### A. Legal standard

"[E]xpert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). "When expert testimony is challenged, the

---

[15] Ex. 1, Charles Norman Report.
[16] Ex. 2, ICON Report.
[17] Ex. 3, Batker Report.
[18] *See, e.g.*, Ex. 4, Deposition of David Batker, at 88:21-25.
[19] Ex. 1, Charles Norman Report, at 00002.
[20] R. Doc. 202.

party seeking to present the testimony has the burden of proving, by a preponderance of the evidence, that the testimony satisfies Federal Rule of Evidence 702." *Adriatic Marine, LLC v. Harrington*, No. CV-19-2440-WBV-KWR, 2020 WL 748024, at *5 (E.D. La. Feb. 14, 2020) (citing *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). The trial court plays an essential gatekeeping function in ensuring that inadmissible expert testimony is excluded and is granted broad discretion in that regard. *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018) (citing *Moore*, 151 F.3d at 276).

Relevance is the hallmark of any admissible evidence, including expert witness testimony under Rule 702. *See Denton v. Foster Poultry Farms, Inc.*, No. 12-038 (W. D. La. 2013). **Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful**." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (emphasis added). Irrelevant expert testimony must be excluded. *Id.*

With respect to reliability, "an opinion based on 'insufficient, erroneous information,' fails the reliability standard." *Moore v. International Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (citing *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009)). "The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). That is because "[a]mong the conditions imposed by the Federal Rules of Evidence on the admissibility of expert opinion testimony is that the testimony be 'based on sufficient facts or data.'" *Moore v. International Paint.*, 547 F. App'x at 515 (quoting Fed. R. Evid. 702(b)). And "[a]lthough the *Daubert* reliability analysis is flexible" "the existence of sufficient facts . . . is in all instances mandatory." *Id.* (citing *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)) (alterations in original).

### B. Testimony and evidence regarding non-restoration damages, including economic damages and groundwater contamination, are not relevant to the District's only claim.

#### 1. *The Court denied the District's claims for groundwater contamination, non-restoration damages, and punitive damages.*

The Court has already denied the District's claims for non-restoration damages associated with alleged misuse of the Leased Property as a SWL, and so expert testimony—or any evidence for that matter—regarding non-restoration damages are not relevant to the District's claims. Specifically, the District sought to amend its complaint on July 31, 2020, proposing to add "[i]n addition to its article 2683 claim for remediation damages:"

> (1) a claim under the Groundwater Act for costs associated with contamination that impacts or threatens usable groundwater ["Count II," Id., att. 3, pp. 11-12, ¶ 60-63]; (2) a claim for costs associated with contamination to the Calcasieu River Ship Canal ["Count III," Id., p. 12, ¶ 64-67]; and (3) a claim for punitive damages under the former Louisiana Civil Code article 2315.3 for "wanton and reckless disregard for public safety" in handling hazardous substances ["Count IV," Id., p. 12, ¶ 68-69].[21]

The Court, however, denied leave to add the additional claims to the Second Amended Complaint, as it sought to advance claims that are prescribed and futile:

> We find that amendment as to the District's new claims in Counts II through IV and the factual allegations supporting those claims would be futile as the claims have prescribed.[22]

Accordingly, the District's Second Amended Complaint is limited to a single claim for restoration under Article 2683(3).[23] The District has no claims for groundwater contamination, "community damages" or punitive damages, and any testimony or evidence regarding damages for groundwater contamination, "community damages" or punitive damages is not relevant and must be excluded from the trial of this matter.

---

[21] R. Doc. 202, at 4.
[22] R. Doc. 202.
[23] *See* R. Doc. 203.

### 2. *The District conceded that its claim is for restoration of the SWL only*.

Were there any doubt, the District itself specifically admitted that its claim is for restoration of the SWL only. On January 17, 2022, Reynolds/Howmet filed an Omnibus Motion for Summary Judgment on Misuse, Prescription and Damages.[24] The District filed an Opposition to that motion, explicitly stating that it "is ***not*** bringing a claim for misuse under Article 2686" and that "[t]he District is bringing a claim under Civil Code article 2683(3)" only.[25] Significantly, Article 2683(3) provides solely for restoration damages, while non-restoration damages are found elsewhere--such as Article 2686, for misuse of leased property, or Louisiana Revised Statute § 30.2015.1B for groundwater contamination. The Civil Code mandates that "[l]aws on the same subject matter must be interpreted in reference to each other." LA. CIV. CODE art. 13. Because other provisions of the Civil Code, such as Article 2686 or the Groundwater Act, govern claims for non-restoration damages, claims for damages other than restoration of the SWL must be brought under those provisions.

More simply, claims for non-restoration damages, including groundwater contamination, economic damages, "community damages" and/or punitive damages, cannot be shoehorned under Article 2683(3), particularly where, as here, the Court has already denied those claims. Allowing the District to advance claims for non-restoration damages pursuant to its single "claim under Civil Code article 2683(3)" would render other provisions of the Civil Code superfluous, contrary to the rules of statutory interpretation set forth in Article 13. *Kewaunee Sci. Corp. v. Charles Ragusa & Son, Inc.*, 723 So. 2d 470, 472 (La. App. 1 Cir. 9/25/98), ("All parts of a statute should be given effect, and an interpretation making any part superfluous or meaningless should be avoided.") (citing *First National Bank of Boston v. Beckwith Machinery Company*, 650 So.2d 1148 (La.

---

[24] R. Doc. 337.
[25] R. Doc. 345 at 1-3 (emphasis added).

1995)).

