**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **LAKE CHARLES HARBOR &** <br> **TERMINAL DISTRICT** <br><br> **VERSUS** <br><br> **REYNOLDS METALS COMPANY** | \*  **CIVIL ACTION NO. 2:17-CV-01114** <br> \* <br> \*  **JUDGE JAMES D. CAIN, JR.** <br> \* <br> \*  **MAGISTRATE KATHLEEN KAY** <br> \* |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
TO STRIKE EXPERT TESTIMONY OF DAVID BATKER**

## Contents

**BACKGROUND** ........................................................................................................................ 1

   A. The Leased Property and the Solid Waste Landfill ......................................................... 1

   B. The Settlement Agreement between Lonza and Reynolds ............................................. 2

   C. The District's Operative Complaint and Previously Denied Amendment ................... 3

   D. The District's Expert Testimony on Non-Restoration Damages .................................. 3

   E. Expert Report of David Batker ........................................................................................ 4

**LEGAL STANDARD** ............................................................................................................... 7

**ARGUMENT** ............................................................................................................................. 8

   A. *Mr. Batker's opinions are not relevant to the District's Article 2683(3) claim.* .............. 8

   B. *Mr. Batker's opinions regarding non-parties are unqualified and not relevant to the District's claim.* ................................................................................................................. 9

   C. *Mr. Batker's opinions regarding contingent future losses are not relevant to the District's claims.* .............................................................................................................. 11

II.  Mr. Batker's opinions are not reliable and must be excluded. .................................... 11

   A. *Mr. Batker's opinions regarding historical damages are purely speculative and unreliable.* ........................................................................................................................ 12

   B. *Mr. Batker's opinions regarding future losses, health impacts, nature impacts, water quality, and emissions are unqualified, unreliable and must be excluded.* ................... 15

**CONCLUSION** ....................................................................................................................... 16

## TABLE OF AUTHORITIES

### Cases

*Adriatic Marine, LLC v. Harrington,*
  No. CV-19-2440-WBV-KWR, 2020 WL 748024 (E.D. La. Feb. 14, 2020) .......................... 7, 12
*Alcoa Inc. v. Lonza Group Ltd. and Alcan Holdings,*
  Case no. 03-CV-5973, M.D.La. ................................................................................................ 2
*Consolidated Aluminum Corp. v. Alcoa Inc. and Reynolds Metals Co.,*
  Case 03-CV-1055, M.D.La. ..................................................................................................... 2
*Curtis v. M & S Petroleum, Inc.*
  174 F.3d 661 (5th Cir.1999) .................................................................................................... 8
*Daubert v. Merrell Dow Pharmaceuticals,*
  509 U.S. 579 (1993) ........................................................................................................... 8, 11
*Guillory v. Domtar Indus.,*
  95 F.3d 1320 (5th Cir. 1996) ................................................................................................. 12
*Hathaway v. Bazany,*
  507 F.3d 312 (5th Cir. 2007) ................................................................................................. 12
*Johnson v. Arkema, Inc.,*
  685 F.3d 452 (5th Cir. 2012) ................................................................................................... 8
*Moore v. Ashland Chemical Inc.,*
  151 F.3d 269 (5th Cir. 1998) ...................................................................................... 7, 11, 12
*Pipitone v. Biomatrix, Inc.,*
  288 F.3d 239 (5th Cir. 2002) ................................................................................................... 7
*Sadler v. Int'l Paper Co.,*
  No. CIV.A. 09-1254, 2014 WL 5426173 (W.D. La. Oct. 23, 2014) ...................................... 8
*Sandifer v. Hoyt Archery, Inc.,*
  907 F.3d 802 (5th Cir. 2018) ................................................................................................... 7
*Tajonera v. Black Elk Energy Offshore Operations, L.L.C.,*
  No. CV-13-0366, 2016 WL 9414205 (E.D. La. May 23, 2016) ..................................... 11, 12
*United States v. Valencia,*
  600 F.3d 389 (5th Cir. 2010) ................................................................................................... 8
*Viterbo v. Dow Chem. Co.,*
  826 F.2d 420 (5th Cir. 1987) ................................................................................................. 12
*Wagoner v. Exxon Mobil Corp.,*
  813 F. Supp. 2d 771 (E.D. La. 2011) ...................................................................................... 7

