# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**LAKE CHARLES HARBOR &**
**TERMINAL DISTRICT**

**CASE NO.  2:17-CV-01114**

**VERSUS**

**JUDGE JAMES D. CAIN, JR.**

**REYNOLDS METAL CO**

**MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is "Lake Charles Harbor & Terminal District's Motion for Partial Summary Judgment on the Issues of Solidary Liability and Restoration Obligations Pursuant to Civil Code Article 2683" (Doc. 254).  Specifically, Lake Charles Harbor & Terminal District (the "District") move for a ruling that Defendants, Reynolds Metal Company, LLC ("Reynolds"), Alcoa Inc., ("Alcoa"), Lonza America, Inc. and Lonza Group Ltd., (collectively referred to as "Lonza")[1] are liable *in solido* for damages in an amount necessary to restore the former leased property to its original condition less ordinary wear and tear. The District relies on Louisiana Civil Code Articles 2683, 1821, and 1818 as well as Article 128 of the Mineral Code.

## FACTUAL STATEMENT

On September 1, 1967, the District and Gulf Coast Aluminum Corporation ("Gulf Coast") entered into an "Underlying Lease Agreement," by which the District leased to

---

[1] Lonza's predecessors are Consolidated Aluminum Corporation and/or Gulf Coast Aluminum Corporation who owned and/or operated the Facility pursuant to multiple lease agreements.

Gulf Coast a tract of land located along the Calcasieu River Ship Canal (the "Leased Property").[2] In 1968, Gulf Coast began construction of an aluminum manufacturing facility (the "Facility") on the Leased Property. In 1968, Gulf Coast began disposing of waste generated from the Facility into an unauthorized and unpermitted dump (the "Solid Waste Landfill" or the "SWL") on the Leased Property.[3]

In 1970, the District leased an additional 9.37 acres to Gulf Coast, adjacent to the Leased Property (the "1970 Lease Agreement"), which was reduced to 1.60 acres in 1976.[4] During or about January 1971, Consolidated Aluminum Corporation ("Consolidated") acquired Gulf Coast by merger and assumed all rights and obligations of lessee under the underlying Lease Agreement and the 1970 Lease Agreement. From 1968 until it closed in 1983, Gulf Coast and later Consolidated buried industrial waste generated at the Facility in the SWL.[5] The SWL was closed prior to Reynold's purchase of the Facility; the Louisiana Department of Environmental Quality ("LDEQ") acknowledged that Consolidated closed the SWL in 1982 and covered the area with a soil cap in 1983. The Louisiana Department of Natural Resources ("LDNR") authorized closure of the SWL prior to November 30, 1983.[6]

---

[2] Plaintiff's exhibit A.
[3] Plaintiff's exhibit B, Philip Blair deposition from *Consolidated Aluminum Corp. v. Alcoa, Inc. and Reynolds Metals Co.*, Civ. Action 03-1055, (M.D. La.) Doc. 339-4. Reynolds and Howmet dispute this because the District does not cite to any admissible evidence to support this statement.
[4] Plaintiff's exhibits C and D.
[5] Plaintiff's exhibit B, Philip Blair deposition from *Consolidated Aluminum Corp. v. Alcoa, Inc. and Reynolds Metals Co.*, Civ. Action 03-1055, (M.D. La.) Doc. 339-4. Reynolds and Howmet dispute this because the District does not cite to any admissible evidence to support this statement.
[6] Plaintiff's exhibit E.

