UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO. 2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Lonza Group LTD and Lonza America Inc.'s Motion for Summary Judgment Re Normal Wear and Tear and Restoration" (Doc. 335) wherein Lonza moves to dismiss the Lake Charles Harbor & Terminal District's (the "District") claims for restoration of the leased premises to its original condition, minus wear and tear pursuant to Louisiana Civil Code Article 2683, or in the alternative, limit the damages to the value of the property-$630,000.

## FACTUAL STATEMENT

For a complete recitation of the undisputed facts, see the Memorandum Ruling issued October 1, 2019.[1] For purposes of this Motion, the relevant facts are as follows:

The Lake Charles Harbor & Terminal District (the "District") knew that the property it leased to Defendants herein was being leased by an aluminum manufacturing business for the purpose of operating an aluminum manufacturing facility. The District's expert witness, Charles Norman, testified that the District knew in 1967 that the purpose of the

---
[1] Doc. 144.

Leased Property was to build and operate an aluminum production facility. Lonza's expert, Ginny Davis, opines in her report that prior to the passage of the Resource Conservation and Recovery Act ("RCRA"), it was normal practice for aluminum producers to dispose of production generated wastes onsite.[2] The District disputes that it was normal practice for aluminum manufacturers to operate unpermitted and hazardous solid waste landfills on leased property.

Expert Michael Pisani opined that for over 45 years, industrial sites from the 1950s–1970s have or had on-site solid waste disposal areas of management and disposal of process residuals/wastes.[3]

In his report, Baldwin Justice opined that the value of the Leased Property that is the subject of this lawsuit is $630,000. The District disputes that the market value of the property is the measure of damages in a breach of damages pursuant Louisiana Civil Code Article 2683(3).

## LAW AND ANALYSIS

Lonza maintains that the District cannot prove that the SWL is not "normal wear and tear" for an aluminum manufacturing facility. Alternatively, Lonza seeks to limit the District's damages to the value of the property–$630,000.

Lonza relies on the District's experts, Jason Sills and Charles Norman, who testified that the District knew it was leasing the land to an aluminum manufacturing entity for the purpose of building and operating an aluminum manufacturing facility. Lonza argues that

---

[2] Plaintiff's exhibit B, Norman deposition, p. 90; Plaintiff's exhibit 3, Declaration of Ginny Davis.
[3] Plaintiff's exhibit A, Pisani deposition.

because it knew that the leased property would be used for an aluminum manufacturing facility, and that it was common for these facilities to have solid waste landfills on-site, the SWL is normal wear and tear under Article 2683(3).

The District denies that it consented to the SWL,[4] and maintains that the measure of damages is to be decided by a jury. The District further denies that it impliedly consented. The District notes that Reynolds' expert, Mr. Pisani, admitted that his "expertise is more in what was ordinary and customary in closing" a solid waste landfill, not whether or not it was customary for aluminum manufacturing facilities to operate unpermitted landfills onsite.[5]

The District submits its expert, Charles Norman, who testified "that a solid waste landfill is not a normal component of an aluminum production facility."[6] The Court agrees with the District that what constitutes "normal wear and tear" precludes summary judgment in Lonza's favor.

Next, Lonza argues that any damages award must be limited to the market value of the subject property. Lonza relies on *Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Co.*, 618 So.2d 874, 876 (La. 5/24/93). The District argues that *Roman Catholic*, which involved tortious damage to immoveable property, is inapplicable here. The Louisiana Supreme Court held that "damages to immovable property under a breach of contract claim should not be governed by the rule enunciated in [Roman Catholic] Church." *Corbello v. Iowa Prod.*, 850 So.2d 686, 695 (La. 2/25/03), *as*

---

[4] Plaintiff's exhibit A.
[5] Plaintiff's exhibit B.
[6] Plaintiff's exhibit C, Norman Depo. p. 91, 163.

*clarified on reh'g* (6/20/03). *Corbello* expressly "decline[d] to set forth a rule of law … that in cases of breach of a contractual obligation or restoration in a lease, the damage award to plaintiffs must be tethered to the market value of the property. *Id.*

Lonza argues that *Corbello* is inapplicable because the mineral lease at issue contained an express provision requiring that the lessee would reasonably restore the premises as nearly as possible to their former condition.

The Court agrees with the District that the any damages award will be determined by a jury.

## CONCLUSION

For the reasons set forth above, the Lonza Group LTD and Lonza America Inc.'s Motion for Summary Judgment Re Normal Wear and Tear and Restoration" (Doc. 335) will be denied.

**THUS DONE AND SIGNED** in Chambers on this 9th day of March, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**