UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO. 2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Reynolds Metals Company, LLC's and Howmet Aerospace Inc.'s Motion for Summary Judgment on Liability Pursuant to Article 2683" (Doc. 336). Specifically, Defendant Reynolds Metals Company, LLC ("Reynolds") and Howmet aerospace Inc. ("Howmet") for a ruling that they have no liability to Plaintiff Lake Charles Harbor & terminal District's (the "District") claims.

## FACTUAL STATEMENT

For a complete recitation of the undisputed facts, see the Memorandum Ruling issued October 1, 2019.[1] For purposes of this Motion, the relevant facts are as follows:

Defendants Lonza Group Ltd. And Lonza America Inc. (collectively referred to as "Lonza") are successors to Consolidated Aluminum corporation ("Consolidated"), which itself is a successor to Gulf Coast Aluminum corporation ("Gulf Coast"). On September 1, 1967, the District entered into a lease with Gulf Coast (the "1967 Lease"), pursuant to which the District leased a portion of the property at issue in this lawsuit (the "Property")

---
[1] Doc. 144.

to Gulf Coast for constructing and operating the Lake Charles Carbon Facility (the "Facility").

On July 1, 1970, the District leased an additional 9.37-acre tract to Gulf Coast[2] which was reduced to 1.60 acres in 1976.[3] The 1967, 1970, and 1983 Leases were surface leases. Between 1967 and 1983. Gulf Coast and/or Consolidated created and operated a solid waste landfill on the Property. In 1983, Reynolds purchased the Facility from Consolidated. In connection with the purchase of the Facility, on November 30, 1983, Reynolds, Consolidated, and the District entered into the 1983 Agreement of Assignment, Assumption, Release and Assumption (the "Reynolds Assignment"). The Reynolds Assignments expressly stated the following:

> The District hereby consents to the assignment and assumption described in paragraph 1 hereof and hereby completely and unconditionally releases Consolidated from any and all liabilities and obligations to the District under the District Lease (except for liabilities and obligations arising prior to the dated hereof which remain undischarged).

Concurrent with the Reynolds Assignment, on November 30, 1983, the District and Reynolds entered into an Amended and Restated Underlying Lease Agreement ("1983 Lease"). The SWL was closed prior to Reynold's lease of the property; Reynolds was unaware of the closure and was not a party to the LDEQ or LDNR proceeding.[4] Reynolds filed a notice of closure of the SWL on 9/19/84, notifying LDNR that the site was closed on 8/1/84 after Reynolds became lessee.[5]

---

[2] Doc. 254-6.
[3] Doc. 254-7.
[4] Doc. 254-12
[5] Doc. 341-8.

Effective March 31, 2016, Reynolds released its lease of a portion of the Property, including that area where the SWL is located.[6]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

---

[6] Doc. 254-13.

133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

The District maintains that under Louisiana Civil Code Article 2683(3), Reynolds, Alcoa, and Lonza are liable *in solido* to restore the former leased premises to its original condition less normal wear and tear at the inception of the 1967 Underlying Lease Agreement. Reynolds maintains that it has no liability for the District's claim, because (1) the Mineral Code does not apply to impose solidary liability, (2) Reynolds had no fault for the SWL, (3) the District released Reynolds from liability for the SWL, and (4) Reynolds complied with any obligation under Louisiana Civil Code Article 2683.

*The Mineral Code*

The Court has determined in another Memorandum Ruling addressing the Motion for Partial Summary Judgment on the Issues of Solidary Liability and Restoration Obligations Pursuant to Civil Code Article 2683 filed by the District that the Mineral Code does not apply to the claims in this lawsuit because the Lease involved are surface leases, not mineral lease. The Court continues to find that the Mineral Code does not apply here.

*Reynolds had no fault*

Reynolds argues that because the SWL was closed when the Property to delivered into its possession, it has no fault for the damages claimed by the District. Reynolds

maintains that there is no solidary liability because the District intended that the obligation for the SWL is divisible because the District released Reynolds from that obligation. The obligation to restore property, by its nature, is indivisible and therefore subject to the rules of solidarity under the Civil Code. *Sweet Lake Land & Oil Co. LLC v. Exxon Mobil corp.*, 2011 WL 5825791, at *5 (W.D. La. Nov. 16, 2011). It is the nature of an obligation, not its source that dictates whether an obligation is indivisible. *See Glorai's Ranch, L.L.C. v. Tauren Expl., Inc.*, 252 So.3d 4331, 443 (La. 6/27/18). Under Article 2683(3), that obligation did not become viable until the termination of the lease in 2016.

*The District released Reynolds from liability*

The District argues that there was no express release by the District in favor of Reynolds. The District relies on the Reynolds Assignment, which states that the District consented to Reynolds assuming "all of Consolidated's liabilities and obligations" except those "arising prior" to the Reynolds Assignment, which Consolidated retained. The obligation under Article 2683(3) did not arise and could not arise until 2016 when the lease terminated.

*Reynolds complied with its obligations under Article 2683*

Reynolds asserts that Article 2683 requires only that the Property be returned to the District in the condition in which it was delivered, minus wear and tear, and that when the Property was delivered to Reynolds on November 30, 1983, the SWL had already been constructed and closed. Reynolds further asserts that the District admits that there is no evidence that the condition of the SWL has deteriorated in any capacity since the date of delivery. Thus, Reynolds argues that it cannot be liable because it complied with Article

2683 by returning the Property to the District with the SWL capped and closed, in the same condition it was delivered to Reynolds on November 30, 1983.

As noted herein, the Reynolds Assignment plainly states that Reynolds assumed "all of Consolidated's liabilities and obligations" except those "arising prior" to the Reynolds Assignment. The obligation to restore under Article 2683 did not arise until 2016 when the lease terminated.

## **CONCLUSION**

For the reasons set forth herein, Reynolds Metals Company, LLC's and Howmet Aerospace Inc.'s Motion for Summary Judgment on Liability Pursuant to Article 2683 will be denied.

**THUS DONE AND SIGNED** in Chambers on this 9th day of March, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**