UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

LAKE CHARLES HARBOR &              CASE NO.  2:17-CV-01114
TERMINAL DISTRICT

VERSUS                             JUDGE JAMES D. CAIN, JR.

REYNOLDS METAL CO                  MAGISTRATE JUDGE KAY

<u>MEMORANDUM RULING</u>

Before the Court is a "Reynolds Metals Company, LLC's and Howmet Aerospace Inc.'s Omnibus Motion for Summary Judgment on Misuse, Prescription and Damages" (Doc. 337) wherein Defendant, Reynolds Metals Company, LLC ("Reynolds") and Howmet Aerospace Inc. ("Howmet"), move for summary judgment as to Plaintiff, Lake Charles Harbor & Terminal District's (the "District") claims.  Reynolds Metals Company, LLC ("Reynolds")  and Howmet Aerospace Inc., f/k/a Arconic Inc., f/d/a Alcoa Inc. ("Howmet") request a ruling that (1) Reynolds and Howmet are not responsible for misuse of the subject property, (2) the District's claims are prescribed, (3) the SWL does not constitute "misuse" under Louisiana law, and (4) any damage award must be limited to the loss in value of the subject property.

<u>FACTUAL STATEMENT</u>

For a complete recitation of the undisputed facts, see the Memorandum Ruling issued October 1, 2019.[1] For purposes of this Motion, the relevant facts are as follows:

---

[1] Doc. 144.

Defendants Lonza Group Ltd. And Lonza America Inc. (collectively referred to as "Lonza") are successors to Consolidated Aluminum corporation ("Consolidated"), which itself is a successor to Gulf Coast Aluminum Corporation ("Gulf Coast"). On September 1, 1967, the District entered into a lease with Gulf Coast (the "1967 Lease"), pursuant to which the District leased a portion of the property at issue in this lawsuit (the "Property") to Gulf Coast for constructing and operating the Lake Charles Carbon Facility (the "Facility").

On July 1, 1970, the District leased an additional 9.37-acre tract to Gulf Coast[2] which was reduced to 1.60 acres in 1976.[3] The 1967, 1970, and 1983 Leases were surface leases. Between 1967 and 1983. Gulf Coast and/or Consolidated created and operated a solid waste landfill on the Property. In 1983, Reynolds purchased the Facility from Consolidated. In connection with the purchase of the Facility, on November 30, 1983, Reynolds, Consolidated, and the District entered into the 1983 Agreement of Assignment, Assumption, Release and Assumption (the "Reynolds Assignment"). The Reynolds Assignments expressly stated the following:

> The District hereby consents to the assignment and assumption described in paragraph 1 hereof and hereby completely and unconditionally releases Consolidated from any and all liabilities and obligations to the District under the District Lease (except for liabilities and obligations arising prior to the dated hereof which remain undischarged).

---

[2] Doc. 254-6.
[3] Doc. 254-7.

Concurrent with the Reynolds Assignment, on November 30, 1983, the District and Reynolds entered into an Amended and Restated Underlying Lease Agreement ("1983 Lease"). The SWL was closed prior to Reynold's lease of the property; Reynolds was unaware of the closure and was not a party to the LDEQ or LDNR proceeding.[4] Reynolds filed a notice of closure of the SWL on 9/19/84, notifying LDNR that the site was closed on 8/1/84 after Reynolds became lessee.[5]

Effective March 31, 2016, Reynolds released its lease of a portion of the Property, including that area where the SWL is located.[6] Nothing in the 1967, 1970, 1976, or 1983 Leases prohibited the creation or use of the SWL. The 1967 Lease expressly permits lessees the right "to install facilities and equipment for aluminum manufacturing operations."[7]

On June 1, 2005, counsel for Reynolds authored a letter to Michael Dees, which states the following:

> []On December 23, 2004, your office [the "LDEQ"] issued a Demand Letter to Consolidated Aluminum Company to take appropriate remedial actions with regard to a Solid Waste Dump in Lake Charles that Consolidated used from the 1960s to the early 1980s after which it closed the dump under the Order from the LA Department of Natural Resources.  The dump is located on property now leased by Reynolds Metals Company. Reynolds, however, never used the dump and responsibility for the dump was retained by Consolidated.[8]

---

[4] Doc. 254-12
[5] Doc. 341-8.
[6] Doc. 254-13.
[7] Exhibit C, Norman Depo. pp. 91, 163; Exhibit D, p. 6.
[8] Doc. 323-12.

The District has claimed that restoration of the property on which the SWL is located will cost from $124 million $235 million.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Reynolds asserts that it did not create nor use the SWL, and therefore cannot be at fault for the alleged misuse under Louisiana Civil Code Article 2686. The District objects to Reynolds' interpretation of the Complaint--that the District is claiming damages for misuse of the property.  The District asserts that its only claim is pursuant to Louisiana Civil Code Article 2683(3) for restoration of the property at the termination of the lease.[9] The District notes that there are  different avenues a lessor can take against a lessee: (1) a claim during the lease either under Article 2686 for misuse, injunctive relief, dissolution of the lease, and damages, (2) a claim under Louisiana Civil Code Article 2683(2) for failure "to use the thing as a prudent administrator and in accordance with the purpose for which it was leased,"  or (3) a claim at the end of the lease under Article 2683(3) for failure "to return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear". *Id.*

The District maintains that it brings this instant claim under Article 2683(3), not for misuse under Article 2683(2). The Court is not persuaded by Reynolds' suggestion that the

---

[9] See the District's Second Amended, Supplemental, and Restated Complaint and Jury Demand, Doc. 203, Count I, ¶ ¶ 51–59.

instant lawsuit is based on Article 2683(2).  Accordingly, to the extent that Reynolds' moves to dismiss the lawsuit based on its misunderstanding of the District's claim in this lawsuit, the motion will be denied.

Reynolds argues that a solid waste landfill was customary for an aluminum manufacturing operation, and that the 1967 Lease authorized construction of facilities for aluminum manufacturing operations at the time, and therefore the lessees have no obligation to remove it. In other words, the District expressly contemplated the construction and use of the SWL, thus the lessees were not obligated for damages from the SWL and/or to remove the SWL.

In addition, Reynolds argues that Article VIII, § 2 provides that Reynolds has no obligation to restore or remove the SWL.  The Article in the 1983 refers to buildings, machinery and equipment and other improvements placed on the property.  The Court is not persuaded that a solid waste landfill is an improvement, and finds that this specific Article in the 1983 Lease is not applicable.

Next, Reynolds argues that the District's damages are limited to the value of the property.  The Court has addressed this issue in the Memorandum Ruling pursuant to the Motion for Partial Summary Judgment filed by Lonza Group Ltd and Lonza America Inc. (Doc.335) and finds no merit to this argument for the reasons set forth on the Memorandum Ruling specifically addressing this issue.

## <u>CONCLUSION</u>

For the reasons set forth above, the Reynolds Metals Company, LLC's and Howmet Aerospace Inc.'s Omnibus Motion for Summary Judgment on Misuse, Prescription and Damages (Doc. 337) will be denied.

**THUS DONE AND SIGNED** in Chambers on this 9th day of March, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**