UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO. 2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the Court is a "Motion *in Limine* to Exclude and/or Limit the Testimony of Michael Pisani" (Doc. 354) wherein Plaintiff, Lake Charles Harbor & Terminal District (the "District") move to exclude and/or limit the testimony of Defendants' expert witness Michael Pisani. The District argues that Mr. Pisani's testimony must be limited because he was (1) not asked to design a remediation plan, (2) not asked to opine on how the property should be remediated, and (3) he was not qualified to determine what would satisfy the legal standard of normal wear and tear in this case.

## INTRODUCTION

The District has the burden of proof for its claims of restoration under Louisiana Civil Code Article 2683. Defendants, Reynolds Metals Company, LLC and Howmet Aerospace Inc. retained Mr. Pisani to address the extent and nature of the hazardous waste and to critique the District's experts. Defendants maintain that Mr. Pisani is highly qualified and has been involved in the closure, treatment, restoration, remediation, and/or removal of hundreds of solid waste landfills and/or disposal pits. Defendants argue that Mr. Pisani's opinion regarding the option and ability to treat the hazardous SWL as a

special, non-hazardous waste in removal and disposal is relevant, reliable, and admissible under the Federal Rules of Evidence.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

- (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
- (b) The testimony is based on sufficient facts or data;
- (c) The testimony is the product of reliable principles and methods; and
- (d) The expert has reliably applied the principles and methods to the facts of the case.

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), provides the analytical framework to determine whether expert testimony (either scientific or nonscientific) is admissible under Rule 702. The *Daubert* framework requires trial courts to make a preliminary assessment of whether the expert is qualified, and whether the anticipated testimony is both reliable and relevant. *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999).

Under *Daubert*, courts determine the reliability of expert testimony by assessing whether the reasoning and/or methodology underlying the testimony is scientifically valid, and employ a number of non-exclusive factors in the reliability analysis, including: (1)

whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-95; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007), *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577 (5th Cir. 2004); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999).

A court's reliability inquiry must remain flexible, however, the factors enumerated in *Daubert* may or may not be pertinent in assessing reliability, depending upon the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho*, (*supra*). Courts have discretion to consider other factors they deem relevant and have considerable leeway in determining how to test an expert's reliability. *Guy v. Crown Equipment Corp.*, 394 F.3d 320 (5th Cir. 2004); *Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. Appx. 377 (5th Cir. 2006). Within this framework, however, *Daubert* cautions that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Daubert*, 509 U.S. at 596.

## LAW AND ANALYSIS

The District argues that Mr. Pisani's testimony should be excluded because (1) he testified that he was not asked to design a remediation plan, (2) he was not asked to opine on how the property should be remediated, and (3) he was not qualified to determine what would satisfy the legal standard of normal wear and tear in this case. Defendants maintain that Mr. Pisani's opinions addressing the extent and nature of the hazardous waste and

critiquing and addressing Plaintiff's experts on the same issues are essential to the critical issues in this case, which are highly relevant.

Defendants maintain that Mr. Pisani is highly qualified to offer his opinions regarding the SWL, as he has been personally involved in the closure, treatment, restoration, remediation, and/or removal of hundreds of solid waste landfills and/or disposal pits, and his life-long professional experiences, expertise, and methods have been accepted by federal and state courts, regulators, and private landowners. Additionally, Defendants maintain that Mr. Pisani's opinion regarding the option and ability to treat the alleged hazardous SWL as a special, non-hazardous waste in removal and disposal is relevant, reliable, and admissible under the Federal Rules of Evidence.

Concerning his qualifications, Mr. Pisani is a Professional Engineer licensed to practice Environmental Engineering in Louisiana. He is a Louisiana licensed commercial contractor with a specialty classification of Hazardous Waste Treatment or Removal.[1] He holds multiple degrees in engineering and has worked as an environmental engineer for more than 40 years.[2] Mr. Pisani has investigated, designed, managed, and/or consulted on projects addressing environmental engineering concerns, including solid and hazardous waste management, impoundment and landfill closures, groundwater investigations, industrial wastewater treatment, sediment dredging and dewatering, sediment capping, remedial investigations and feasibility studies, remedial design and construction oversight,

---

[1] Defendants' exhibit 1, Michael Pisani Curriculum Vitae, p. 1.
[2] *Id.*

regulatory permitting and compliance.[3] Mr. Pisani has been admitted as an environmental engineering expert in more than 18 cases in both state and federal courts.[4]

Mr. Pisani has managed hundreds of projects involving solid waste landfills, disposal pits, and hazardous waste across the country, and he has closed solid waste landfills which were located on property that the operator of the landfill did not own in conjunction with and with review and approval by state and federal environmental agencies.[5] Mr. Pisani has also developed specific expertise regarding the classification and disposal of hazardous waste and outlined in detail the analysis required to make such determination and to dispose of such materials.[6]

Defendants maintain that Mr. Pisani has experience and expertise that is specifically relevant to the Leased Property that is the subject of this lawsuit and the remediation plan proposed by the District. Mr. Pisani (1) visited the property on which the SWL is located more than three dozen times, (2) performed solid waste remediation just to the east of the Leased Property,[7] (3) conducted the remediation with Waste Management,[8] (4) conducted the remediation with Waster Management (the landfill proffered for closure of the SWL), and (5) is familiar with Waste Management's landfill standards and protocols, as well as the analysis to determine whether the waste to be disposed was properly classified as hazardous or non-hazardous.[9]

---

[3] *Id.*
[4] Defendants' exhibit 2, Michael Pisani Declaration, ¶ 5.
[5] Defendants' exhibit 3, Pisani Depo., pp. 15:22-16:23; 17:2-13.
[6] *Id.* pp. 26:24–31:8.
[7] Defendants' exhibit 2, Pisani Decl, ¶¶ 9–11.
[8] *Id.*
[9] Defendants' exhibit 3, Pisani Depo. pp. 24:19–29:3.

The District complains that Mr. Pisani did not design a completely separate and/or competing remediation plan and that his opinions were not based on research or any published per-reviewed documents, but on his experience.[10] The District complains that Mr. Pisani admitted in his deposition that he "[i]s not qualified to determine what would satisfy the legal standard of normal wear and tear in this case."[11]

The Court finds that based on his experience, expertise, and education, Mr. Pisani is qualified under the *Daubert* factors to provide expert opinions as to the extent and nature of the waste in the SWL and restoration of the SWL. The Court further finds that Mr. Pisani's testimony is relevant to the issues of restoration of the SWL.

## **CONCLUSION**

Because the Court finds that Mr. Pisani is qualified to testify and give opinions as to the extent and nature of the waste in the SWL and such testimony is relevant and reliable,

**IT IS ORDERED** that the Motion *in Limine* to Exclude and/or Limit the Testimony of Michael Pisani (Doc. 354) is hereby **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 21st day of March, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[10] Doc. 354-1, p. 3.
[11] *Id.* p. 1.