UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO. 2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the Court is a "Motion *in Limine* to Exclude or Limit Testimony of Ginny Gray Davis, PG" (Doc. 357) filed by Plaintiff, Lake Charles Harbor and Terminal district (the "District"). The District maintains that Ms. Davis' opinions will not assist the trier of fact, her opinions and conclusions are not based on sufficient facts or data, and/or she does not apply the principles and methods to the facts of the case.

## INTRODUCTION

The District brings a claim against Defendants pursuant to Louisiana Civil Code Article 2683 for restoration of the solid waste landfill (the "SWL"), minus wear and tear. The District alleges that at the end of the lease of property on which the SWL was located, Defendants were solidarily obligated to restore the leased property, namely, the SWL to its prior condition as of the inception of the 1967 Lease Agreement. Defendants have hired Ms. Davis as an expert who opines that the SWL is a normal component of an aluminum production facility, and thus the existence of the SWL, as is, is normal wear and tear.

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), provides the analytical framework to determine whether expert testimony (either scientific or nonscientific) is admissible under Rule 702. The *Daubert* framework requires trial courts to make a preliminary assessment of whether the expert is qualified, and whether the anticipated testimony is both reliable and relevant. *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999).

Under *Daubert*, courts determine the reliability of expert testimony by assessing whether the reasoning and/or methodology underlying the testimony is scientifically valid, and employ a number of non-exclusive factors in the reliability analysis, including: (1) whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and

maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-95; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007), *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577 (5th Cir. 2004); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999).

A court's reliability inquiry must remain flexible, however, the factors enumerated in *Daubert* may or may not be pertinent in assessing reliability, depending upon the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho*, (*supra)*. Courts have discretion to consider other factors they deem relevant and have considerable leeway in determining how to test an expert's reliability. *Guy v. Crown Equipment Corp.*, 394 F.3d 320 (5th Cir. 2004); *Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. Appx. 377 (5th Cir. 2006). Within this framework, however, *Daubert* cautions that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Daubert*, 509 U.S. at 596.

## LAW AND ANALYSIS

The District faults Mr. Davis's expert report because it focuses only on facts "during the lease," and opines that the issue in this case is "whether or not a solid waste landfill would be considered a normal feature for a carbon plant and aluminum reduction facility during the time frame when this one was leased and in use."[1] In other words, the District argues that the issue is Defendants' obligation at the end of the lease, and that Ms. Davis'

---

[1] Defendant's exhibit A, Expert Report of Ginny Gray Davis, p. 2.

opinion regarding what is customary for aluminum plants during the lease is not relevant. The District argues that Ms. Davis's report is irrelevant and will cause jury confusion.

The District asserts that Ms. Davis is not an expert in compliance with lease interpretations or Louisiana lease obligations, or what would be considered ordinary wear and tear under Louisiana law. The District notes that Ms. Davis report does not discuss what constitutes "ordinary wear and tear."

The District specifically objects to Ms. Davis's report because it is not based on sufficient facts or data, noting that its own expert, Charles Norman, opines that the extent of the pollution and contamination on the District property is not an example of normal wear and tear.[2] In addition, the District argues that Davis's report and testimony are not the product of reliable principles and methods and she does not purport to be an expert as to how the hazardous waste landfills are constructed, designed, or utilized. Specifically, the District asserts that Ms. Davis' experience with historical onsite waste disposal and/or landfills does not involve the restoration or cleanup of sites pursuant to lease obligations following the termination of a lease.[3]

In response, Defendants argue that the District knew that the leased premise was to be used and was used for an aluminum production facility. Defendants rely on Ms. Davis's report which lists ten different aluminum production facilities that had on-site waste landfills during the relevant time period. Ma. Davis concludes that a solid waste landfill is

---

[2] Defendants' exhibit B, Norman Report, p. 6.
[3] Defendant's exhibit A, Expert Report of Ginny Gray Davis, p. 3.

a normal component of an aluminum production facility, and thus the SWL is normal wear and tear.

The Court does not consider that because a solid waste landfill was a "normal component" of an aluminum production facility, this somehow relieves a party of its obligations to restore that property to its prior condition, *i.e. pre-lease.* Furthermore, the fact that ten other aluminum production facilities also had solid waste landfills does not equate to normal wear and tear. The Court finds that Ms. Davis' report and opinions, would without a doubt confuse a jury, and more significantly, are irrelevant.

## CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the Motion *in Limine* to Exclude or Limit Testimony of Ginny Gray Davis, PG (Doc. 357) is hereby **GRANTED.**

**THUS DONE AND SIGNED** in Chambers this 21st day of March, 2022.

                          **JAMES D. CAIN, JR.**
                      **UNITED STATES DISTRICT JUDGE**