UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO. 2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the Court is "Lonza Group Ltd and Lonza America Inc.'s Omnibus *Daubert* Motion in Limine" (Doc. 359) wherein the movers (collectively referred to as "Lonza") seek to exclude the testimony, opinions, and report of Plaintiff's expert David Batker, and partially exclude the testimony, opinions, and reports of Plaintiff's experts Charles Norman, Earth Management Corp., ("EMC") and ICON experts, Jason Sills and Greg Miller. Reynolds Metals Company, LLC and Howmet Aerospace Inc., f/k/a/ Arconic Inc., f/k/a Alcoa Inc. joined in the sections of Lonza's motion seeking to partially exclude the testimony of Earth Management Corp. and ICON experts Jason Sills and Greg Miller.[1]

Also before the Court is a "Motion *In Limine* to Strike Expert Testimony of David Batker" (Doc. 361) filed by Defendants, Reynolds Metals Company, LLC ("Reynolds") and Howmet Aerospace Inc., Arconic Inc., f/k/a Alcoa Inc. who move to strike Mr. Batker's opinions and testimony because his opinions are not relevant to the District's

---

[1] Doc. 362.

claim for restoration of the solid waste landfill, and Mr. Batker's opinions are unqualified and unreliable.

## INTRODUCTION

The District brings a claim against Defendants pursuant to Louisiana Civil Code Article 2683 for restoration of the solid waste landfill (the "SWL"), minus wear and tear. The District alleges that at the end of the lease of property on which the SWL was located, Defendants were solidarily obligated to restore the leased property to its prior condition as of the inception of the 1967 Lease Agreement.

The District has offered David Batker as an expert for an economic valuation of alleged environmental and community impacts associated with the SWL. The District has hired ICON, and representatives, Jason Sills and Greg Miller, to provide opinions and testimony as to remediation of the SWL. ICON subcontracted with Earth Management Corp. ("EMC") to perform a geographical survey on the SWL and give an estimated volume of the SWL.

On November 11, 2021, the District disclosed expert reports from Charles Norman, (Engineering Expert),[2] Greg Miller and Jason Sills (Restoration Experts),[3] and David Batker (non-Restoration Damages Expert).[4] Mr. Batker testified that he would opine on non-restoration damages including non-restoration damages for historical damages to the District, contingent future damages to the District, and historical and contingent future

---

[2] Defendant's exhibit 1, Charles Norman Report.
[3] Defendant's exhibit 2, ICON Report.
[4] Defendant's exhibit 3, Batker Report.

damages to non-parties ("community damages").[5] The community damages include private businesses, individuals, and Calcasieu Parish.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

  (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

  (b) The testimony is based on sufficient facts or data;

  (c) The testimony is the product of reliable principles and methods; and

  (d) The expert has reliably applied the principles and methods to the facts of the case.

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), provides the analytical framework to determine whether expert testimony (either scientific or nonscientific) is admissible under Rule 702. The *Daubert* framework requires trial courts to make a preliminary assessment of whether the expert is qualified, and whether the anticipated testimony is both reliable and relevant. *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999).

Under *Daubert*, courts determine the reliability of expert testimony by assessing whether the reasoning and/or methodology underlying the testimony is scientifically valid,

---

[5] Defendants' exhibit 4, David Batker Depo., p. 88:21-25.

and employ a number of non-exclusive factors in the reliability analysis, including: (1) whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-95; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007), *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577 (5th Cir. 2004); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999).

A court's reliability inquiry must remain flexible, however, the factors enumerated in *Daubert* may or may not be pertinent in assessing reliability, depending upon the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho*, (*supra)*. Courts have discretion to consider other factors they deem relevant and have considerable leeway in determining how to test an expert's reliability. *Guy v. Crown Equipment Corp.*, 394 F.3d 320 (5th Cir. 2004); *Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. Appx. 377 (5th Cir. 2006). Within this framework, however, *Daubert* cautions that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Daubert*, 509 U.S. at 596.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Federal Rule of Evidence 402.  Even if evidence might be relevant, the Court should exclude such evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Federal Rule of Evidence 403.

"[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "The proponent of expert testimony bears the burden of establishing the reliability of the expert's testimony." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).

## LAW AND ANALYSIS

Defendants maintain that Mr. Batker's report, opinions, and testimony should be excluded because the type of damages of which Mr. Batker has reported and opined, are not recoverable by the District. Defendants argue that the District's sole claim is for restoration of the SWL to its prior condition, less wear and tear.

