UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **CASE NO.  2:17-CV-01114** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the Court is a "Motion *In Limine* to Exclude Testimony and Evidence Regarding Non-Restoration Damages and/or Damages not Relating to the Solid Waste Landfill" (Doc. 360) filed by Defendants Reynolds Metals Company, LLC and Howmet Aerospace Inc., f/k/a Arconic Inc., f/k/a Alcoa Inc.

## INTRODUCTION

The District brings a claim against Defendants pursuant to Louisiana Civil Code Article 2683 for restoration of the solid waste landfill (the "SWL"), minus wear and tear. The District alleges that at the end of the lease of property on which the SWL was located, Defendants were solidarily obligated to restore the leased property, namely, the SWL to its prior condition as of the inception of the 1967 Lease Agreement.

The District informs the Court in its opposition to Defendants' Motion in Limine that it is seeking an award of all damages resulting from the Defendants' failure to return the subject property to its original condition less normal wear and tear in 2016 as required by Article 2683(3).  Specifically, the District maintains that this award of damages includes the cost or remediation/restoration and the value of lost rents.  The District expressly states

that it is not requesting punitive damages nor an award for groundwater contamination or community damages.[1]

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), provides the analytical framework to determine whether expert testimony (either scientific or nonscientific) is admissible under Rule 702. The *Daubert* framework requires trial courts to make a preliminary assessment of whether the expert is qualified, and whether the anticipated testimony is both reliable and relevant. *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999).

Under *Daubert*, courts determine the reliability of expert testimony by assessing whether the reasoning and/or methodology underlying the testimony is scientifically valid,

---

[1] Opposition to Motion in Limne, p. 1., Doc. 381.

and employ a number of non-exclusive factors in the reliability analysis, including: (1) whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-95; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007), *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577 (5th Cir. 2004); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999).

A court's reliability inquiry must remain flexible, however, the factors enumerated in *Daubert* may or may not be pertinent in assessing reliability, depending upon the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho*, (*supra)*. Courts have discretion to consider other factors they deem relevant and have considerable leeway in determining how to test an expert's reliability. *Guy v. Crown Equipment Corp.*, 394 F.3d 320 (5th Cir. 2004); *Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. Appx. 377 (5th Cir. 2006). Within this framework, however, *Daubert* cautions that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Daubert*, 509 U.S. at 596.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Federal Rule of Evidence 402. Even if evidence might be relevant, the Court should exclude such evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Federal Rule of Evidence 403.

"[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "The proponent of expert testimony bears the burden of establishing the reliability of the expert's testimony." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).

## LAW AND ANALYSIS

Defendants maintain that the only damages that the District might seek under Article 2683(3) is for restoration and moves to exclude any evidence of non-restoration damages and/or damages not relating to the SWL, namely lost profits, and damages for groundwater contamination, community damages and/or punitive damages.

The District informs the Court that it is not seeking damages for groundwater contamination, community damages and/or punitive damages. However, it is seeking damages for the value of lost rents for Defendants' failure to return the subject property to its original condition, less wear and tear in 2016.

Defendants argue that the District cites no case, law, commentary or other authority that non-restoration damages , such as lost rents  are available under Article 2683(3). While the Court agrees that the District cannot recover lost rents and will grant Defendants' motion to that extent, the District is entitled to provide evidence to show that "without remediation, the District will receive no income from this property, will be forced to pay for remediation and financing costs, ecosystem goods and services will continue to be lost, risks and damages to community and human capital will continue." But "[w]ith restoration, the Port of Lake Charles can lease the subject property and provide future benefits."[2]

---

[2] Batker Opinion 14, Doc. 260-4, at 00010.

The Court finds that the District can submit evidence to rebut Defendants arguments that the cost of full remediation is prohibitively disproportionate to the value of the property, or to argue that the cost of full restoration is reasonable in the context of the economic consequences of allowing the landfill to remain. According,

**IT IS ORDERED** that the Motion *In Limine* to Exclude Testimony and Evidence Regarding Non-Restoration Damages and/or Damages not Relating to the Solid Waste Landfill is **GRANTED** to the extent that the District will not be permitted to seek damages for lost rents; otherwise, the Motion *In Limine* is **DENIED.** The Court will allow the District to submit evidence to rebut Defendants' arguments that the District's damages should be limited to the fair market value of any diminution in value of the property, as opposed to the cost of restoring the property to its prior condition, and/or the failure to return the property to its original condition.

**THUS DONE AND SIGNED** in Chambers on this 21st day of March, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**