UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LAKE CHARLES HARBOR &** | **:** | **CASE NO. 2:17-CV-01114** |
| **TERMINAL DISTRICT** | | |
| **VERSUS** | **:** | **JUDGE JAMES D. CAIN, JR.** |
| **REYNOLDS METAL CO.** | **:** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Compel Discovery Responses filed by Lake Charles Harbor & Terminal District ("the District").[1] The District seeks to compel responses to certain requests in its second set of requests for production, which it propounded to Lonza Group Ltd. and Lonza America, Inc. (collectively, "Lonza"). Doc. 358. Lonza opposes the motion. Doc. 387. The briefing deadlines have run, and this matter is now ripe for determination. For the reasons that follow, the motion is **GRANTED IN PART.**

**I.**
**BACKGROUND**

This matter concerns immovable property owned by the District, which the District leased to Defendant Reynolds Metal Company ("Reynolds") and its predecessors in interest, starting in 1967 (the "Leased Premises"). The lease agreements allowed the lessee to conduct aluminum manufacturing on the Leased Premises. Doc. 387, pp. 3-4 (quoting Doc. 254, att. 4). The District

---

[1] The Motion to Compel was filed on February 17, 2022, 60 days before trial.

alleges that Gulf Coast installed a solid waste dump on the Leased Premises, into which hazardous and other wastes were placed until its closure in 1984. Doc. 12, pp. 6-7.

Before Reynolds assumed the relevant lease agreements in 1983, the Leased Premises had been leased first by Gulf Coast Aluminum ("Gulf Coast") and then by Consolidated Aluminum Corporation ("Consolidated"). The District alleges that Defendant Lonza is successor in interest to the parent corporation of Gulf Coast and Consolidated, who were lessees of the Leased Premises during the period that the solid waste dump was in operation. Doc. 12, pp. 1-4.

## II.
## THE DISPUTED REQUESTS

Through the motion to compel, the District seeks to compel Lonza to provide answers to discovery requests concerning the handling of solid and hazardous wastes. The motion concerns Requests 6-11 of the District's Second Set of Requests for Production of Documents to Lonza.[2] Doc. 358, att. 2. As summarized by the District, "Requests 6 and 7 seek to discover Lonza's own policies and procedures for handling hazardous and non-hazardous waste;"[3] "Requests 8 and 9 seek to discover Lonza's knowledge about the hazards posed to humans and the environment by the specific wastes that were dumped into the Solid Waste Landfill;"[4] and "Requests 10 and 11 seek to discover Lonza's past experience with environmental cleanups of other sites contaminated with one or more of the Constituents of Concern that were found in the Solid Waste Landfill."[5] The requests read as follows:

> REQUEST FOR PRODUCTION NUMBER 6:
> Please produce all documents relating to Lonza's past and present policies, practices or procedures applicable to the acquisition, use, transportation,

---

[2] Propounded on September 23, 2021.
[3] Doc. 358, att. 2, p. 3.
[4] Id., p. 4.
[5] Id.

      storage,   management,   spillage, leakage or disposal of any Hazardous Materials at its current or former operations in  North America.

REQUEST FOR PRODUCTION NUMBER 7:
Please produce all documents relating to Lonza's past and present environmental or waste management  policies, practices or procedures applicable to its current or former operations in North America.

REQUEST FOR PRODUCTION NUMBER 8:
Please produce all documents relating to the risks posed to humans or ecological receptors by  exposure to any of the Constituents of Concern.

REQUEST FOR PRODUCTION NUMBER 9:
Please produce all documents relating to the environmental fate and transport of any of the Constituents of Concern.

REQUEST FOR PRODUCTION NUMBER 10:
Please produce all documents relating to any environmental assessment, cleanup  or  remediation of soil, sediment, surface water or groundwater undertaken, in whole or in part, by or  on behalf of Lonza in North America, which environmental assessment, cleanup or remediation  involved one or more of the Constituents of Concern.

REQUEST FOR PRODUCTION NUMBER 11:
Please produce all documents relating to any environmental assessment, cleanup  or  remediation of soil, sediment, surface water or groundwater undertaken at any site in North America  currently or formerly owned or operated, in whole or in part, by or on behalf of Lonza, which environmental assessment, cleanup or remediation involved one or more of the Constituents of Concern.

Doc. 358, att. 2, p. 2.

      The District argues that the requested information is "directly related to the central issue of the case—should Lonza be required to remediate the Solid Waste Landfill on the District's property?" Doc. 388, att. 2, p. 2.  In particular, the District argues that this information is relevant to Lonza's arguments that "normal plant operations" involved dumping wastes into the solid waste landfill.  Doc. 388, att. 2, p. 3.

      In opposition, Lonza argues that the requested information is both irrelevant and disproportionate to the needs of this case.  Lonza reframes the central issue in this case as whether

La. Civ. Code art. 2683 requires Reynolds (not Lonza) to pay the cost of removing the Solid Waste Landfill, under that article's requirement that a lessee return a leased thing in the same condition it was delivered to him, except for normal wear and tear. Doc. 387, p. 2. Put differently, Lonza argues that the central question is whether a solid waste landfill constitutes "normal wear and tear" for this type of lease, under La. Civ. Code art. 2683. Doc. 387, p. 3-4.

Lonza notes that the "sole basis for Lonza's presence in this action is this Court's prior rulings that Lonza owes indemnity to Reynolds and Howmet." Doc. 387, p. 2-3 (citing docs. 114, 247). Lonza's suggests that its past policies and procedures are irrelevant to determining the extent of its indemnity obligations to Reynolds and Howmet and irrelevant to the question of Reynold's obligations to the District. Lonza also argues that the requests are disproportionate to the needs of the case "because they are unlimited in time and seek information about properties and/or policies that are not the Solid Waste Landfill, or anything like the Solid Waste Landfill." Doc. 387, p. 4.