According to the District's own admission, testimony and evidence regarding non-restoration damages (*i.e.*, damages for anything other than restoration of the SWL), including groundwater contamination, economic damages, "community damages" and/or punitive damages," are irrelevant to the District's claim for restoration and should be excluded.

### C. The District's expert opinions regarding groundwater contamination are unreliable and speculative

Each of the ICON expert report (co-authored by Jason Sills and Greg Miller), Charles Norman's expert report, and David Batker's expert report reference contaminated groundwater.[26] Because the District's claim for groundwater contamination has already been denied by this Court, those references and that evidence is irrelevant to the District's claim and should be excluded.

But, not only are these experts' references to groundwater irrelevant, they are also unreliable. None of these expert's opinions regarding groundwater contamination is based on sufficient facts or data to meet the standards under Rule 702. Notably, none of these experts performed **any** groundwater testing or analyses, such that they cannot state with any degree of scientific certainty whether groundwater contamination resulted from the SWL. These opinions are purely speculative; speculative expert testimony is unreliable and inadmissible.

To be sure, Mr. Sills, who co-authored the ICON expert report, admitted that ICON did not conduct any testing or analyses regarding groundwater contamination:

**Q:** ICON didn't do any ground water samples or testing, correct?

**A:** That's correct.

**Q:** ICON is not [offering any opinion] in this case with respect to ground water contamination, correct?

**A:** That's correct.

---

[26] Ex. 2, ICON Expert Report at 00001, 00003; Ex. 1, Norman Expert Report at 00002, 00007.

8

> Q: ICON is not offering any opinions in this case with respect to soil contamination outside the confines of the solid waste landfill; is that correct?
>
> A: I'm not offering any opinion on that, no.[27]

As such, ICON's expert opinion that there is "contaminated . . . groundwater" at the site[28] is clearly based on nothing more than speculation—ICON did not bother to test to see whether such contamination existed. That opinion should be excluded, and Mr. Sills and Mr. Miller should be precluded from testifying on groundwater contamination at trial.

Mr. Norman's opinion that "groundwater contamination [was] found at various depths" is similarly speculative, as Mr. Norman did not conduct any tests or analyses regarding groundwater himself. Instead, he based his opinion entirely on "the ICON report."[29]

> Q: You've not done any evaluation whether there's been any impact to groundwater. Correct?
>
> A: No. That's ICON's work.[30]

Mr. Norman's opinion as to groundwater contamination is, therefore, not based on any reliable scientific methodology, but is instead grounded on the speculative, inadmissible opinions by Mr. Sills and Mr. Miller, who admit that ICON conducted **_no_** tests or analyses to satisfy Rule 702.

Mr. Batker similarly offers general speculative opinions regarding groundwater contamination in his expert report.[31] As a threshold matter, Mr. Batker admitted that he is not, and does not hold himself out to be, an expert in groundwater contamination or in testing for groundwater contamination.[32] And Mr. Batker confirmed that no groundwater water testing or

---

[27] Ex. 5, Deposition of Jason Sills, 59:9-18.
[28] Ex. 2, ICON Expert Report, at 00003.
[29] Ex. 1 Norman Expert Report, at 00002.
[30] Ex.6, Deposition of Charles Norman, 160:19-22; *see also id.* at 89:25-90:3 (admitting that neither Mr. Norman nor any one from his team participated in ICON's testing).
[31] *See* Ex. 3, Batker Report, at 00017, 00026-00029.
[32] Ex. 4, Deposition of David Batker, 50:22-51:4.

analyses of the SWL has been conducted by any expert in this case:

> **Q.** With regard to the groundwater issue, you are aware that there has been, uh – none of the experts who have done testing of the site have found groundwater contamination. Correct?
>
> **A.** My understanding is that there has not been testing for groundwater contamination.[33]

Each of the District's experts admit, then, that none of their opinions regarding groundwater contamination is based on any actual testing or scientific analysis. While "'[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility,'" *Tajonera*, 2016 WL 9414205, at *11 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)), "expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Adriatic Marine*, 2020 WL 748024, at *6 (quoting *Moore*, 547 F. App'x at 515; *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)) (internal quotation marks omitted); *see also Tajonera*, 2016 WL 9414205, at *11 (citing *Daubert*, 509 U.S. at 590) ("Expert testimony based merely on subjective belief or unsupported speculation may not be admitted."). "When an expert's testimony is not based upon the facts in the record but on altered facts and speculation designed to bolster a party's position, the trial court should exclude it." *Adriatic Marine*, 2020 WL 748024, at *6 (quoting *Moore*, 547 F. App'x at 515; *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996)) (internal quotation marks omitted). Because the District's expert testimony on groundwater contamination is not based on any actual data, that evidence must be excluded.

## CONCLUSION

For the foregoing reasons, this Court should exclude all evidence regarding non-restoration damages, including groundwater contamination, "community damages" and/or punitive damages.

---

[33] Ex. 4, Deposition of David Batker, 51:5-11.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/   *C. Hogan Paschal*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEUAX (#29446)**
**DANIEL J. DYSART (#33812)**
**C. HOGAN PASCHAL (#38495)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:    504.556.5549
Fax:                504.586.5250
Email:             kmiller@fishmanhaygood.com

*Counsel for Defendants and Third-Party Plaintiffs,*
*Reynolds Metals Company, LLC, and Howmet Aerospace Inc., f/k/a Arconic Inc., f/k/a Alcoa Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 17th day of February, 2022 I electronically filed the foregoing pleading using CM/ECF, which will send a notice of the electronic filing to all counsel of record.

/s/ *C. Hogan Paschal*
**C. HOGAN PASCHAL**