### Statutes

Federal Rule of Evidence 702 ................................................................................................... 7, 8

La. C.C. art. 2683 ................................................................................................................ passim

La. C.C. art. 2686 ........................................................................................................................ 9

**MAY IT PLEASE THE COURT:**

Defendants and Third-Party Plaintiffs, Reynolds Metals Company, LLC ("Reynolds") and Howmet Aerospace Inc., f/k/a Arconic Inc., f/k/a Alcoa Inc. ("Howmet" and together with Reynolds, "Howmet"), through their respective undersigned counsel, respectfully submit this Memorandum in Support of their Motion *in Limine* to Strike Expert Testimony of David Batker (the "Motion"). ***First***, Mr. Batker's opinions are not relevant to the District's sole Article 2683(3) claim for restoration of the allegedly hazardous Solid Waste Landfill ("SWL"). Mr. Batker provides opinions regarding non-restoration damages, including damages for non-parties and contingent future damages to the District, which Mr. Batker admits are not relevant to the District's claim for restoration. ***Second***, Mr. Batker's opinions are unqualified and unreliable. Mr. Batker is not qualified to provide opinions regarding the cost of restoration, which the District is offering through other experts, and Mr. Batker's opinions for monetary and non-monetary damages to the District, and other non-parties, are based on pure speculation and unsupported assumptions without any investigation, analysis, or inquiry into the actual facts and evidence at issue. Therefore, Mr. Batker's opinions must be excluded as not relevant, and additionally as unqualified, speculative, and unreliable.

## BACKGROUND

### A. The Leased Property and the Solid Waste Landfill

Reynolds/Howmet have summarized the facts underlying this dispute in a number of pleadings before the Court, and Reynolds/Howmet incorporates those facts by reference here.[1] In short, from 1967 until 1983, the District leased property in Lake Charles, Louisiana (the "Property") to Gulf Coast Aluminum Corporation ("Gulf Coast") and/or its successor,

---

[1] *See, e.g.* R. Doc. 97:1; R. Doc. 232-1; R. Doc. 276; R. Doc. 317-1; R. Doc. 336-1; R. Doc. 337-1.

1

Consolidated Aluminum Corporation ("Consolidated")—each predecessors-in-interest to Defendants Lonza Group Ltd. and Lonza America Inc. (collectively, "Lonza")—during which time Gulf Coast and/or Consolidated owned and operated a carbon anode facility (the "Facility") on the Property.[2] During their tenancy, Gulf Coast and/or Consolidated constructed and operated a solid waste landfill (the "SWL") on the Property.[3] On September 24, 1982, the Louisiana Department of Natural Resources ordered that the SWL be closed and, sometime prior to November 30, 1983, the SWL was closed by Consolidated.[4]

B. **The Settlement Agreement between Lonza and Reynolds**

In 1983, after the SWL had been closed, Reynolds purchased the Facility and related assets from Consolidated.[5] On November 30, 1983, the Reynolds, the District, and Consolidated entered into an agreement whereby Reynolds would lease the Property, and Consolidated retained all obligations and liabilities arising prior to that date, with the District's express consent.[6]

Following the closure of the SWL, hazardous materials were allegedly discovered on the Property and Louisiana Department of Environmental Quality identified Areas of Concern, including the SWL.[7] Due to these environmental matters, Lonza, Reynolds, and other parties engaged in litigation, including the responsibility for the SWL (the "Prior Litigation").[8] On October 1, 2010, parties to the Prior Litigation settled their claims pursuant to a written settlement agreement (the "Settlement Agreement").[9] Under the terms of that Agreement, Lonza assumed all

---

[2] R. Doc. 144; R. Doc. 230.
[3] *Id*.
[4] *Id*; *see also* R. Doc. 254-8.
[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] The Prior Litigations consisted of: *Consolidated Aluminum Corp. v. Alcoa Inc. and Reynolds Metals Co.*, Case 03-CV-1055, M.D.La. and *Alcoa Inc. v. Lonza Group Ltd. and Alcan Holdings*, Case no. 03-CV-5973, M.D.La.
[9] *Id*; *see also* R. Doc. 144 (Memorandum Ruling as to Reynolds' Motion for Summary Judgment); R. Doc. 230 (Memorandum Ruling as to Lonza's Motion to Dismiss for Lack of Personal Jurisdiction).

Page 2

"past, present, and future liabilities" with respect to the SWL and agreed to indemnify, hold harmless and defend Reynolds/Howmet from "any and all claims by any third parties . . . arising out of the SWL."[10] On October 1, 2019 and August 3, 2021, the Court ruled that, pursuant to the Settlement Agreement, Lonza must indemnify, defend, and hold harmless Reynolds and Howmet, respectively, for the District's claims in this suit.[11]

### C. The District's Operative Complaint and Previously Denied Amendment

On September 5, 2017 the District filed its original complaint against Reynolds, which it subsequently amended to add Howmet and Lonza as defendants.[12] The District's one and only claim in the operative complaint is for restoration of the allegedly hazardous SWL under Article 2683.[13] The Court denied the District's motion to add claims for non-remediation damages and punitive damages for misuse because the claims were futile and prescribed.[14]

### D. The District's Expert Testimony on Non-Restoration Damages

Notwithstanding the District's admission that it is bringing a claim under Article 2683(3) for restoration damages related to the SWL only, the District has produced expert testimony on damages beyond the scope of that claim. On November 11, 2021, the District disclosed expert reports from Charles Norman (Engineering Expert),[15] Greg Miller and Jason Sills (Restoration Experts),[16] and David Batker (Non-Restoration Damages Expert).[17] On February 9, 2022, Mr. Batker confirmed in his deposition that Mr. Miller and Mr. Sills would opine on restoration damages whereas he was to opine on non-restoration damages including non-restoration damages

---

[10] *See id.* at § D(3)(a)(i)-(ii).; *see also* R. Doc. 144.
[11] R. Doc. 145; R. Doc. 247.
[12] R. Doc. 1; R. Doc. 203; R. Doc. 207.
[13] R. Doc. 203; R. Doc. 230, at 5.
[14] R. Doc. 202.
[15] Ex. 1, Charles Norman Report.
[16] Ex. 2, ICON Report.
[17] Ex. 3, Batker Report.

Page 3

for historical damages to the District, contingent future damages to the District, and historical and contingent future damages to non-parties ("community damages").[18]

In his report, Mr. Norman notes that "groundwater contamination [was] found" at the property.[19] Mr. Norman's opinion is not based on his own actual testing or analyses, but rather is based on the ICON report prepared by Mr. Sills and Mr. Miller. While Mr. Sills and Mr. Miller state in their report that there is "contaminated . . . groundwater," neither of them conducted any tests regarding groundwater contamination, Mr. Miller never went to the site where he alleges contaminated groundwater exists, and Mr. Miller and Mr. Sills did not perform any investigation or analysis to provide an expert opinion to any degree of scientific certainty that groundwater contamination exists as result of the SWL. In any event, the District's groundwater claims have been denied by the Court as futile and prescribed. [20]

### E. Expert Report of David Batker

On November 11, 2021, the District disclosed expert reports from Charles Norman (Engineering), ICON (Greg Miller and Jason Sills) (Restoration), and David Batker (Non-Restoration Damages). Mr. Batker's report includes alleged historical and contingent future damages to the District as well as "community" damages (hereinafter, "community damages") to non-parties including private businesses, individuals, and Calcasieu Parish:

---

[18] *See, e.g.*, Ex.4, Deposition of David Batker, at 88:21-25.
[19] Ex. 1, Charles Norman Report, at 00002.
[20] R. Doc. 202.

Page 4

Historical Damages to the District[21]

Table 32. Historical Direct Damages to the Port of Lake Charles.

| Category | Subcategory | Value |
|---|---|---|
| Built Capital | Port Income Foregone | $8,600,000 |
| | Improper Income | $51,500,000 |
| Natural Capital | EGS Forest Loss | Not Calculated |
| | EGS Contamination | Not Calculated |
| Community Capital | Tax Revenue | $0 |
| | Industrial Income | $0 |
| Human Capital | Human Capital Multipliers | $0 |
| Total | | $60,100,000 |
| Asset Damages | | |
| Built Capital | Asset Value Reduction | $3,100,000 |
| | Cost of Remediation | $179,100,000 |
| Total | | $182,100,000 |
| Total Damages | | $242,200,000 |

Historical Damages to the Community[22]

Table 33. Historical Direct Damages to the Community

| Category | Subcategory | Value |
|---|---|---|
| Built Capital | Port Income Foregone | $0 |
| Natural Capital | EGS Forest Loss | Not Calculated |
| | EGS Contamination | Not Calculated |
| Community Capital | Tax Revenue | $8,000,000 |
| | Industrial Income | $385,700,000 |
| Human Capital | Human Capital Multipliers | $2,400,000 |
| Total | | $396,200,000 |
| Asset Damages | | |
| Built Capital | Not Calculated | |
| Natural Capital | Not Calculated | |
| Community Capital | Not Calculated | |
| Total | | $0 |
| Total Damages | | $396,200,000 |

---

[21] Ex. 3, David Batker Report, at 00055 (Table 32).
[22] Ex. 3, David Batker Report, at 00055-00056 ( Table 33).

Page 5

Future Damages to the District and Community[23]

Table 34. Net future damages under the uncontaminated scenario, 2022 – 2071.

| Category | Subcategory | Value |
|---|---|---|
| Built Capital | Port Income | $44,000,000 |
| Natural Capital | EGS | Not Calculated |
|  | EGS Contamination | Not Calculated |
| Community Capital | Tax Revenue | $53,000,000 |
|  | Industrial Income | $2,567,000,000 |
| Human Capital | Health | Not Calculated |
|  | Human Capital Multipliers | $16,300,000 |
| Total |  | $2,681,000,000 |

| Stocks | | |
|---|---|---|
| Built Capital | Asset Value | $12,400,000 |
| Total |  | $12,400,000 |
| Total- Stocks and Flows |  | $2,694,000,000 |

As to Community damages, Mr. Batker also offers non-monetary opinions regarding health risks, emissions, and natural damages.[24]

In sum, Mr. Batker seeks to offer opinions of over $3 billion dollars in combined historical and future monetary damages for the District and other non-parties without having spoken to anyone at the District about the prior, current or future use of the Property, without any independent investigation or analysis as to the Property, and without relying on any facts or evidence specific to the Property or the SWL.[25] Instead, Mr. Batker speculates, assumes, and draws arbitrary conclusions, to reach his preordained calculations and opinions.

On February 9, 2022, Mr. Batker was deposed. Mr. Batker testified that he was retained as an economist.[26] Mr. Batker confirmed he is not an environmental engineer, CPA, toxicologist, medical doctor, or environmental remediation expert.[27] He confirmed that he did not perform any

---

[23] Ex. 3, David Batker Report, at 00056-00057 (Table 34).
[24] Ex. 3, David Batker Report, at 00039, 00044-00048.
[25] Ex. 3, David Batker Report, at 00056-00057.
[26] Ex. 4, Deposition of David Batker, 29:2-32;23; 142:2-11.
[27] *Id.* at 29:2-31:23; 43:3-45:11; 142:2-11.

environmental testing or analysis and is unable to provide qualified, expert testimony regarding extent or cost of remediation, groundwater contamination, natural impacts, or health related risks as it relates to the SWL.[28] He did not speak with anyone at the District about prior, current, or future use of the Property.[29] He failed to perform any specific investigation and analysis and did not rely on any facts or evidence specific to the Property or other nearby industrial properties in reaching his opinions. Finally, Mr. Batker admitted that his opinions regarding alleged "community damages" and contingent future losses are irrelevant to the District's claim.[30]

## LEGAL STANDARD

"[E]xpert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). "When expert testimony is challenged, the party seeking to present the testimony has the burden of proving, by a preponderance of the evidence, that the testimony satisfies Federal Rule of Evidence 702." *Adriatic Marine, LLC v. Harrington*, No. CV-19-2440-WBV-KWR, 2020 WL 748024, at *5 (E.D. La. Feb. 14, 2020) (citing *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). The trial court plays an essential gatekeeping function in ensuring that inadmissible expert testimony is excluded and is granted broad discretion in that regard. *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018) (citing *Moore*, 151 F.3d at 276).

"The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual possesses the requisite qualifications to render an opinion on a particular subject matter." *Id.* (citing *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011)). After defining the permissible scope of the expert's testimony, the court

---

[28] *Id.* at 43:19 - 45:11; 77:15 – 23; 129: 21 – 132:19; 59:22 – 60:21.
[29] *Id.* at 122:15-24; 124:22 – 125:3, 150:19 – 151:16, 192:6-194:4.
[30] *Id.* at 219:14 – 221:2; 222:17 – 223:15.

Page 7

must determine whether the opinions are reliable and relevant before they can be admitted. *Id.* (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)). "The reliability prong mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.* 174 F.3d 661, 668 (5th Cir.1999)). "The relevance prong requires the proponent to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Id.* (quoting same).

## ARGUMENT

**I.  Mr. Batker's opinions are not relevant to the District's claim and must be excluded.**

Relevance is the hallmark of admissible testimony from an expert witness under Federal Rule of Evidence 702. *Sadler v. Int'l Paper Co.*, No. CIV.A. 09-1254, 2014 WL 5426173, at *2 (W.D. La. Oct. 23, 2014) (citing *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589 (1993)). "**Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.**" *Daubert*, 509 U.S. at 591 (emphasis added).

**A.  *Mr. Batker's opinions are not relevant to the District's Article 2683(3) claim.***

Though the District alleged in its operative complaint claims for restoration under Article 2683(3) and "for all damages caused by their misuse of the property,"[31] the District was previously excluded from bringing non-restoration claims for damages associated with the SWL.[32] Indeed, this Court already denied leave to add additional claims to the Second Amended Complaint, as it

---

[31] R. Doc. 203 at ¶ 59 (emphasis added).
[32] R. Doc. 202, January 21, 2021 Memorandum Ruling.

Page **8**

sought to advance claims regarding non-restoration damages, including groundwater contamination and punitive damages, that were prescribed and futile.

> We find that amendment as to the District's new claims in Counts II through IV and the factual allegations supporting those claims would be futile as the claims have prescribed.[33]

As a result, the District's operative complaint is limited to a single claim for restoration under Article 2683(3), with no pending claim relating to non-restoration damages, including groundwater contamination, "community damages" and/or punitive damages.

Furthermore, in its recent oppositions to Reynolds/Howmet's Motions for Summary Judgment, the District made clear that its sole claim is under Article 2683(3).[34] In asserting that Reynolds and Howmet were trying "recast the District's Article 2683(3) claim into something it is not," the District specifically conceded that it "is not bringing a claim for misuse under Article 2686" and that "[t]he District is bringing a claim under Civil Code article 2683(3)" only.

Mr. Batker's opinions bear exactly—and exclusively—on claims that the Court has already denied and that the District now admits it is not bringing: non-restoration damages. Because claims for anything other than restoration of the SWL are not at issue in this suit, Mr. Batker's opinions on non-restoration damages are irrelevant to the District's Article 2683(3) claim and must be excluded from the trial of this matter.

### B. Mr. Batker's opinions regarding non-parties are unqualified and not relevant to the District's claim.

Mr. Batker further provides general, non-monetary opinions regarding health risks, natural impacts, water quality, and emissions. Mr. Batker also offers opinions regarding historical and future "Community" damages including lost job opportunities, lost tax revenue, and lost private

---

[33] *Id.*
[34] R. Doc. 345-1, at 1-3.

business development. For example, Mr. Batker opines that individuals and private businesses have lost $385,700,000.00 in "industrial income,"[35] that the Parish of Calcasieu has lost $8,000,000.00 in historical lost tax revenue, and that individuals have lost job opportunities in the amount of $2,4000,000.00.[36] In terms of contingent future losses, Mr. Batker speculates 50 years into the future as to the damages of individuals, the Parish of Calcasieu, and private business.[37] For this, Mr. Batker opines there will be loss tax revenue of $53,000,000.00, loss private business income of $2,567,000,000.00, and loss job opportunities in the amount of $16,300,000.00.[38]

Mr. Batker's opinions regarding "community damages" are not relevant to the District's claim. The only plaintiff in this matter is the District, and the only claim that the District has brought is for *restoration* under Article 2683(3) of the allegedly hazardous SWL. Mr. Batker confirmed that his historical and future "community damages" are not applicable to the District, but instead are alleged damages to non-parties including the Parish of Calcasieu, private entities, and individuals.[39] Mr. Batker also confirmed that despite inclusion of those damages in his report, he cannot opine that the District is entitled to any monetary or non-monetary "community damages" as part of this action.[40] Because Mr. Batker's opinions as to alleged "community damages," including damages for lost tax revenue, lost private business income, lost job opportunities, health risks, natural impacts, water quality, and emissions are irrelevant in this way, those opinions, along with his testimony, must be excluded from the trial of this matter.

---

[35] Ex. 3, David Batker Report, at 00054 (Table 31).
[36] *Id.* at 00055 (Table 31).
[37] *Id.* at 00007, 000010, 00054.
[38] *Id.* at 00042 (Table 21); 00054 (Table 30).
[39] Ex. 4, Deposition of David Batker, 219:14 – 221:2; 222:17 – 223:15.
[40] *Id.* at 59:11 – 60:20; 133:15 – 134:18; 207:5 – 208:15; 209:11 – 211:25; 219:4-13; 219:14 – 221:2; 222:17 – 223:15; 227:10 – 230:6.
Page 10

       **C.**    *Mr. Batker's opinions regarding contingent future losses are not relevant to the District's claims.*

In addition to Mr. Batker's tabulations of speculative damages to unnamed individuals, private businesses, and municipalities *not* party to this suit, Mr. Batker provides similarly speculative and unreliable opinions regarding contingent future losses to the District.[41] For example, Mr. Batker opines that the District will be subject to $44,000,000.00 in future lost rent if the District were not awarded the cost of restoration from the defendants in this action.[42] Additionally, Mr. Batker includes statements in his report regarding the cost of a bond should the District not be awarded the cost of remediation from the defendants.[43] In all statements regarding future damages, Mr. Batker has confirmed he is not offering these opinions as damages compensable to the District.[44] Indeed, despite inclusion in his report, he is not opining that these speculative future losses are compensable to the District and would only be incurred if the District is not awarded the cost of remediation.[45] Therefore, Mr. Batker's opinions as to future damages are not relevant and must be excluded from the trial of this matter.

**II.**    **Mr. Batker's opinions are not reliable and must be excluded.**

"The *Daubert* reliability analysis applies to, among other things, the facts underlying the expert's opinion. … In particular, an opinion based on insufficient, erroneous information, fails the reliability standard." *Moore v. Int'l Paint*, 547 F. App'x at 515 (internal quotation marks and citations omitted). The party seeking to rely on the opinion bears the burden of establishing its reliability by a preponderance of the evidence. *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. CV-13-0366, 2016 WL 9414205, at *11 (E.D. La. May 23, 2016) (citations omitted).

---

[41] Ex. 3, David Batker Report, at 00056 (Table 34).
[42] *Id.*
[43] *Id.* at 00024-00025.
[44] Ex. 4, Deposition of David Batker, 227:10 – 230:6.
[45] *Id.* at 133:15-134:18.

Page **11**

While "'[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility,'" *Tajonera*, 2016 WL 9414205, at *11 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)), "expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Adriatic Marine*, 2020 WL 748024, at *6 (quoting *Moore v. Int'l Paint*, 547 F. App'x at 515; *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)) (internal quotation marks omitted). "When an expert's testimony is not based upon the facts in the record but on altered facts and speculation designed to bolster a party's position, the trial court should exclude it." *Adriatic Marine*, 2020 WL 748024, at *6 (quoting *Moore*, 547 F. App'x at 515; *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996)) (internal quotation marks omitted).

### A. Mr. Batker's opinions regarding historical damages are purely speculative and unreliable.

In his expert report, Mr. Batker assigns as historical damages the midpoint of ICON's high and low estimate of the cost of restoration and opines that it will cost $179 million dollars to remove the allegedly hazardous SWL.[46] Mr. Batker's opinion regarding the cost of restoration is unqualified, unreliable and purely speculative. Mr. Batker is not an environmental remediation expert and he is not qualified to offer opinions regarding the nature, extent or cost of the waste or in the allegedly hazardous SWL.[47] Mr. Batker concedes that he is not the appropriate expert to provide the cost of restoration, and that he will defer to the District's restoration experts (ICON's Miller and Sills) on the cost of remediation.[48] Mr. Batker is an economist,[49] and he did not perform any independent investigation into the extent of waste, the hazardous nature of it, or the cost of

---

[46] Ex. 3, David Batker Report, at 00022 -23; Ex. 4, Deposition of David Batker, 159:6-15.
[47] Ex. 4, Deposition of David Batker, 29:2 -31:20; 42:21-43:7; 54:12-16.
[48] *Id*. at 88:21-25.
[49] *Id*. at 29:2-31:20.

Page 12

removal of the alleged SWL.[50] In offering his opinion of $179 million dollars for the cost of restoration, Mr. Batker simply and arbitrarily takes the midpoint of ICON's high and low estimate in formulating his opinion.[51] At the time of deposition, Mr. Batker was unaware that Mr. Sills testified that his estimated cost of remediation based on the lower volumetric calculation was more reliable than the high estimate.[52] Mr. Batker confirmed that he is not able to offer any opinion to disagree with ICON as to the cost to remove the SWL.[53] Therefore, Mr. Batker's restoration damage opinions should be excluded because he is not qualified to offer a cost of restoration opinion and his opinion is otherwise unreliable, speculative, and inconsistent with the experts he indicated he would defer to.

Second, Mr. Batker's opinions regarding historical damages to the District for loss rent, improper profits, and asset value reduction are similarly unreliable and speculative.[54] Mr. Batker did not speak with anyone at the District, or anyone else, regarding future prospects of the Property where the SWL is located.[55]  He did not perform any investigation or analysis into the Property and he did not investigate or perform any analysis into any other properties to determine any consequences as result of the SWL.[56] Instead, Mr. Batker merely speculated and assumed that immediately following the release of the lease in 2016, the District had demand and unavailability for development of a multi-billion dollar industrial facility on the Property where the SWL is located, which is contrary to the use of the Property for the last 50 years, and is without any

---

[50] Ex. 4, Deposition of David Batker, 44:15-45:11; 59:11 – 60:20; 63:17-64:2; 126:22 – 127:14; 131:14-136:22.
[51] *Id*. at 159:6-14; Ex. 3, David Batker Report, 00022 -23.
[52] *Id.* at 62:5-15; 161:12-25.  Mr. Sills testified that ICON's high estimate based on measurements conducted by a third-party contractor were not as reliable and that Mr. Sills would be relying on his own calculations and a $123 million dollar estimate to remove the SWL. Ex. 5, Deposition of Jason Sills, 62:7-63:20.
[53] Ex. 4, Deposition of David Batker, 77:24-79:11; 88:21-25; 161:12 -25.
[54] *Id*. at 228:21 – 230:6.
[55] *Id*. at 150:19 – 151:16; 192:6 – 194:5; 195:13 – 197:22.
[56] *Id*. at 152:23-153:14; 186:1 -6; 200:12 – 25; 203:1-204:3; 206:23 – 207:4.

applicable supporting evidence or facts in the record.[57] Mr. Batker did not review, and therefore ignored the District's corporate testimony that the District has not sustained any lost opportunities or developments as it relates to the SWL.[58] Nonetheless, to reach an opinion on loss rent, Mr. Batker arbitrarily applied a series of assumptions to calculate loss rent starting in 2016 when the Property was released back to the District.[59]

Similarly, Mr. Batker is not qualified as an expert in real estate appraisal to provide a reduced asset value opinion.[60] He did not perform or rely on any real estate valuations to determine his conclusion.[61] He did not speak with the District about lost asset value or consider its testimony that it had not suffered any losses as a result of the SWL.[62] Instead, he arbitrarily selected a percentage range, took the midpoint, and applied it to the irrelevant, assessed value of the tax-exempt Property to reach his opinion.[63] Additionally, in calculating lost asset value, Mr. Batker improperly included the reduced asset value for properties other than SWL property, which are not relevant to this action.[64]

Finally, in providing a calculation for "improper profits," Mr. Batker provides an unqualified cost of remediation estimate,[65] despite making no investigation into the different defendants,[66] and not considering the undisputed fact that Reynolds and Howmet did not operate

---

[57] *Id*. at 138:3-11.
[58] Ex. 6, 30(b)(6) Deposition of District, 95:14-96:22; 162:16 – 163:14; 175:6-19.
[59] Ex. 4, Deposition of David Batker, 192:6-194:4; 203:1 – 204:2; 206:23 – 207:4.
[60] *Id*. at 29:2- 31:20.
[61] *Id*. at 181:9-14.
[62] *Id*. at 121:9-11; 122:15-24; Ex. 6, 30(b)(6) Deposition of District, 163:15-23.
[63] Ex. 4, Deposition of David Batker, at 181:15-23; 184:6-24; 186:1-6; 187:7-190:19.
[64] *Id*. at 186:7-187:24.
[65] *Id*. at 174:11 – 175:1.
[66] *Id*. at 164:15 – 165:4; 168:18-21.

the SWL.[67] Furthermore, he double counts this improper profit estimate as a punitive damage along with ICON's estimated cost of remediation.[68]

In sum, none of Mr. Batker's opinions are based upon any facts in the record but on altered facts and speculation. The opinions are offered solely to bolster the District's position, inappropriately inflame the fact-finder, and prejudice Reynolds and Howmet. The opinions and testimony rely on completely unsubstantiated factual assertions, and therefore, are unreliable and inadmissible.

> **B.** *Mr. Batker's opinions regarding future losses, health impacts, nature impacts, water quality, and emissions are unqualified, unreliable and must be excluded.*

Mr. Batker's opinions on future losses, health impacts, nature impacts, water quality, and emissions though not relevant, are similarly speculative, unreliable, and inadmissible. First, his future loss calculation is based on a speculative, counter-factual scenario reflective of Batker's arbitrary assumptions alone.[69] Mr. Batker is not a medical doctor, toxicologist, or environmental expert,[70] and he testified that he is not able to offer opinions regarding health impacts, water quality, groundwater contamination, or emissions as it relates to the presence of the SWL.[71] Nonetheless, Mr. Batker attempts to include in his opinions general statistics about health-related risks completely disconnected from any fact, test, analysis, or investigation as to the SWL.[72] Similarly, Mr. Batker attempts to generally opine regarding water quality, groundwater contamination, emissions, and other natural impacts without any facts, testing, analyses, or investigation as it relates to the SWL.[73] Mr. Batker speculates and assumes that because there is a

---

[67] *Id*. at 135:14-136:22.
[68] *Id*. at 96:4-103:25.
[69] *Id*. at 77:24 – 79:11.
[70] *Id*. at 29:2-31:20.
[71] *Id*. at 59:11-60:20; 63:17 -64:2, 207:5-208:15; 208:24- 211:25; 219:4-13.
[72] *Id*. at 59:11-60:20.
[73] *Id*. at 59:11-60:20; 63:17 -64:2, 207:5-208:15; 209:1- 211:25; 219:4-13; Ex. 3, David Bater Report, 00027, 00039, 00042 – 00048.

an alleged hazardous SWL on the Property, the community, though non-parties to this action, will sustain these non-monetary damages and increased risks as a result of the SWL. Because Mr. Batker's opinions and testimony are not based upon any facts in the record and rely on completely unsubstantiated factual assertions, his opinions are purely speculative, irrelevant, and unreliable.

## CONCLUSION

Pursuant to the Federal Rules of Evidence, Mr. Batker's opinions are not admissible. First, his opinions relate to non-remediation damages, non-party damages, and contingent future damages not relevant to the District's sole claim in this action for restoration under Article 2683(3). Second, Mr. Batker's opinions are completely unreliable as they are not based upon facts in the record but on altered facts and pure speculation. Therefore, for these reasons, the Court should strike and exclude the opinions of David Batker at the trial of this matter.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *C. Hogan Paschal*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEUAX (#29446)**
**DANIEL J. DYSART (#33812)**
**C. HOGAN PASCHAL (#38495)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:  504.556.5549
Fax:  504.586.5250
Email:  kmiller@fishmanhaygood.com

*Counsel for Defendants and*
*Third-Party Plaintiffs,*
*Reynolds Metals Company, LLC and Howmet*
*Aerospace Inc., f/k/a Arconic Inc., f/k/a Alcoa Inc.*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on the 17th day of February, 2022, I electronically filed the foregoing pleading using CM/ECF, which will send a notice of the electronic filing to all counsel of record.

                                             /s/ *C. Hogan Paschal*
                                             **C. HOGAN PASCHAL**