On May 23, 1983, Consolidated entered into a "Purchase Agreement" with Reynolds, wherein Reynolds acquired the land and leasehold interests of Consolidated subject to Consolidated's retention of certain liabilities.   On November 30, 1983, Consolidated, Reynolds, and the District entered into an "Agreement of Assignment, Assumption, Release and Amendment," (the "Reynolds Assignment") which transferred to Reynolds all rights and obligations of Consolidated as lessee under the leases with the District.[7] The District and Reynolds entered into an "Amended and Restated Underlying Lease Agreement" on November 30, 1983.[8] On August 1, 1984, the SWL was officially closed with a soil cap.[9]

From May 4, 2000, Reynolds was a direct and wholly owned subsidiary of Alcoa Inc. and from November 1, 2016 until the present date, Reynolds has been a direct and wholly owned subsidiary of Alcoa Corporation.[10] On September 7, 2016, Alcoa and the District agreed to release a portion of the property leased to Reynolds—the portion upon which the SWL is situated.[11] In 2003, Consolidated, Lonza, Reynolds, Alcoa, and other parties engaged in litigation following a disagreement as to who was responsible for environmental maintenance obligations at the Facility, including the responsibility for the SWL (the "Prior Litigation").

---

[7]  Plaintiff's exhibit G.
[8]  Plaintiff's exhibit H.
[9]  Plaintiff's exhibit I.
[10] Defendant's exhibit a, Declaration of Scott Seewald; Defendant's exhibit b, declaration of Marissa P. Earnest (doc. 276-1).
[11] Plaintiff's exhibit J.

On October 1, 2010, Consolidated, Lonza, Reynolds, Alcoa, and other parties entered into a Settlement Agreement and Release (the "Settlement Agreement") which resolved the Prior Litigation. Under the terms of the Settlement Agreement, Lonza and Consolidated agreed to "assume all past, present, and future liabilities with respect to the SWL, the Cathode Disposal Area ("CDA") and the Former Scrubber Ponds ("Scrubber Ponds").[12]

On May 5, 2016, the District executed the Partial Release of Leased Property and on July 20, 2016, Reynolds executed the Partial Release of Leased Property.[13] The Partial Release terminated the Amended and Restated Underlying Lease Agreement for the area used for the SWL. On or about May 10, 2017, the District made demand on Reynolds and Alcoa[14] to repair, remediate and restore the property to its condition at the inception of the 1967 Underlying Lease Agreement (and as amended and restated on November 30, 1983), less normal wear and tear, as required by Louisiana Civil Code Article 2683.  Howmet disputes that it was a party to the November 30, 1983 Reynolds Assignment, the Amended Lease Agreement, or a lessee of the Leased Property. Howmet disputes that it was a party to the Partial Release of Lease Property.

Reynolds and Alcoa refused the District's demand and denied all responsibility for the SWL. On September 4, 2017, the District filed the instant lawsuit and subsequently

---

[12] Plaintiff's exhibit L, Doc. 93-2, § 3(a)(i); Doc. 227.
[13] Doc. 254-13.
[14] Howmet disputes that demand was made on Alcoa.

filed its Second Amended, Supplemental and Restated Complaint and Jury Demand naming, Reynolds, Alcoa, Lonza America Inc., Lonza Group Ltd, and Consolidated.[15]

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

---

[15] Consolidated went bankrupt and the District was unable to serve it.

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

The District maintains that Defendants are liable *in solido* for restoration of the SWL, minus normal wear and tear.  The District submits the deposition testimony of former plant manager Philip Blair who testified that during his tenure at the Facility from 1969 through 2007, Gulf Coast, Alcoa, and Consolidated used the SWL to dump "[a]ll of the materials that were not usable in the process that had become contaminated and/or deemed as trash."[16] It is undisputed that since the termination of the District Lease Agreements, the SWL is still situated on the District's property and the District has made demand on Alcoa and Reynolds for restoration.[17] The District maintains that it is entitled to judgment as a matter of law for damages in an amount necessary to restore the former Leased Property under Louisiana Civil Code Article 2683. For purposes of this motion, the District is

---

[16] Plaintiff's exhibit B, Blair Deposition. p. 125.
[17] See Declaration of Greg Miller, exhibit N.

seeking a ruling from the Court that Defendants Reynolds, Alcoa and Lonza are solidarily liable for restoration of the SWL to its pre-1967 condition.

Defendants, Reynolds, Howmet Aerospace Inc., f/k/a/ Arconic Inc., f/k/a Alcoa Inc. ("Howmet"), and Lonza argue that the District's motion should be denied because (1) the District has failed to cite record evidence to support its motion, (2) the District's claim is prescribed, (3) Reynolds is not obligated to restore the Leased Property to its pre-1967 condition, and (4) the Mineral Code is inapplicable as the District's basis  for solidary liability regarding the SWL.

*Is the Mineral Code Applicable?*

Defendants Reynolds and Howmet maintain that there is no solidary obligation pursuant to Article 128 of the Mineral Code for the SWL because the leases at issue are surface leases, not mineral leases, thus the Mineral Code is inapplicable. Article 128 provides that "the obligations imposed upon mineral lessees . . . are indivisible." *Alford v. Chevron U.S.A. Inc.*, 13 F.Supp.3d 581, 597 (E.D. La. 2014).

Defendants note that the District has not alleged that the 1983 Lease or any of the other leases at issue are a mineral lease, nor has the District alleged that there was exploration or production activity on the leased acreage. Defendants rely on the District's expert, Charles Norman, who noted in his report that the "leases between the District and [Defendants] allowed [Defendants] the right to use the surface [of the Leased Property] to install facilities and equipment for manufacturing operations.[18] Mr. Norman refers to the

---

[18] Defendant's exhibit A-1, Charles Norman Expert Report, p. 4, Doc. 323-2.

leases at issue as "surface leases,"[19] used "for the purport of building an aluminum manufacturing facility." Nothing in his report provides that the SWL was related to the exploration or production or oil and gas.[20]

Defendants also rely on a statement of Michael Dees, the District's general counsel, who explained in an email dated January 19, 2012, that the Leased Property was used for the "calcining of petroleum coke and the manufacturing of anodes: and that "Aluminum was also made at the site in the 60s and 70s."[21]

The Court agrees with Defendants that the District cannot rely on Article 128 of the Mineral Code to impose solidary liability because the allegations in the District's Complaint and the relevant leases involve surface leases.   Thus, the Mineral is not applicable.

*Defendant's solidary obligation to restore*

Defendants argue that its duty to restore the property should be to the condition of the property as it existed on November 30, 1983. Louisiana Civil Code Article 2683 requires only that a lessee "return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear." See *Alford v. Chevron U.S.A. Inc.,* 13 F.Supp.3d 593 (E.D. La. 2014) citing Louisiana Civil Code Article 2863(3).  Defendants maintain that November 30, 1983, is the delivery date which is after the SWL had existed on the Leased Property for decades. Defendants posit

---

[19] *Id.*
[20] *Id.*
[21] Defendant's exhibit A-2, email at District -001622, Doc. 323-3.

that the 1983 Lease is a new lease because it contains "significant modifications of critical terms" as opposed to an amendment or assignment of the prior leases.

Defendants assert that at the time that the 1983 Lease Agreement began, the SWL had been closed by Consolidated, and Reynolds never recommenced use or operation of the SWL at any time thereafter. In 2016, the District and Reynolds entered into a Partial Release of Leased Property ("Partial Release") effective March 31, 2016.  The SWL is located on the property released in the Partial Release. Defendants maintain that they are not required to restore the Leased Property to its pre-1967 condition. Defendants argue that because the 1983 Lease was a "new" lease and the SWL has existed on the Leased Property for decades, Louisiana Civil Code Article 2683 only requires them to restore the property to the condition as it existed in 1983. Thus, Defendants, Reynolds, and Howmet argue that they are not responsible for restoring SWL on the Leased Property to its 1967 condition, only to its 1983 condition.

Defendants note that by November 30, 1983, the SWL had already been closed, was never operated by Reynolds, and was previously and exclusively operated for several years by Consolidated and other Lonza predecessors. Defendant Reynolds also argues that it can only be liable for those obligations that arose after November 30, 1983, and the SWL restoration obligation arose entirely prior to that date. As such, there can be no solidary liability, and any liability was expressly retained by Consolidated in the Reynolds Assignment.

In addition, Howmet maintains that it was not a party to the 1983 Lease, or the 1983 Assumption and Assignments or the 2016 Partial Release of the Lease.  Howmet asserts that is it not a successor-in-interest to Reynolds and notes that it was formerly known as Alcoa Inc.  On or about November 1, 2016, Alcoa Inc. changed its name to Arconic Inc., and on or about April 1, 2020, Arconic, Inc. changed its name to Howmet Aerospace Inc. From about May 3, 2000, until November 1, 2016, Reynolds was a direct and wholly owned subsidiary of Alcoa Inc. and from November 1, 2016, to the present, Reynolds has been a direct and wholly owned subsidiary of Alcoa Corporation.[22]

Defendants Howmet and Reynolds also rely on the Settlement Agreement that resolved the Prior Litigation wherein the parties, Lonza, Reynolds, and Howmet executed said Agreement to fully, completely, and finally resolve and terminate all disputes and claims as to the Prior Litigation and acknowledged and agreed that the Settlement Agreement defined the responsibilities of the parties as to various geographical areas and hazardous materials located on the Property. The Settlement Agreement provides that:

Lonza will assume all past, present, and future liabilities with respect to the Solid Waste Landfill ("SWL"), the Cathode Disposal Area ("CDA"), and the Former Scrubber Ponds ("Scrubber Ponds").

Lonza will indemnify, hold harmless, and defend [Howmet] from any and all claims by any third parties, including any Agency, with respect to claims arising out of the SWL, CDA, and Scrubber Ponds.[23]

---

[22] Defendant's exhibit A, Declaration of Scott E. Seewald; Defendant's exhibit B, Declaration of Marissa P. Earnest.
[23] Settlement Agreement, at § D(3)(a)(i)–(ii), Doc. 254-16.

The District maintains that Reynolds is solidarily liable for restoration of the SWL because it was the direct lessee at termination of the District Lease Agreements on September 9, 2016. Of significance to this Court is that the District was not a party to the Settlement Agreement.

On November 30, 1983, Reynolds, Consolidated, and the District entered into the Reynolds Assignment, which assigned to Reynolds "all of its right, title and interest as Lessee in, to and under the District Lease."[24] Reynolds "accept[ed] such assignment and … assume[d] all of Consolidated's liabilities and obligations under the District  Lease (except for liabilities and obligations arising prior to the date [of assignments] which remain undischarged)."[25] The District asserts that the obligation to restore pursuant to Article 2683(3) did not arise until termination of the lease, which was after the date of assignment of the District Lease Agreements to Reynolds, citing *Marin v. Exon Mobil Corp.*, 48 so.3d 234, 256 (La. 10/19/10) ( "La. C.C. art. 2683 contains obligations  that arise only at the end of the lease.") Thus, the District maintains that Reynolds assumed the obligation for the restoration of the SWL at lease termination.

The District also maintains that Alcoa is likewise solidarily liable for restoration under Article 2683 because it succeeded to the rights and obligations of Reynolds with respect to the Facility and District Lease Agreements.  The District relies on the Settlement Agreement wherein Alcoa defined itself as Alcoa Inc. and Reynolds Metals Company,"

---

[24] Plaintiff's exhibit G, Assignment, ¶ 1.
[25] *Id.*

and recited that Alcoa is the owner and/or lessee of that certain Property which was purchased and/or assigned from Lonza pursuant to a Purchase Agreement … dated Nov. 30, 1983.[26] The District also relies on Alcoa's Motion for Summary judgment  against Lonza,[27] wherein Alcoa states as an uncontested fact that "[a]t the time of the Prior Litigation [2003-2010], Reynolds and Howmet,[28] were the lessees of the Leased Property and owners of the Facility."[29] Thus, because Reynolds and Alcoa/Howmet were lessees at the time of termination of the lease of the SWL, they are also liable to the District for restoration damages.

The District maintains that the Settlement Agreement is of no moment here because Louisiana Civil Code Article 1821[30] expressly provides that as a matter of law, Lonza, Alcoa/Howmet and Reynolds are liable *in solido* to the District for liabilities with respect to the SWL, including restoration under Article 2683(3).

Furthermore, the District relies on Louisiana Civil Code Article 1818 which provides that "[w]here an obligation is indivisible, … all obligors must be held solidarily liable for the full performance of the obligation." *Sweet Lake Land & Oil Co. LLC v. Exxon*

---

[26] Plaintiff's exhibit M, Settlement Agreement, § A.
[27] Doc. 232-5, ¶ 14.
[28] Howmet Aerospace Inc. f/k/a Arconic Inc. f/k/a Alcoa Inc. Thus, the District refers to Alcoa and Howmet as the same party, whereas counsel for Reynolds and Alcoa refer to this entity as Howmet.
[29] *Id.*
[30] Article 1821 provides that:

> An obligor [here, Reynolds and Alcoa/Howmet] and a third person [Lonza] may agree to an assumption by the  latter [Lonza]  of an obligation of the former.  To be enforceable by the obligee [the District] against the third person [Lonza], the agreement must be made in writing.  The obligee's [District's]  consent to the agreement does not effect a release of the obligor [Reynolds and Alcoa/Howmet].  The unreleased obligor [Reynolds and Alcoa/Howmet] remains solidarily bound with the third person [Lonza].

*Mobil Corp.*, 2011 WL 5825791, at *5 (W.D. La. Nov. 16, 2011) (citing Louisiana Civil Code article 1818).

As noted by Defendants, Article 2683 does not expressly impose any solidary obligation.  Louisiana Civil Code Article 1796 provides that "[s]olidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." Louisiana Civil Code Article 1815 provides that "[a]n obligation is divisible when the object of the performance is susceptible of division. An obligation is indivisible when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division."

Reynolds/Howmet argues that the obligation to restore and/or remediate the SWL is entirely susceptible to division, and has, in fact been divided, not only by the parties, (with Consolidated retaining all liability for the damages caused by their own fault prior to November 30, 1983), but also by the LDEQ.

Reynolds/Howmet relies on the following:

- The LDEQ's agency order ("AO") for Consolidated (now Lonza) places responsibility with Consolidated since only Consolidated used and closed the SWL.[31] Specifically, the Administrative Order states that Consolidated, or its predecessor, Gulf Coast Aluminum owned or operated the facility from 1967 to 1983 and that "[d]ue to the release of hazardous substances at this facility during Consolidated's ownership and operation, Consolidated is a Responsible Person with respect to the remediation of this site pursuant to Chapter 12 of the Louisiana Environmental Quality Act, LSA-R.S. 30:2271, *et seq.*"[32]

---

[31] Defendant's exhibit B-6, Doc. 323-13, Reynolds_004355 and attached Amended Administrative Orders, Reynolds_ 004356-004394.
[32] *Id.*, Amended Order, ¶ ¶ II and III, Reynolds_004384.

- The Release Agreement provided that the District, Consolidated and Reynolds agreed to divide the obligation as to the Leased Property before and after November 30, 1983. The parties agreed that Consolidated retained all liability for the SWL.[33]

- The District's expert Charles Norman confirms that Reynolds/Howmet never disposed any materials into the SWL and Consolidated "expressly retained" "certain obligations, including responsibility for environmental conditions: arising prior to November 30, 1983.[34]

- The Settlement Agreement mentioned herein expressly stated that "Lonza will assume all past, present, and future liabilities with respect to the Solid Waste Landfill ("SWL"), the Cathode Disposal Area ("CDA"), and the Former Scrubber Ponds ("Scrubber Ponds").

  Lonza will indemnify, hold harmless, and defend [Howmet] from any and all claims by any third parties, including any Agency, with respect to claims arising out of the SWL, CDA, and Scrubber Ponds."[35]

Reynolds/Howmet assumed all liabilities with regard to the SWL and knew at the time it entered the lease, that the SWL was part of the lease. The obligation under Article 2683(3) for restoration did not arise until the termination of the lease.

In addition, Alcoa (now Howmet) acquired Reynolds, succeeding to the rights and obligations of Reynolds with respect to the Facility and District Lease Agreements.  In other words, Alcoa assumed the obligations of the lessee.[36] Lonza obligated itself for all liabilities arising out of the SWL in the October 1, 2010 Settlement Agreement.[37]

---

[33] Second Amended Complaint, ¶ 18, Doc. 203.
[34] Defendant's exhibit A-1, Norman Report, pp. 3, 6, Doc. 323-2; *see also* Defendant's exhibit B-7,Phillip Blair depo. pp. 30:7–14, 115:98–23.
[35] Settlement Agreement, at § D(3)(a)(i)–(ii), Doc. 254-16.
[36] Doc. 232-5, ¶ 14.
[37] Plaintiff's exhibit M, § 3(a)(i).

Lonza assumed the future liabilities for the SWL and the District may enforce that obligation. As noted herein, the Reynolds Assignment plainly states that Reynolds assumed "all of Consolidated's liabilities and obligations" except those "arising prior" to the Reynolds Assignment.  The obligation to restore under Article 2683 did not arise until 2016 when the lease terminated. As a matter of law, there is solidary liability for damages in an amount necessary to restore the former leased property to its original condition less ordinary wear and tear.

*Prescription*

Defendants maintain that the instant action is delictual, subject to a one-year prescriptive period, and therefore prescribed. Lonza argues that because the District's claim are statutory (imposed by law), the damages arose from *ex delicto*.

Lonza cites *Dephillips v. Hospital Service District No. 1*, 2020 WL 3867212 (La. 7/9/20) which cited *Roger v. Dufrene*, 613 So.2d 947, 948 (La. 1993), that "[t]he classic distinction between damages ex contractu and damages ex delicto is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons;" *see also id.* ("Fault is contractual when it causes a failure to perform an obligation that is conventional in origin, that is, an obligation created by the will of the parties, while fault is delictual when it causes the dereliction of one of those duties imposed upon a party regardless of his will, such as a duty that is the passive side of an obligation created by the law." (citing 6 Saul Litvinoff & Ronald J. Scalise Jr., La. Civ. L. Treatise, Law of Obligations § 5.2 (2d ed. 2019)).

"[W]here 'the contract is not the basis for the wrongdoing party's liability but only the occasion for the commission of that party's tort, … the outcome of the dispute should be governed by the rules of delictual, rather than contractual, liability.'" *Id*. at *6.

Lonza argues that the District must have filed its claim no later than July 20, 2017, because the Partial Release which included the SWL was executed by the District on May 5, 2016, and by Reynolds on July 20, 2016. The District filed the instant lawsuit on September 5, 2017.[38]

The District maintains that the applicable prescriptive period is ten (10) years and argues that the Louisiana Supreme Court's decision in *DePhillips* is not applicable. This Court previously determined that a claim under Article 2683(3) is an implied obligation of a lease contract arising at lease termination and thus subject to a ten-year prescriptive period. *Marin v. Exxon Mobil Corp.,* 48 So.3d 234, 255-56 (La. 10/19/10); *State v. Louisiana Land & Expl. Co.,* 110 So.3d 1038, 1046 (La. 1/30/13). See also *Naquin v. Bollinger Shipyards, Inc.,* 102 So.3d 875, 878 (La. App. 1 Cir. 9/7/17); *Crooks v. Louisiana Pacific Corp.,* 155 So.3d 686, 688 (La.App. 3 Cir. 12/10/14); *Walton v. Exxon Mobil Corp.,* 162 So.3d 490, 496 (La.App. 2 Cir. 2/26/15); *Broussard v. Martin Operating Partnership,* 103 So.3d 713, 734 (La.App. 3 Cir. 11/21/12). Thus, we continue to hold that the District's claim pursuant to Louisiana Civil Code Article 2683(3) is a special obligation contractually assumed by the obligor, and therefore is personal and contractual in nature.  Importantly, the District's Article 2683(3) claim for restoration would not exist had it not been for the

---

[38] Doc. 1.

subject Lease Agreements. Accordingly, the Court again finds that Louisiana Civil Code Article 3499 applies and the District's claim is a personal action subject to a liberative prescription of ten years.

*The 1983 Lease*

Defendants argue that the 1983 Lease is a new lease, and therefore its obligation is to restore/remediate the SWL to its condition as of the date of the 1983 lease. In other words, the only obligation pursuant to Article 2683 is to restore the Leased Property to its condition, minus wear and tear, as of November 30,1983. Defendants maintain that the 1983 Lease is a new lease because the lease executed by the District and Reynolds on November 30, 1983, modified three elements (the parties, the term, and the rent).

First, Defendants assert that the fact that the 1983 Lease was titled "Amendment" is irrelevant because the substance of the agreement matters, not the form. *See e.g., Four Star Harahan, L.L.C. v. Accent Annex Enterprises, Inc.,* 2006 WL 6905166, *4 (La. App. 5 Cir. 9/26/06). Defendants argue that the leases differ such that the latter 1983 Lease is a new lease. Defendants note that in accordance with Louisiana Civil Code Articles 2673-2680, a lease must be comprised of at least three essential elements--the thing, the term, and the rent.

Defendants rely on *D'Antonio v. Simone,* 653 So.2d 678, 680 (La.App. 5 Cir. 3/15/95) to support its position that because an essential element was changed, the result is a new lease, as opposed to an amendment. Specifically, Defendants assert that the 1983 Lease modified at least two (2) essential elements of the 1967 and 1970 Leases, namely,

the term of the lease and the rent. The 1967 lease term was from December 1, 1967 through November 30, 2007.[39] The 1970 40-year Lease was from July 1, 1970 through June 30, 2010.[40] The 1983 Leases began on November 30, 1983 and was set to expire on November 29, 2023.

Defendants note that the amount of rent for each of the Leases changed: the 1967 Lease required a $667,891 lump sum amount;[41] the 1970 Lease required a $1,200 per year (later reduced to $192 per year in the 1976 Amendment) paid on an annual basis;[42] the 1983 Lease required a semi-annual bases at a rental rate of $24,000 per year (such that each semi-annual installment totaled $12,000).

Defendants further note that the parties to the Lease Agreements were different. The 1967 and 1970 Leases were between the District and Gulf Coast, predecessor to Lonza.[43] In 1983, Reynolds purchased a portion of the property owned by Consolidated, and Reynolds, the District, and Consolidated executed the Reynolds Assignment.[44] Specifically, the Reynolds Assignment states in relevant part:

1. <u>Assignment and Assumption.</u> Consolidated hereby assigns to Reynolds all of its right, title and interest as Lessee in, to and under the District Lease. Reynolds hereby accepts such assignment and . . . assumes all of Consolidated's liabilities and obligations under the District Lease (except for liabilities and obligations arising thereunder prior to the date hereof which remain undischarged).

---

[39] Doc. 254-4, 1967 Lease Agreement, art. II § 1.
[40] Id. 1970 Lease Agreement, § 2.
[41] Id. Lease Agreement, art. II § 2.
[42] Id. Lease Agreement, § 3; Doc. 254-7, 1976 Amendment § 3(2).
[43] Lonza's predecessors was Consolidated and Gulf Coast; From 1967 until 1983 Consolidated and/or Gulf Coast operated the SWL on a portion of the Leased Property.
[44] Doc. 254-10, at p. 3-4.

2.  <u>Consent to Assignment and Assumption; Release.</u> The District hereby consents to the assignment and assumption described in paragraph 1 hereof and hereby completely and unconditionally releases Consolidated from any and all liabilities and obligations to the District under the District Lease (except for liabilities and obligations arising prior to the date hereof which remain undischarged).

Concurrent with the Reynolds Assignment, the District and Reynolds executed the 1983 Lease Agreement, which as noted above, commenced a 40-year term of lease.[45] The 1983 Lease Agreement stated that "Lessee and Lessor are entering into this Agreement in order to amend and restate in its entirety the Underlying Lease Agreement."[46]

The District relies on the laws governing a novation which provide that a novation is never presumed, and the intention of the parties to extinguish the original obligation must be clear and unequivocal.  *Hennings, Jr. v. CDI Corp.*, 451 Fed. App'x 359, 364 (5th Cir. 2011) (quoting *Langhoff Properties, LLC v. BP Prod. N. Am. Inc.,* 519 F.3d 256, 261 (5th Cir. 2008)); Louisiana Civil Code Article 1880. "[I]n case of doubt, it should maintain the old obligation as co-existing with the new one." *Placid Oil Co. v. Taylor,* 325 So.2d 313, 316 (La.App. 3 Cir. 1976) (citations omitted). "[T]he intention to novate may be determined from the express terms of the agreement in question, the nature of the transaction, and the facts and circumstances surrounding the transaction. And the burden of proving novation lies with the party insisting that one occurred…." *Longhoff Properties, LLC*, 519 F.3d at 262 (citing *Placid Oil Co.*, 325 So.2d at 316).

---

[45] Doc. 254-11, p. 3.
[46] Id.

"If any substantial part of the original performance is still owed, there is no novation," and "[m]ere modification of an obligation, made without intention to extinguish it, does not effect a novation." Louisiana Civil Code Article 1881; *See also Fletcher v. Tri-State Mill Supply Co.*, 609 F.Supp. 150, 155 (M.D. La. 1985) (finding novation only occurred where a subsequent agreement "clearly indicate[d] that the parties intended to extinguish all obligations… under the [prior commission-based] contract, and to substitute a new [salary-based] employment contract in its place.")

The District argues that the 1983 transaction was a continuation of the lease of the District's property for the operation of an aluminum manufacturing facility. The District challenges Defendant's argument that the 1967 Lease was between the District and Consolidated and not the District and Reynolds.  The District relies on the Reynolds Assignment executed with the 1983 Lease which transferred to Reynolds all rights and obligations of Consolidated as lessee under the 1967 Lease. Thus, the District posits that Reynolds stepped into the shoes of Consolidated as lessee under the 1967 Lease prior to entering the 1983 Lease.[47] Of significance, the Reynolds Assignment defines the "District Lease" as "that certain Underlying Lease Agreement dated as of September 1, 1967 …"[48]

Next, the District remarks that there is no evidence submitted by Defendants that the parties intended to extinguish the obligations of the 1967 Lease. Rather, the evidence supports the District's claim that the 1983 Lease was a continuation of the operation of an

---

[47] Plaintiff's exhibit G, Doc. 254-10.
[48] *Id.* p.1.

aluminum manufacturing facility.[49]   The District remarks that the cases cited by Defendants[50] involved leases that expired prior to the effective date of the new lease, and thus are distinguishable.

The District notes that the 1967 Lease had not expired and that term was subsumed into the Amended and Restated 1983 Lease. The Court agrees with the District that the 1983 Lease was not a new lease, but an amended and restated lease that was a continuation of the 1967 Lease.

## CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment on the Issues of Solidary Liability and Restoration Obligations Pursuant to Civile Code Article 2683 will be granted**.**

**THUS DONE AND SIGNED** in Chambers on this 9th day of March, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[49] Plaintiff's exhibit H, 1983 Lease, Doc. 254011 (Lessee and Lessor are entering into this Agreement in order to amend and restate in its entirety the underlying Lease Agreement").
[50] *Four Star Harahan, LLC v. Accent Annex Enterprises, Inc.*, 2006 WL 6905166 (La.App. 5 Cir. 9/26/06); and *Langhoff Properties, LLC.*