Defendants remind the Court that the District previously excluded from bringing non-restoration claims for damages associated with the SWL.[6]

*David Batker and his qualifications*

Mr. Batker is an economist and geologist with over 30 years of experience working on parish economics and the goods and services provided by the lands and wetlands in Louisiana. Mr. Batker rendered an original report assessing the damages and economic impacts the District has suffered and will suffer due to the SWL on the subject property. Mr. Batker assessed the damages across different periods of time, from the initial dumping and creation of the SWL through 2021; he estimated damages into the future if the land is not fully remediated and restored to the original condition by the Defendants.[7] Mr. Batker intends to explain to the jury that the current market price for the property is of less

---

[6] Memorandum Ruling, Doc. 202, issued January 21, 2021.
[7] Defendant's exhibit B, Batker Report.

importance in this case than the remediation and restoration of the land and the economic impacts provided by putting the land back in commerce.

Defendants argue that Mr. Batker's report and testimony are not relevant, and his methodology is unreliable and will not assist the fact-finder. Mr. Batker noted in his report that there are four elements of damages the District is entitled to recover: (1) costs of remediation; (2) District income foregone; (3) improper profits; and (4) asset value reduction.[8] Defendants seek to exclude Ms. Batker's opinions as to all four elements of damages.

As to his qualifications, the Court has carefully reviewed Mr. Batker's Curriculum Vitae and finds no justification for disqualify him as to the areas in which he has been hired by the District to opine and testify.

Defendants complain that Mr. Batker's testimony, opinions, and report are not based on any expertise he possesses or methodology he used. Specifically, Defendant object to Mr. Batker adopting the opinions of ICON and representative Mr. Sills. In other words, Mr. Batker adopts the opinions of others as his own instead of basing his opinions on any expertise he possesses.

The District remarks that Defendants have failed to provide any supportive authority. Furthermore, an expert is free to rely on the opinion of another expert in forming an opinion. *See Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 165-166 (E.D. La. 9/14/2011); *see also National Union Fire Ins. Co. of Pittsburgh, P. A. v. Smith*

---

[8] Defendant's exhibit A, pp. 228:21–230:6.

*Tank & Steel, Inc.*, 2014 WL 5794952, at *4 (M.D. La. 11/06/2014). The Court agrees with the District that it is not inappropriate for one expert to rely on the opinion of experts in other fields as background material for arriving at an opinion. *Id.*

Next, Defendants asserts that Mr. Batker admits that the District has not incurred, and is not seeking "improper benefits." Defendants then argue that improper profits are speculative and should be excluded from trial.

The District argues that Mr. Batker's opinions are relevant and will assist the trier of fact, especially regarding the Defendants attempt to limit the cost of restoration and failure to mitigate. In other words, the District intends to use Mr. Batker's opinions regarding the effect and/or losses that will be incurred, should the District's damages be limited to the fair market value of any diminution in value of the property, as opposed to the cost of restoring the property to its prior condition, and/or the failure to return the property to its original condition.[9]

The District also argues that Mr. Batker's opinions are relevant to challenge Defendants' claims that "Plaintiff's total recovery in this action for any alleged remedial costs is barred and/or limited to only such remedial costs as may or were approved by the appropriate state regulatory agency."[10] The District maintains that Mr. Batker's testimony will demonstrate that restoration of the District's property would also have value to the public at large, because the District is "a driving force for the local economy, a public

---

[9] Plaintiff's exhibit D, Batker Depo. pp. 127–128.
[10] Plaintiff's exhibit A, Reynolds Metals Company's Answer and Affirmative Defenses.

Page **7** of **12**

agency facilitating imports and exports, industrial production, jobs, income, tax revenue, and other public goods and services locally, regionally, and nationally."[11]

Defendants argue that Mr. Batker's testimony and report will result in wasted time and the presentation of cumulative evidence, and that the risk of wasted time and cumulative evidence outweighs any probative value.

The Court disagrees with Defendants and finds that Mr. Batker's testimony and opinions concerning the SWL are highly relevant and admissible. The Defendant's complaints as to Mr. Batker's opinions and testimony go to the weight of the testimony as opposed to its admissibility.

*Earth Management Corp. and experts Jason Sill sand Greg Miller*

Defendants move to exclude any mention of EMC's testimony regarding the estimated volume of the solid waste landfill, including testimony from ICON and its representatives Jason Sills and Greg Miller.

ICON subcontracted with EMC to perform a geographical survey on the SWL. Defendants move to exclude EMC's testimony, opinions and report because the District has not made an EMC witness available for deposition. Defendants complain that ICON's representative, Jason Sills, concluded and testified at his deposition that ICON's volume and metric calculation of the SWL material to be removed was more correct from a scientific standpoint than the EMC estimate.

---

[11] Plaintiff's exhibit B, Batker Report.

Defendants argue that the EMC data relied upon by Mr. Batker is hearsay because the author of the EMC report has not been offered as an expert and his analysis and methodology have not been vetted, nor has he been offered for deposition. In addition, Defendants argue that because ICON's and EMC's conclusions as to the volume and metric calculation differ, EMC's report is unreliable.

The District notes the following concerning Mr. Miller and Mr. Sills qualifications. Mr. Miller has been a licensed professional geologist since 1983 and has over 25 years of professional experience in all aspects of the environmental assessment industry. Mr. Miller has been repeatedly qualified in state and federal courts as an expert in the fields of geology, hydrogeology, site assessment, regulatory compliance, implementation of the Louisiana RECAP protocol, and remediation.

Mr. Sills has been a project manager facilitating environmental risk evaluation and remediation since 2000 and has over 19 years of experience implementing environmental engineering and remediation projects in six states, including Louisiana. He has conducted a wide range of field and managerial duties, including installation of soil borings and monitoring wells, soil and groundwater sampling, integration and analysis of data, interpretation of findings, data reduction, risk evaluation, corrective action design and implementation, and preparation of reports including Phase I and Phase II assessments, Corrective Action Plans, and Louisiana RECAP evaluations. Mr. Sills has provided expert opinions through reports and deposition testimony for over seven years.

The District notes that Mr. Sills used a "combination of [ICON's] test pit, GeoSyntec's data and EMC's data" to determine its estimated volume.[12] The District argues that the jury is entitled to know facts upon which ICON based its conclusions so it can accurately assess the credibility of ICON and the weight to be given to its testimony.

The District argues that Mr. Miller's and Mr. Sills knowledge, skill, experience, training, and education qualify them to provide testimony with regard to the environmental assessment for the property damage at issue in this case and the remediation of the subject property. Furthermore, Mr. Miller and Mr. Sills can provide the jury with information as to how and why ICON arrived at its conclusions, including the information regarding the EMC report. The Court agrees and finds that the jury should be provided the facts and/or data ICON used to reach its conclusions.

*Charles Norman*

Defendants also move to exclude Charles Norman's testimony and opinions regarding legal interpretations of a lease because he is not an attorney.

The District remarks that Mr. Norman has over 45 years of experience in all aspects of petroleum engineering and has worked at various levels for major oil companies, including field petroleum, area drilling and remedial engineer, equipment and facilities engineer, reservoir engineer, environmental engineer, project engineer for major oil company's Research and Development Company, Corporate Manager of Petroleum Engineering, Corporate Manager of Production, and Corporate Divisions Manager. He is

---

[12] Plaintiff's exhibit A, Jason Sills deposition, p. 63:20–23.

a licensed professional engineer in Louisiana, Texas, and Oklahoma. Mr. Norman has been accepted as an expert in one or more of the fields tendered (petroleum engineering, professional engineering, and operations engineering and lease interpretation) in both state and federal courts. Mr. Norman has never been denied qualification.

Mr. Norman has experience in hundreds of leased industrial sites in Louisiana involving damage from past waste management practices. In his deposition, Mr. Norman testified that he has been qualified as an expert in lease interpretation in *State v. Louisiana & Explor. Co.*, Civ. Action No. 18, 162, Division "D" (15th JDC), as well as in petroleum engineering, operations engineering, professional engineering and interpreting leases.[13]

The District asserts that Mr. Norman's testimony will be based on his independent investigation, his knowledge of the facts in this case, and his past lease consulting experience dealing with both landowners and industrial lessees in arm's length negotiations.

The Court finds that Mr. Norman is qualified to opine and testify, but will defer to the trial Mr. Norman's testimony as to any legal conclusions based on how a question is framed and any potential foundation that will be laid.

For the reasons set forth above,

**IT IS ORDERED** that Lonza Group Ltd and Lonza America Inc.'s Omnibus *Daubert* Motion in Limine (Doc. 359) is hereby **DENIED.**

---

[13] Plaintiff's exhibit C, Charles Norman deposition, p. 97.

**IT IS FURTHER ORDERED** that the Motion *In Limine* to Strike Expert Testimony of David Batker (Doc. 361) filed by Defendants, Reynolds Metals Company, LLC ("Reynolds") and Howmet Aerospace Inc., Arconic Inc., f/k/a Alcoa Inc. is hereby **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 21st day of March, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**