After the District filed this Motion to Compel on February 19, 2022, Lonza served supplemental responses on February 28, 2028.[6] Lonza filed its opposition on March 8, 2022. The District did not file a reply. Trial in this matter is set for April 18, 2022.

### III.
### LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery to matters relevant to a claim or defense and proportional to the needs of the case. Relevant information is defined as "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,*

---

[6] In its Opposition memorandum, Lonza notes that the supplemental responses contain the affidavit Philip Blair, a former plant manager of the aluminum facility, who attested to his personal knowledge as to the types of materials that were disposed of into the Solid Waste Landfill and the Cathode Disposal Area, roughly outlining his understanding of disposal policies for those two areas during his time at the Facility (1969-2003). Doc. 387, att. 2 (responses attached as Ex. 6 to Doc. 387).

98 S. Ct. 2380, 2389 (1978); *see also* FED. R. EVID. 401 (defining relevant evidence as making a fact of consequence in determining the action more or less probable). In explicitly defining the scope of discovery in terms of both relevance and proportionality, Rule 26(b) is designed reinforce the obligation of the parties to consider the proportionality factors in making discovery requests. *See* FED. R. CIV. P. 26(b) advisory committee's note to 2015 amendment. The factors a court should consider when determining proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The court may limit discovery when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C). *Hebert v. Lando*, 99 S. Ct. 1635, 1649 (1979). Control of discovery is limited to the trial court's sound discretion. *Van Duzer v. U.S. Bank Nat. Ass'n*, 582 F. App'x 279, 283 (5th Cir. 2014).

## IV.
### APPLICATION

The court disagrees with Lonza's argument that the requested materials are wholly irrelevant to the issues in this case.

### A. Requests 6 & 7 – Waste management, storage, and disposal policies and procedures

Requests 6 and 7 pertain to Lonza's "past and present policies, practices or procedures applicable to the acquisition, use, transportation, storage, management, spillage, leakage or

disposal of any Hazardous Materials at its current or former operations in North America" and "Lonza's past and present environmental or waste management policies, practices or procedures applicable to its current or former operations in North America." Doc. 358, att. 2, p. 2.

As Lonza explains it, the central issue in this case is whether this particular solid waste landfill constitutes "normal wear and tear." Lonza's past policies and practices concerning the disposal of solid waste could be relevant to that question, insofar as they may shed light on what type of disposal practices are "normal" for this character of lease. The District notes that it expects that Lonza's policies for waste handling (responsive to Requests 6 and 7) may refute Lonza's argument that the operation of the solid waste landfill constitutes "normal wear and tear." Doc. 385, att. 2. Accordingly, the Motion to Compel is **GRANTED** as to Requests 6 and 7, with the limitation that the responsive documents should be limited in time to 1967-1984, the approximate period the solid waste landfill was in operation.

### B. Request 8 & 9 – Human and Environmental risks associated with the Constituents of Concern

Requests 8 & 9 pertain to "risks posed to humans or ecological receptors by exposure to any of the Constituents of Concern" and the "environmental fate and transport of any of the Constituents of Concern." Doc. 358, att. 2, p. 2.

In ruling on a motion in limine to exclude certain evidence, the District Judge recently held that, "the District is entitled to provide evidence to show that 'without remediation, the District will receive no income from this property, will be forced to pay for remediation and financing costs, ecosystem goods and services will continue to be lost, risks and damages to community and human capital will continue.' But '[w]ith restoration, the Port of Lake Charles can lease the subject property and provide future benefits.' Doc. 406 (quoting Batker Report, Doc. 360, att. 4, p. 10).

Consistent with this ruling, we now determine that the District is entitled to discover any information relevant to the cost of remediation, loss of "ecosystem goods," and "risks and damages to community and human capital." We agree with Lonza, however, that the scope of the original request is disproportionate to the needs of this case because it is not limited in time or geographic scope. Therefore the Motion to Compel is **GRANTED** with respect to Requests 8 and 9, with the limitation that Lonza is ordered to produce the subset of documents responsive to this request that pertain specifically to the Leased Premises and its immediate environment.

### C. Requests 10 & 11 – Environmental assessments and remediation

Requests 10 and 11 pertain to "any environmental assessment, cleanup or remediation of soil, sediment, surface water or groundwater undertaken at any site in North America" either undertaken by Lonza or at any facility "currently or formerly owned or operated" by Lonza. The court agrees with Lonza that these requests are insufficiently limited in scope, such that production of all responsive documents would not be proportional to the needs of this case and unduly burdensome. Therefore, the Motion to Compel is **DENIED** as to Requests 10 and 11.

## V.
### CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Motion to Compel [doc. 358] is **GRANTED IN PART** and that, unless either party first objects to the District Judge, Defendant Lonza is ORDERED by noon on April 11, 2022, to:

- to supplement its discovery responses and produce documents responsive to Requests 6 and 7, with the limitation that the responsive documents should be limited in time to 1967-1984, the approximate period the solid waste landfill may have been in operation; and

- supplement its discovery responses and produce documents responsive to Requests 8 and 9, with the limitation that Lonza will produce the subset of documents responsive to these requests that pertain specifically to the Leased Premises and its immediate environment; and

The Motion to Compel is otherwise **DENIED**.

THUS DONE AND SIGNED in Chambers this 7th day of April, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE